Richard E. Quintilone II (SBN 200995)
*req@quintlaw.com*
Alvin B. Lindsay (SBN 220236)
*abl@quintlaw.com*
**QUINTILONE & ASSOCIATES**
22974 El Toro Road, Suite 100
Lake Forest, California 92630-4961
Tel.: (949) 458-9675
Fax: (949) 458-9679

David R. Markham (SBN 071814)
*dmarkham@markham-law.com*
Peggy J. Reali (SBN 153102)
*preali@markham-law.com*
Janine R. Menhennet (SBN 163501)
*jmenhennet@markham-law.com*
Maggie Realin (SBN 263639)
*mrealin@markham-law.com*
**THE MARKHAM LAW FIRM**
750 B Street, Suite 1950
San Diego, California 92101
Tel.: (619) 399-3995
Fax: (619) 615-2067

Attorneys for Plaintiffs and Class

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY LOEZA and ANGIE REVELES, individuals, on behalf of themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JP MORGAN CHASE BANK NA, an unknown business entity, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 13-cv-00095-L-BGS<br><br><u>CLASS ACTION</u><br><br>Hon. James M. Lorenz<br>Action Filed: December 11, 2012<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:          May 11, 2015<br>Courtroom          5B<br><br>Trial Date:  None Set |

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of Plaintiffs' Motion for
Preliminary Approval of Class Action Settlement

1
2

**TABLE OF CONTENTS**

3   **I.**    INTRODUCTION ...................................................................... 1

4   **II**.   FACTS ...................................................................................... 2

5   **III.**  PROCEDURAL BACKGROUND.......................................... 3

6   **IV.**   SETTLEMENT TERMS ......................................................... 4

7   **A.**    Settlement Relief..................................................................... 4

8   **B.**    Settlement Administration ..................................................... 11

9   **C.**    Proposed Notice Plan ............................................................ 12

10  **V.**    THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY

11          APPROVAL ........................................................................... 13

12  **A.**    The Proposed Class Meets the Qualifications for Certification. ..................... 13

13  **B.**    The Proposed Settlement is Fair, Adequate, and Reasonable ........................ 18

14          **1.**   The Settlement is the Product of Serious, Informed and Noncollusive

15                 Negotiations ................................................................... 18

16          **2.**   The Settlement has no "Obvious Deficiencies" and Falls within the Range

17                 for Approval ................................................................... 19

18          **3.**   The Settlement does not Improperly Grant Preferential Treatment to Class

19                 Representatives or Segments of the Class .................................. 21

20          **4.**   The Stage of the Proceedings is Sufficiently Advanced to Permit

                   Preliminary Approval of the Settlement .................................... 22

21  **VI.**   THE PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED .. 23

22  **VII.** CONCLUSION....................................................................... 24

23
24
25
26
27
28

i

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Inter-Con Sec. Sys., Inc.*,
   2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)........................................................19

*Adoma v. Univ. of Phoenix, Inc.*,
   913 F.Supp.2d 964 (E.D. Cal. 2012) ......................................................................21

*Alonzo v. Maximus, Inc.*,
   275 F.R.D. 513 (C.D. Cal. 2011) ...........................................................................21

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..........................................................................................13, 14

*Brinker Rest. Corp. v. Super. Ct.*,
   53 Cal.4th 1004 (2012) ...................................................................................14, 21

*Cellphone Termination Fee Cases*,
   186 Cal.App.4th 1380 (2010) ................................................................................21

*Church v. Consol. Freightways, Inc.*,
   1991 WL 284083 (N.D. Cal. June 14, 1981). ........................................................15

*Clark v. Am. Residential Servs.*,
   175 Cal.App.4th 785 (2009) ..................................................................................22

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992)...............................................................................18

*Collins v. ITT Educational Servs., Inc.*,
   2013 WL 6925827 (S.D. Cal. July 30, 2013)....................................................17, 21

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977)...............................................................................19

*Custom LED, LLC v. eBay, Inc.*,
   2014 WL 2916871 (N.D. Cal. June 24, 2014) .......................................................20

*Durham v. Cont'l Cent. Credit, Inc.*,
   2011 WL 90253 (S.D. Cal. Jan. 10, 2011)............................................................22

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974). .............................................................................................23

*Gen. Tel. Co. of Southwest v. Falcon*,
   457 U.S. 147 (1982) ..............................................................................................15

i

*Loeza et al. v. JP Morgan Chase Bank*, Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

*Glass v. UBS Fin. Servs., Inc.*,
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007). ..................................................... 19, 22

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998).......................................................................... 13, 14

*Ikonen v. Hartz Mountain Corp.*,
    122 F.R.D. 258 (S.D. Cal. 1988)............................................................................. 14

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (9th Cir. 2001) .................................................................................. 20

*In re Netflix Privacy Litig.*,
    2012 WL 2598819 (N.D. Cal. July 5, 2012)........................................................... 18

*In re Nvidia Corp. Deriv. Litig.*,
    2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ........................................................ 21

*In re Omnivision Techs., Inc.*,
    559 F.Supp.2d 1036 (N.D. Cal. 2008).................................................................... 20

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008)................................................................................ 13

*In re Tableware Antitrust Litig.*,
    484 F.Supp.2d 1078 (N.D. Cal. 2007).................................................................... 18

*In re Wash. Public Power Supply System Sec. Litig.*,
    720 F.Supp. 1379 (D. Ariz. 1989).......................................................................... 19

*Iskanian v. CLS Transp. Los Angeles, LLC*,
    59 Cal.4th 348 (2014)............................................................................................. 20

*Knight v. Red Door Salons, Inc.*,
    2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................................................ 13

*La Sala v. American Sav. & Loan Assn.*,
    5 Cal.3d 864 (1971)................................................................................................ 16

*Linney v. Cellular Alaska P'ship.*,
    151 F.3d 1234 (9th 1998). ...................................................................................... 22

*Morey v. Louis Vuitton North America, Inc.*,
    2014 WL 109194 (S.D. Cal. Jan. 9, 2014).............................................................. 22

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
    688 F.2d 615 (9th Cir. 1982)............................................................................. 13, 18

*Ordonez v. Radio Shack, Inc.*,

ii

*Loeza et al. v. JP Morgan Chase Bank*, Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

2013 WL 210223 (C.D. Cal. Jan. 17, 2013). ........................................21

*Rodriguez v. West Publ'g,*
563 F.3d 948 (9th Cir. 2009)................................................................21

*Romero v. Producers Dairy Foods, Inc.,*
2007 WL 3492841 (E.D. Cal. 2007) ....................................................10

*Singer v. Becton, Dickinson & Co.,*
2010 WL 2196104 (S.D. Cal. 2010) ..............................................10, 22

*Smith v. CRST Van Expedited, Inc.,*
2013 WL 163293 (S.D. Cal. Jan. 14, 2013)..........................................22

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003)................................................13, 15, 16

*True v. American Honda Motor Co.,*
749 F.Supp.2d 1052 (C.D. Cal. 2010) ............................................14, 17

*Valentino v. Carter-Wallace, Inc.,*
97 F.3d 1227 (9th Cir. 1996)...............................................................17

*Wal-Mart Stores, Inc. v. Dukes,*
131 S.Ct. 2541 (2011) ...................................................................14, 16

*Young v. Polo Retail, LLC,*
2007 WL 951821 (N.D. Cal. Mar. 28, 2007).......................................23


**Statutes**

Cal. Lab. Code §226.7(c)..........................................................................15


**Rules**

Fed. R. Civ. Proc. 23(a)(2).......................................................................14
Fed. R. Civ. Proc. 23(a)(4).......................................................................16
Fed. R. Civ. Proc. 23(b)(3).......................................................................16
Fed. R. Civ. Proc. 23(e) ...............................................................1, 13, 18


**Other Authorities**

Manual for Complex Litig., 2nd, § 21.632 ...............................................23
Moore's Federal Practice, 23.165[3] (3d ed. 2005)..................................13

iii

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

# I.   INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Mary Loeza and Angie Reveles seek preliminary approval of a settlement of $950,000[1] on behalf of approximately 838 current and former employees of defendant JP Morgan Chase Bank ("Chase") who, between December 11, 2008 and the date of preliminary approval of this proposed settlement (the "Class Period"), were employed as LM Underwriter Jrs. ("Class Members"), in California.

This is a cash settlement, and Class Members who submit a timely claim form will receive payment.  The amount of the Settlement is $950,000 ("Maximum Settlement Amount"). As will be shown in the charts below, this is an exceptional result, well in range of settlement figures commonly approved in wage and hour class actions under California authorities, and obtained without the delay, cost, and uncertainty of further litigation.

Additionally, this Settlement includes Class Members who had signed either a release upon termination of employment, or an arbitration agreement, or both, who would have otherwise faced significant challenges in their ability to recover in this action.

Plaintiffs seek entry of an order:   (1) preliminarily approving the proposed Settlement; (2) approving the form and content of the proposed Class Notice and Claim Form; (3) directing that Notice be given to Class Members; (4) provisionally certifying the Settlement Class and appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel; (5) preliminarily approving Settlement administration services to be provided by the Claims Administrator; and (6) scheduling a Fairness Hearing.

---

[1] All capitalized words shall refer to the terms and definitions within the Settlement Agreement, attached as **Exhibit A** to the Declaration of David R. Markham.

1

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

## II.   FACTS

Plaintiffs Loeza and Reveles worked as LM Underwriter Jrs. at Chase's Rancho Bernardo, California office during the Class Period.  Declaration of David R. Markham ("Markham Decl.") at ¶4.  Plaintiffs' duties included analyzing documents provided by customers who were no longer able to make their mortgage payments, to determine if they were eligible for a loan modification.  *Id.*, ¶3.  Each month, Plaintiffs had to make a certain number of decisions on assigned modification requests.  *Id.*, ¶4.  Plaintiffs had to adhere to Chase's policies regarding the quality and quantity of the loans, and were given monthly scores based on the number of errors in their processed files.  *Id.*

Plaintiffs alleged that in order to meet the quotas regarding quality and quantity of processed loans, and to avoid reduction in pay or termination because of errors, they had to significantly increase the number of files processed each month, above Chase's regular monthly quotas.  *Id.*, ¶6.  While the base quota was expected to be achievable in a 40-hour week, an increased workload was not.  Chase's overtime policy required preapproval.  *Id.*, ¶5.  Working unauthorized overtime was grounds for discipline, including termination.  *Id.* Plaintiffs alleged that they could not request overtime to complete the workload that needed to be completed - according to Chase - in a 40-hour week.  *Id.*, ¶6.  Therefore, Plaintiffs alleged that in order to meet their quotas and avoid forfeiture of salary or termination, they had to work off the clock, work unreported overtime, and forego meal and rest breaks.  *Id.*

Chase denies Plaintiffs' claims, and asserts that it has had, during all relevant times, a policy strictly prohibiting off-the-clock work, and that Plaintiffs and Class Members have been paid for all time worked.  Settlement Agreement, §50.  Chase asserts that it has had, during all relevant times, policies providing meal and rest breaks to Plaintiffs and Class Members in accordance with California law.  *Id.*  Chase asserts that its itemized wage statements accurately contain all required information.  Chase also asserts

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

1    that employees were properly and timely compensated for all wages due.  Consequently,

2    Chase disputes liability to Plaintiffs and Class Members.

3    ### III.   PROCEDURAL BACKGROUND

4        Plaintiffs filed a class action complaint against Chase on December 12, 2012 in San

5    Diego Superior Court alleging causes of action for (i) unpaid overtime under both

6    California Labor Code and Fair Labor Standards Act ("FLSA"), (ii) failure to provide

7    meal and rest periods, (iii) failure to provide timely wages, (iv) wage statement defects,

8    (v) failure to reimburse business expenses, (vi) violation of California's Unfair

9    Competition Law, and (vii) private attorney general action penalties ("PAGA").  On

10   January 14, 2013, the action was removed to this Court based on federal question and

11   jurisdiction under the Class Action Fairness Act of 2005 ("CAFA").  Dkt. No. 1.

12       Class Counsel has vigorously advanced Plaintiffs' position, and thoroughly

13   investigated Class Members' claims.  Markham Decl., ¶7.  The Parties engaged in

14   substantial discovery.  Plaintiffs propounded two sets of document requests, and one set

15   of interrogatories, and also took five depositions of Chase's FRCP 30(b)(6) witnesses

16   and other employees.  *Id.*  To oppose Chase's motion for summary judgment, Plaintiffs

17   conducted an inspection of Chase's premises under Rule 34(a)(2).  *Id.*  Chase

18   propounded written discovery, including document requests and interrogatories, and

19   deposed both Plaintiffs.  Chase produced over 1,200 pages of paper documents, and

20   voluminous electronically stored information ("ESI"), which included emails, badge

21   swipe records, and computer access records, contact information for a sample of putative

22   class members, and Plaintiffs also engaged in expert discovery.  *Id.*

23       The Parties engaged in substantial motion practice.  *Id.*, ¶8. While Plaintiffs were

24   finalizing their Motion for Class Certification, the Parties agreed to allow Chase to file

25   its motion for summary judgment first, which was filed on November 22, 2013.  *Id.*

26   Plaintiffs opposed Chase's summary judgment motion on January 13, 2014.  Dkt. Nos.

27

28

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

34, 45.  Plaintiffs also filed a Joint Motion for Determination of Discovery Dispute. Dkt. No. 23.

The Parties participated in an all-day mediation session on December 9, 2014, before Michael Dickstein, Esq., a well-regarded mediator with experience mediating large wage and hour class actions.  Markham Decl., ¶9.  Although this session did not result in a settlement, the Parties continued the settlement dialogue.  *Id.*  After several weeks of arms' length, in depth negotiations, with the assistance of Mr. Dickstein, the Parties settled this case.  *Id.*  On March 31, 2015, the Parties executed the Settlement Agreement.  **Ex. A.**

## IV.   SETTLEMENT TERMS

The Settlement terms are as follows:

### A. Settlement Relief

Monetary relief will be provided to Settlement Class Members who are:

> All persons who are and/or were employed by JPMorgan Chase Bank, N.A. in the position of LM Underwriter Jr. at a California location from December 11, 2008 through the Date of Preliminary Approval.

Settlement Agreement, §7.  The Settlement Class does not include any person who submits a timely and valid opt-out request.  *Id.*, §78.

The Gross Settlement Fund is $950,000.  *Id.*, §62.  This includes payments to Class Members, attorneys' fees and costs, enhancement awards to Class Representatives, costs of claims administration, and the LWDA's share of PAGA penalties.  *Id.*  Chase will pay employer tax contributions and liabilities in addition to the Gross Settlement Fund. *Id.*, §63.  A minimum of 55% of the Net Settlement Amount will be distributed to Qualified Claimants (the Minimum Qualified Claimant Settlement Award) as provided in the Settlement.  *Id.*, §34.

#### 1.   *Net Settlement Amount*

From the Maximum Settlement Amount, the following will be deducted, to result in a Net Settlement Amount:  attorneys' fees and costs, PAGA penalties to the state,

4

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

administration costs, taxes (excluding Defendant's share), Reserve Fund, and Service Enhancements to the Class Representatives. *Id.*, §33. The Net Settlement Fund will then be distributed as follows:

### 2. *Payment Distribution Among Class Members*

Class Members who submit valid and timely Claim Forms are Qualified Claimants and will receive an Individual Settlement Amount from the Net Settlement Amount. *Id.*, §62E. The Claims Administrator will calculate each Class Member's Individual Settlement Amount by calculating the Applicable Workweeks worked by the Class Member during the Class Period. *Id.*, §66(A). The Individual Settlement Allocation will be determined based on the number of Weighted Applicable Workweeks for each Class Member. The Weighted Applicable Workweeks will be calculated based on a Class Member's membership in one of four subclasses: (**1**) No Arbitration/No Release Subclass – includes any member of the Settlement Class who is not a member of the Release signer Subclass, Arbitration Subclass, or Arbitration and Release Subclass. Settlement Agreement, §7(D); (**2**) Arbitration Subclass – includes any member of the Settlement Class who is subject to an agreement to arbitrate with Chase with a class action waiver, but did not sign a release of claims against Chase (through a severance agreement, or otherwise). *Id.*, §7(B); (**3**) Release signer Subclass – includes any member of the Settlement Class who signed a release of his or her individual claims against Chase (through a Release Agreement, severance agreement, or otherwise), but is not subject to an agreement to arbitrate with Chase. *Id.*, §7(A); (**4**) Arbitration and Release Subclass - any member of the Settlement Class who signed both a release of claims against Chase and also an agreement to arbitrate claims with Chase with a class action waiver. *Id.*, §7(C).

There are four Subclasses, because many Class Members were subject to arbitration agreements, a release of claims, or both. Some Class Members are subject to arbitration agreements that Chase contends waived the employee's right to be part of a

5

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

class, collective, or representative action (relying on *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011)) (Arbitration Subclass).  Further, Chase no longer employs LM Underwriter Jrs. in California, and laid off many Class Members, who signed releases in exchange for severance pay (Release signer Subclass).  The fourth Subclass consists of LM Underwriter Jrs. in California who are subject to both an arbitration agreement and release.

In order to account for the differences in potential defenses to recovery for the four Subclasses, and differing amounts of damage calculations, an individual Class Member's Applicable Workweeks will be discounted in order to provide the highest recovery to those who did not sign arbitration or release agreements, and progressively smaller recoveries to Class Member who are subject to one or the other, or both.   The Applicable Workweeks will be multiplied as follows to achieve the Weighted Applicable Workweeks:

- No Arbitration/No Release Subclass: These Subclass members will receive a full share, or 100% of the Class Member's Applicable Workweeks;
- Arbitration subclass: 30% of the Class Member's Applicable Workweeks
- Release signer Subclass: 20% of the Class Member's Applicable Workweeks
- Arbitration and Release Subclass: 15% of the Class Member's Applicable Workweeks.  Settlement Agreement, §66.

The Arbitration and Release Subclasses have their credited workweeks reduced, because these groups have a substantial headwind with respect to pursuing their claims. Although Plaintiffs would argue that the arbitration clauses are procedurally unconscionable, and releases are not valid under Labor Code section 206.5, or FLSA, suffice it to say, there would be significant defenses to the claims of these Class Members.  Markham Decl., ¶18.

Based on the estimated number of workweeks worked in each Subclass, and assuming a 100% claim rate, the Settlement payment to each group is approximately as follows:

6

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

| Subclass Name/Est. No. of Class Members | Approx. # of Workweeks in Each Subclass | % of the Class Member's Workweeks Allocated | # of Workweeks Credited to each Subclass | Approx. Gross Settlement Amount per Subclass |
|---|---|---|---|---|
| No Arbitration/No Release/157 | 11,687.14 | 100% | 11,687.14 | $448,591.76 |
| Arbitration Subclass/333 | 21,367.43 | 30% | 6,410.23 | $246,046.16 |
| Release signer Subclass/132 | 17,377.86 | 20% | 3,475.57 | $133,404.15 |
| Arbitration and Release Subclass/216 | 21,182.43 | 15% | 3,177.36 | $121,957.94 |
| Total: 838 | 71,614.86 | 100% | 24,750.31 | $950,000.00 |

Class Members who do not submit a claim or request for exclusion within 28 days after Notice packets are mailed, will be sent a reminder postcard.   Settlement Agreement, §73.  Further, Class Members will have an option to cure a Claim Form that lacks a signature, or appears otherwise defective. *Id.*, §78.

If Qualified Claimants do not claim a minimum of 55% of the Net Settlement Amount, the difference between the claimed amount and 55% of the Net Settlement Amount shall be distributed *pro rata* to increase the Individual Settlement Payments of the Qualified Claimants. *Id.*, §62(E).  Any Settlement Payment check that is uncashed after 180 days from the date of issuance will escheat to the State of California. *Id.*, §88.

All Settlement payments are subject to taxation, and will be reported to the IRS and state tax authorities.   Notably, Chase's share of applicable payroll taxes and related withholdings on the amount attributable to wages will be paid separate and apart from the Maximum Settlement Amount.   *Id.*, §63.   Fifty percent (50%) of each Class Member's Individual Settlement Amount will be considered unpaid wages, and fifty percent (50%) non-wages. *Id.*, §38(a).  Class Members and Class Representatives are responsible for the payment of any taxes on the portion that is unpaid wages. *Id.*  The Settlement Class Members shall seek their own tax advice in connection with payments under this Agreement. *See Id.*

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

### 3.  *Settlement Amount Calculations*

The Settlement fund of $950,000 is a result of compromise between the Parties for Plaintiffs' overtime, meal and rest break, and derivative claims. Plaintiffs previously conceded that they had no claim for unreimbursed expenses, as Plaintiffs' reasonable out of pocket business expenses were paid by Chase.  Dkt. No. 59 at 8.  In preparation for Plaintiffs' anticipated Motion for Class Certification, Plaintiffs' expert, Dr. Fountain, analyzed a sample of electronic data from Chase's computer systems, which were used by Class Members to process loans.  Markham Decl., ¶12.  Dr. Fountain opined that, on average, the sampled Class Members worked one hour of unpaid overtime a week.  *Id.*[2] With respect to meal and rest breaks, Dr. Fountain opined that, on average, Class Members did not record a timely meal break once per week. There are no electronic records indicating untimely rest breaks, because rest breaks, unlike meal breaks, do not have to be recorded.  *Id.* Class Counsel's interviews with Class Members revealed that the amount of missed rest breaks was nominal.  *Id.*

Both formal discovery and pre-mediation exchange of documents revealed that there were approximately 11,687.14 workweeks (before deducting for leaves of absences or other time off) for Class Members who did not sign an arbitration agreement or release, during the Class Period.  *Id.*, ¶13.  By multiplying the number of workweeks by the Class Members' overtime rate of $32.35 (150% of the average hourly rate of $21.50), Plaintiffs estimate that the maximum potential liability of Chase for failure to pay overtime to Class Members who did not sign an arbitration agreement or release is approximately $378,078.97.

With respect to meal breaks, assuming one meal break violation per week, by multiplying the number of workweeks (11,687.14) by the Class Members' average

---

[2] Chase disputes Dr. Fountain's opinions for the reasons set forth in its previously filed objections to his report.

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

hourly rate of $21.50, Plaintiffs estimate that the maximum potential liability of Chase for failure to provide meal breaks is approximately $251,273.51 for this group. *Id.*, ¶14.

By combining the potential liability for Plaintiffs' overtime claims ($378,078.97) and meal and rest break claims ($251,273.51), the total damages Plaintiffs would seek at trial on behalf of Class Members who did not sign an arbitration agreement or release are approximately $629,352.48.[3]   *Id.*, ¶15. The portion of the Maximum Settlement Amount allocated to those Class Members ($448,591.76) represents **71%** of Chase's estimated maximum potential liability for overtime and meal and rest break claims of Class Members who did not sign arbitration agreements or releases.  *Id.* This is an excellent result, well in range of settlements commonly approved by California district and state courts.  *See* section V(B)(II), below.  The cents on a dollar distribution of the Settlement Amount among the four subclasses is as follows:

| Subclass /Est. # of Class Members in each Subclass | Approx. # of Workweeks in Each Subclass | Max. Damages for Overtime Claim | Max. Damages for Meal and Rest Break Claim | Approx. Settlement Amount Subclass will receive | % of the Max. Damages for Overtime, Meal and Rest Break Claim |
|---|---|---|---|---|---|
| No Arbitration/No Release/157 | 11,687.14 | $378,078.97 | $251,273.51 | $448,591.76 | 71.41% |
| Arbitration Subclass/333 | 21,367.43 | $691,236.36 | $459,399.74 | $246,046.16 | 21.38% |
| Release Holder Subclass/132 | 17,377.86 | $562,173.77 | $373,623.99 | $133,404.15 | 14.25% |
| Arbitration and Release Subclass/216 | 21,182.43 | $685,251.61 | $455,422.25 | $121,957.94 | 10.69% |

The smaller percentages for Subclasses are reasonable because there was a significant risk that those individuals would be excluded from the Class based on

---

[3] These are damage claim amounts, and do not include penalties and attorneys' fees and costs.

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

1  Chase's defenses, and/or that their claims would be barred under the arbitration and/or

2  release agreements.

3        **4.   *Attorneys' Fees and Costs***

4        The Parties agreed that $285,000, or 30% of the Maximum Settlement Amount

5  may be allocated to pay attorneys' fees, and up to $35,000 may be allocated to

6  reimburse Class Counsel for out-of-pocket litigation expenses.  Settlement Agreement,

7  §62(A).  Although it is somewhat premature to address the fee issue before the fee

8  motion is due, the 30% of the fund in attorneys' fees requested is higher than the Ninth

9  Circuit benchmark of 25%, but in this case Class Counsel's lodestar is substantially in

10  excess of 25%.  In this situation where the common fund is one million dollars or less,

11  many California authorities have authorized fees in excess of 25%.  Rubenstein, Conte

12  and Newberg, *Newberg on Class Actions*, §14:6; *Singer v. Becton, Dickinson & Co*.,

13  2010 WL 2196104, at *8 (S.D. Cal. 2010); *Collins v. ITT Educational Servs., Inc*., Case

14  No. 12-cv-1395-DMS-BGS, Dkt. No. 93.  (S.D. Cal, Jan. 15, 2015).  Class Counsel will

15  brief the fee application using both methodologies, lodestar and percentage-of-the-fund,

16  as cross checks.  Chase will not oppose the application for attorneys' fees and costs.

17  Settlement Agreement, §62(A).  Any portion of the requested Class Counsel Award that

18  is not awarded to Class Counsel will be part of the Net Settlement Amount and be

19  distributed to Class Members.  *Id*. §62(F).  Any potential reduction by the Court of the

20  requested Class Counsel Award does not change the remaining terms of the Settlement.

21  *Id*.

22        **5.   *PAGA Payment to Labor Workforce Development Agency***

23        The Parties agreed that $2,500 of the Maximum Settlement Amount will be

24  allocated for alleged violations of PAGA.  75% of this amount will be paid to the

25  California Labor & Workforce Development Agency ("LWDA"), and 25% to the Class.

26  *Id*., §62(D).   This amount is reasonable because Chase vigorously contested the

27  viability of the PAGA claims, both on the merits and on procedural grounds.

28

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

### 6.   *Claims Administration Costs*

The parties selected Simpluris as the Claims Administrator in this action.  *Id.*, §3. The costs of administration, estimated to be $12,000, will be paid from the Maximum Settlement Amount.  *Id.*, §62(C).

### 7.   *Reserve Fund*

The Parties allocated $10,000 from the Net Settlement Amount to be set aside for late claims, disputed settlement allocations, inadvertent errors on exclusions, and/or to resolve other disputes.  *Id.*, §§42, 79.

### 8.   *Service Enhancements*

Chase agreed to pay $15,000 to Plaintiff Loeza, and $5,000 to Plaintiff Reveles, for their services as Class Representatives.[4]  *Id.*, §43.  Service Awards will be paid from the Maximum Settlement Amount.  Any portion of the requested Service Enhancement that is not awarded shall be part of the Net Settlement Amount and be distributed to Class Members as provided in this Agreement.  *Id.*, §62(F). Any potential reduction by the Court of the requested Service Enhancement does not change the other terms of this Settlement.  *Id.*  Service Enhancements to the Class Representatives shall be treated as non-wage compensation, and shall be reported on an IRS 1099.  *Id.*, §63.

### B. Settlement Administration

The Parties have selected an experienced third party class action Claims Administrator, Simpluris, to administer this Settlement.  Settlement Agreement, §§3, 72. Administrator costs are estimated to be $12,000.  *Id.*, §62(C).  The Claims Administrator will send Notice and Claim Form to each Class Member, determine the eligibility for and amounts of Individual Settlement Amounts, distribute Class Members' payments, and process and mail tax payments to the appropriate state and federal taxing authorities.

---

[4] Plaintiffs will submit declarations detailing their involvement in this action with the motion for approval of attorneys' fees, costs and Class Representatives' Service Enhancements.

11

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

*Id.*, §73.  Class Members who did not submit a Claim Form or Request for Exclusion within the first 28 days of the Claims Period will receive a reminder postcard. *Id.*, §73(g).  Class Members will also be able to dispute the amount of workweeks or membership in a given Subclass. *Id.*, §77; *see also* Claim Form, attached as **Exhibit 2** to the Settlement Agreement.  Class Members will also be able to contact the Administrator if they have Settlement questions or need assistance.  *See* Notice of Settlement of Class Action Lawsuit ("Class Notice"), attached as **Exhibit 1** to the Settlement Agreement, at 6.  Any objections to or opt-outs from the Settlement must be delivered to the Claims Administrator.  Settlement Agreement, §78.  Class Members have the ability to cure a deficient opt-out request. *Id.*

**C. Proposed Notice Plan**

Within 21 days after preliminary approval of the Settlement, and after obtaining the Parties' approval of the formatted Settlement Documents and estimated settlement amounts, or as soon as practically and economically feasible as determined by the Claims Administrator, the Administrator will send Class Notice and Claim Form to Class Members via first class mail.  Settlement Agreement, §§74-75.  The packets will contain a postage-paid return envelope.  Ex. 2.  The Claims Administrator will run a check of the Class Members' addresses against those contained in the USPS's National Change of Address database, and take any other appropriate steps to validate the correctness of the addresses provided by Chase.  *Id.*, §74.  If the Notice packet is returned, the Administrator will use a skip trace procedure or other research to locate the missing Class Members, and re-mail the Notice packet. *Id.*

The Class Notice will summarize the terms of the Settlement Agreement, advise Class Members how to submit the Claim Form, and advise Class Members of their right to object to or exclude themselves from the Settlement within 45 days after the Notice mailing. *Id.*, §76; *see also* Exs. 1 and 2.

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

## V.   THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL

A class action may not be settled without court approval.  Fed. R. Civ. P. 23(e).  However, there is a strong judicial preference for pre-trial settlement of class actions.  *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

In determining whether to preliminarily approve a settlement, the court should evaluate the fairness of the settlement in its entirety.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  In contemplating the preliminary approval of a proposed settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009).  The determination of whether to preliminarily approve a proposed settlement does not demand a final analysis of the settlement's fairness.  Instead, a more detailed assessment is reserved for final approval after class members have had the opportunity to object to, or opt out of, the settlement.  *See*, Moore's Federal Practice, 23.165[3] (3d ed. 2005).

The first step in approving a settlement where the class has not yet been certified is to determine whether a class exists.  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Then, the Court should examine the settlement as a whole to determine if it is fair, adequate, and reasonable.  *Hanlon, supra*, 150 F.3d at 1019.

### A. The Proposed Class Meets the Qualifications for Certification.[5]

A proposed class may be certified for settlement purposes if it satisfies the requirements of Rule 23(a), namely:  "(1) numerosity; (2) commonality; (3) typicality;

---

[5] Defendant agrees to certify a class for settlement purposes only, and its agreement to do so shall not be construed as an admission of the propriety of class certification outside the settlement context. *See* Settlement Agreement, §60.

13

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

and (4) adequacy of representation." *Hanlon*, 150 F.3d at 1019 (citing *Amchem,* 521 U.S. at 613).  Then, a plaintiff must satisfy one of the prongs of Rule 23(b).  *True v. American Honda Motor Co*., 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010).  The parties in this case request certification of the Settlement Class under Rule 23(b)(3).  The Class meets all standards for conditional certification:

### 1. *Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  Generally, "classes of 40 or more are numerous enough" to satisfy this requirement.  *Ikonen v. Hartz Mountain Corp*., 122 F.R.D. 258, 262 (S.D. Cal. 1988).  Here, the Class is composed of an estimated 838 members, who can be identified and located from Chase's personnel and payroll records.  Thus, numerosity is satisfied.

### 2. *Commonality*

To certify a class, there must be "questions of law or fact common to the class."  Fed. R. Civ. Proc. 23(a)(2).  The Ninth Circuit construes "the requirements of Rule 23(a)(2) . . . permissively."  *Hanlon,* 150 F.3d at 1019.  To satisfy commonality, even a single common question is sufficient. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2556 (2011).  In the employment context, "[c]laims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment."  *Brinker Rest. Corp. v. Super. Ct.,* 53 Cal.4th 1004, 1033 (2012).

Here, Plaintiffs aver that several common questions apply to all Class Members and "generate common answers apt to drive the resolution of [this] litigation."  *Dukes*, 131 S.Ct. at 2551:

- Whether Chase knew, and had reason to believe, that Plaintiffs and putative class members worked off-the-clock;

14

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

- Whether Plaintiffs and Class Members were able to take 30-minute, uninterrupted meal breaks within the first five hours of the start of their shifts, despite Chase's policies regarding the quality and the quantity of the loans Class Members were to process;

- Whether Chase's time-keeping and payroll systems automatically generate the additional hour's pay as provided for in Labor Code section 226.7(c) and the applicable Wage Order, for missed, interrupted or late meal breaks;

- Whether Chase's rest break policy before March 1, 2013, was facially in violation of Labor Code section 226.7, because it authorized rest breaks subject to managers' discretion;

- Whether Chase's meal break policy before March 1, 2013, was illegal because it did not inform Plaintiffs and putative class members that they were entitled to an extra hour of pay for missed, interrupted or late meal breaks;

- Whether Defendant violated California law by failing to pay overtime compensation to Class Members who worked in excess of 40 hours per week and/or eight hours a day.  Thus, commonality is met.

### 3. *Typicality*

Typicality does not mean that the interests of representative plaintiffs must be identical to those of the absent class members. *Staton,* 327 F.3d at 957. They only need to be "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.  Further, the representative plaintiffs must be members of the class they seek to represent. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982).  "Typicality refers to the nature of the claims or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Church v. Consol. Freightways, Inc.,* 1991 WL 284083, at *5 (N.D. Cal. June 14, 1981).

Plaintiffs' claims are typical of the claims of the absent Class Members, because they arose from the same alleged conduct of Defendant: (1) Chase's failure to compensate Class Members for off-the-clock work and overtime work; (2) Chase's

15

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

failure to pay Class Members an additional hour of pay for missed, short or late meal breaks; (3) Chase's failure to utilize a payroll/timekeeping system that captures missed, short or late meal periods; and (4) Chase's policies regarding the quality and the quantity of the loans Class Members were to process, causing Class Members to work off-the-clock and miss, or take short or late, meal breaks. All Class Members were subject to these alleged policies and/or practices. Thus, typicality is satisfied.

### 4. *Adequacy of Representation*

Rule 23(a)(4) requires that the Class Representative "fairly and adequately represents the interest of the class." The adequacy of representation involves two questions: (1) whether the Representative and his counsel have any conflicts of interest with other class members, and (2) whether the Representative and his counsel will vigorously prosecute the action. *See Staton,* 327 F.3d at 957.

Here, Plaintiffs have retained Class Counsel with extensive experience in prosecuting wage and hour class actions. *See* Markham Decl., ¶22, **Ex. B**; Quintilone Decl., ¶5. Class Counsel has no conflicts of interest with the class. Markham Decl., ¶23. In addition, Plaintiffs have the same interests as the rest of the Class, because Plaintiffs and Class Members have allegedly been injured in substantially the same manner. *See La Sala v. American Sav. & Loan Assn.,* 5 Cal.3d 864, 871 (1971).

### 5. *Rule 23(b)(3) Factors*

In addition to Rule 23(a) requirements, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 131 S.Ct. at 2548. Here Plaintiffs seek certification under Rule 23(b)(3). It calls for two separate inquiries: whether issues common to the class "predominate" over issues unique to individual class members, and whether the proposed class action is superior to other methods available for adjudicating the controversy. Rule 23(b)(3).

Here, questions of law or fact common to all Class Members predominate over questions affecting individual members, because it is Plaintiffs' position that: (1) all

16

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

1  Class Members were subject to Chase's quality and quantity policies regarding loan
2  modifications; (2) all Class Members were subject to Chase's payroll/timekeeping
3  systems which did not capture missed, short or late meal periods; and (3) all Class
4  Members were subject to Chase's meal and rest break policies which allegedly did not
5  comply with California law. As another court in this district confirmed, "Because
6  liability for [meal and] rest break violations will be determined based on the written
7  policy in question, common issues predominate and any individual determination of
8  damages will not defeat class certification."  *Collins v. ITT Educational Servs., Inc.*,
9  2013 WL 6925827, at *13 (S.D. Cal. July 30, 2013).

10  Adjudication of these common questions in one action will preserve the court's
11  time and resources.  "Implicit in the satisfaction of the predominance test is the notion
12  that the adjudication of common issues will help achieve judicial economy."  *Valentino*
13  *v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996).

14  The court next considers whether a class action would be superior to individual
15  suits under Rule 23(b)(3), weighing: "(1) the class members' interests in individually
16  controlling the prosecution or defense of separate actions; (2) the extent and nature of
17  any litigation concerning the controversy already begun by or against class members;
18  and (3) the desirability or undesirability of concentrating the litigation of the claims in
19  the particular forum. A fourth factor – the difficulties of managing the class action – is
20  not considered when certification is used for purposes of settlement.  *True, supra,* 749
21  F.Supp.2d at 1062 n. 12.

22  Class Members' interests are relatively small, so that they have little interest in
23  controlling the prosecution of separate actions.  Plaintiffs are not aware of any pending
24  similar actions. All of Plaintiffs' claims arise from their employment at Chase in
25  California.  Finally, this forum is appropriate, as Chase does substantial business in San
26  Diego County, and Plaintiffs reside in this County.

27
28

17

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

1    Thus, the Court should certify Plaintiffs' class claims for the purposes of this

2    Settlement.

3              **B.  The Proposed Settlement is Fair, Adequate, and Reasonable**

4    Under Rule 23(e), the district court must determine whether the proposed

5    settlement is "fundamentally fair, adequate, and reasonable." *Class Plaintiffs v. City of*

6    *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  At the preliminary approval stage, the

7    Court's view is "limited to the extent necessary to reach a reasoned judgment that the

8    agreement is not the product of fraud …." *Officers for Justice*, 688 F.2d at 625.  At this

9    stage the Court considers whether:

10            the proposed settlement appears to be the product of serious, informed,
         noncollusive negotiations, has no obvious deficiencies, does not
11          improperly grant preferential treatment to class representatives or segments
         of the class, and falls with the range of possible approval.
12

13   *In re Tableware Antitrust Litig*., 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (citing

14   Manual for Complex Litigation, §30.44 (2d ed.1985).  Here, the Settlement meets all of

15   these criteria.

16            **1.  The Settlement is the Product of Serious, Informed and
            Noncollusive Negotiations**

17   This Settlement is the result of extensive and hard-fought negotiations.  Markham

18   Decl., ¶¶9, 20.  Plaintiffs had two independent law firms representing their interests and

19   the interests of the putative class; Chase was represented by Morgan, Lewis & Bockius

20   LLP. Chase has denied and continues to deny the claims alleged in this action.

21   Class Counsel conducted interviews with Plaintiffs and Class Members and

22   diligently investigated Class Members' claims.  Markham Decl., ¶7.  Significant

23   discovery occurred. *Id*. Class Counsel reviewed and analyzed voluminous electronic

24   data and over 1,200 pages of documents. *Id*.  The Parties took and defended at least

25   seven depositions in this action. *Id*.

26   The vigorous litigation of this case for over two years gave both Parties a clear

27   view of the strengths and weaknesses of their respective positions. *See Adams v. Inter-*

28

18

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

1   *Con Sec. Sys., Inc*., 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) (preliminarily

2   approving the settlement agreement after finding it was reached through extensive

3   negotiations and plaintiff's counsel's thorough investigation of the claims).  Based on

4   their knowledge of this action, Plaintiffs determined that the Settlement would constitute

5   the best outcome for Class Members.   Markham Decl., ¶¶10, 20.   Likewise, Chase

6   concluded that this action should be settled in order to avoid the expense, inconvenience,

7   and burden of further legal proceedings, and the uncertainties of trial and appeal.

8          The settlement in this action was reached with the assistance of an experienced

9   private mediator, Michael Dickstein.  *Id*., ¶9. That indicates that the settlement was free

10   of collusion. "The settlement was negotiated and approved by experienced counsel on

11   both sides of the litigation, with the assistance of a well-respected mediator with

12   substantial experience in employment litigation [, and] this factor supports approval of

13   the settlement." *Glass v. UBS Fin. Servs.*, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26,

14   2007).

15          The litigation has been aggressive, and displayed capable and experienced

16   advocacy on both sides.   Accordingly, "[t]here is … every reason to conclude that

17   settlement negotiations were vigorously conducted at arms' length and without any

18   suggestion of undue influence."  *In re Wash. Public Power Supply System Sec. Litig*.,

19   720 F.Supp. 1379, 1392 (D. Ariz. 1989).

20          **2.  The Settlement has no "Obvious Deficiencies" and Falls**
                **within the Range for Approval**

21      *(i)   Amount offered in settlement is well in range of settlement amounts commonly*

22             *approved by courts in this Circuit:*

23          "The very essence of a settlement is compromise, 'a yielding of absolutes and an

24   abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (quoting *Cotton v.*

25   *Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).   Thus, when evaluating the amount

26   offered in settlement, it should "not be judged against a hypothetical or speculative

27   measure of what might have been achieved by the negotiators." *Id*. at 625-28.

28

19

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

Courts routinely approve class action settlements where the settlement amount is a lower percentage of the claimed amount of damages. In *Glass, supra,* the court approved a settlement of unpaid overtime wages where the settlement amount constituted approximately 25 to 35% of the estimated actual loss to the class.  *Id*. at *4.; *See also In re Cendant Corp. Litig*., 264 F.3d 201, 241 (9th Cir. 2001) (affirming settlement representing 36% of recovery); *In re Omnivision Techs., Inc.,* 559 F.Supp.2d 1036, 1042 (N.D. Cal. 2008) (affirming settlement representing 9% of maximum potential recovery); *Custom LED, LLC v. eBay, Inc.*, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014) (1.18% to 16% of maximum recovery approved). Simply put, "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not… mean that [it]…should be disapproved." *7-Eleven Owners, supra*, 85 Cal.App.4th at 1150 (citation omitted).

Here, the Settlement is well in range of amounts commonly approved by courts. *See* Settlement Amount Calculations, section IV(A)(3), *supra*.  The recoveries of the members of three Subclasses who either signed the Arbitration Agreement (21.38%), release (14.25%), or both (10.69%), are lower because employees who had signed releases and already received severance pay could face formidable if not fatal hurdles under *AT&T Mobility* and contract law. Then, regarding employees who signed arbitration agreements with class action waivers, under state law they would not be entitled to recover anything through this litigation but for the terms of the Settlement Agreement. *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.4th 348, 362-64 (2014). Further, those employees still have an option to opt out of the Settlement if they desire to pursue individual arbitration in hopes of a higher recovery.  This confirms that the proposed allocation of Settlement Amount is fair and adequate.

*(ii)     The Strength of Plaintiffs' Claims Favors Settlement Approval*

Although Plaintiffs believe that their case is meritorious, they acknowledge that numerous obstacles exist that could prevent certification of class claims, and proving Chase's liability at trial.  First, it would be difficult to certify overtime/off the clock

20

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

claims, where Chase's uniform policies prohibit unreported work. *Brinker, supra*, 53 Cal.4th at 1051-52; *Collins, supra*, 2013 WL 6925827, at *6. Second, some courts have concluded that performance expectations and overtime limitations alone do not constitute illegal policies requiring off the clock work. *Alonzo v. Maximus*, *Inc*., 275 F.R.D. 513, 522-23 (C.D. Cal. 2011), *Collins, supra*, at *6 n.7. Third, with respect to Plaintiffs' meal and rest break claims, authority exists, albeit not unanimous, which states that individualized inquiries are necessary to determine why a break was short, late, or missed, defeating predominance. *Ordonez v. Radio Shack, Inc*., 2013 WL 210223, at *12 (C.D. Cal. Jan. 17, 2013).

This Settlement provides payments to Class Members without any further risks. *Adoma v. Univ. of Phoenix, Inc*., 913 F.Supp.2d 964, 976 (E.D. Cal. 2012); *see also In re Nvidia Corp. Deriv. Litig*., 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) ("The Settlement eliminates…risks of continued litigation, including the very real risk of no recovery after several years of litigation.").

### 3. The Settlement does not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class

Class Members will benefit from common formulas of payment allocation. The payout amount depends on the Subclass a Class Member belongs to, and on the number of weeks a Class Member worked as an LM Underwriter Jr. in California. Settlement Agreement, §66.

In addition, Plaintiff Loeza will receive $15,000, and Plaintiff Reveles $5,000, for their time and effort spent in representing the Class. *Id.*, §62(B). "Incentive awards [for class representatives] are fairly typical in class actions." *Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380, 1393 (2010), citing *Rodriguez v. West Publ'g*, 563 F.3d 948, 958 (9th Cir. 2009). "Since without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be

21

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

1   thought the equivalent of the lawyers' nonlegal but essential case-specific expenses…"
2   *Clark v. Am. Residential Servs*., 175 Cal.App.4th 785, 804 (2009) (citation omitted).

3         Here, the incentive awards of $15,000 and $5,000, respectively, are reasonable,
4   because over the course of two years of this litigation Plaintiffs assisted in investigation,
5   responded to discovery requests, provided and reviewed documents and pleadings, and
6   testified at all-day depositions. Plaintiff Loeza's award is higher, because she devoted
7   substantial additional time and effort into this action, such as attending an inspection of
8   Chase's premises with Counsel, reviewing pictures and diagrams prepared after the
9   inspection, and assisting Counsel with combining a witness lists, etc.[6] The approved
10  incentive awards in California federal courts range from a few to several thousand
11  dollars. *Morey v. Louis Vuitton North America, Inc*., 2014 WL 109194, at *11 (S.D.
12  Cal. Jan. 9, 2014) ($5,000 approved); *Glass, supra*, 2007 WL 221862 at *17 ($25,000
13  for each class representative in wage and hour action); *Smith v. CRST Van Expedited,*
14  *Inc*., 2013 WL 163293, at *6 (S.D. Cal. Jan. 14, 2013) ($15,000 approved); *Singer,*
15  *supra,* 2010 WL 2196104, at *9 ($25,000 incentive award).

### 4.  The Stage of the Proceedings is Sufficiently Advanced to Permit Preliminary Approval of the Settlement

18        "A court is more likely to approve a settlement if most of the discovery is
19  completed because it suggests that the parties arrived at a compromise based on a full
20  understanding of the legal and factual issues surrounding the case." *Nat'l Rural*
21  *Telecomms. Coop*., *supra*, 221 F.R.D. at 527.  The bottom line is that "the parties have
22  sufficient information to make an informed decision about the settlement." *Durham v.*
23  *Cont'l Cent. Credit, Inc*., 2011 WL 90253, at *3 (S.D. Cal. Jan. 10, 2011), citing *Linney*
24  *v. Cellular Alaska P'ship.,* 151 F.3d 1234, 1239 (9th 1998).

---
[6] *See* fn. 4.

22

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

Before settling, the Parties had a thorough understanding of their respective claims and defenses. The Parties have been litigating this action for over two years. Markham Decl., ¶7. The Parties engaged in extensive written and oral discovery, including a discovery motion. *Id. See* section II, *supra.* The Parties also engaged in extensive motion practice, with Plaintiffs' motion for class certification being prepared for filing, and Defendant moving for summary judgment. Markham Decl., ¶8. At the time of mediation, the Parties knew and understood their respective positions. As a result, the real value of the class' claims was known, and Class Counsel determined that the Settlement is fair, reasonable, and adequate and in the best interest of the Class. *Young v. Polo Retail, LLC,* 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007).

## VI.   THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

If the Court concludes that the relief offered and proposed notice are fair and adequate, the Court should order that class notice be provided. Manual for Complex Litig., Second, § 21.632 at 321. The threshold requirement regarding the sufficiency of class notice is whether the means proposed for distributing the notice are reasonably calculated to apprise the class of the pendency of the action, the proposed settlement, and the right to opt out or object to the settlement. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974).

Here, the Class Notice and Claim Form are more than sufficient, because they give Class Members, in easy to understand language:  (1) basic information about this action and the Settlement; (2) which Subclass an individual is a member of; (3) an estimation of Class Member's workweeks during the Class Period, and an explanation of how Class Members can dispute the number of those workweeks; (4) an explanation of how the payout will be calculated, and an estimate of the Class Member's Individual Settlement Amount; (5) an explanation of how Settlement Class Members can opt-out or object to the Settlement; (6) an explanation that any state law claims against Chase that could have been litigated in this Action will be released if the Settlement Class Member

23

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

does not opt out and that the FLSA claims will be released by submitting a Claim Form; (7) the name of Class Counsel and information regarding attorneys' fees; (8) the date of the Fairness Hearing and an explanation of eligibility to appear at the Fairness Hearing; and (9) the address and telephone number where Settlement Class Members can obtain additional information.  *See* **Exs. 1-2** (Class Notice and Claim Form). Thus, the Notice plan proposed by the Settlement complies with the requirements of Rule 23.

## VII.  CONCLUSION

The proposed Settlement is a fair and reasonable compromise of the issues in dispute in light of the strengths and weaknesses of each party's case. Plaintiffs' Motion for Preliminary Approval of the Settlement should, respectfully, be granted.

Dated: April 1, 2015

Respectfully submitted,
s/ David R. Markham
Attorney for Plaintiffs and Class
E-mail:  dmarkham@markham-law.com

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement