# EXHIBIT A

**JOINT STIPULATION OF SETTLEMENT AND RELEASE**

This Joint Stipulation of Settlement and Release is made and entered into between Plaintiffs MARY LOEZA and ANGIE REVELES, as individuals and as representatives of the Class (together, "Plaintiffs"), and Defendant JPMORGAN CHASE BANK, N.A. ("Defendant" or "Chase"), who are parties to the Action defined herein (together, the "Parties").

It is hereby stipulated and agreed, by and between the undersigned Parties, subject to approval of the Court, that the settlement of this action shall be effectuated upon and subject to the following terms and conditions:

## I. <u>DEFINITIONS</u>

The following terms, when used in this Joint Stipulation of Settlement and Release, shall have the following meanings:

1. "Action" means the action styled as *Loeza, et al., v. JPMorgan Chase Bank, N.A.*, pending before the United States District Court for the Southern District of California, Case No. 13-cv-0095-L-BGS.

2. "Applicable Workweeks" shall mean any weeks worked for Defendant by a Class Member in the position of LM Underwriter Jr. at a California location from **December 11, 2008** through the Date of Preliminary Approval, as reflected on Defendant's internal records. Applicable Workweeks shall not include any entire Workweeks when a Class Member was on a paid or unpaid leave of absence or other absence from work, as ascertainable from Defendant's internal records.

3. "Claims Administrator" means Simpluris or a reputable third-party Claims Administrator to be selected by the Parties to administer this Settlement.

4. "Claims Administration Expenses" are those expenses incurred by the Claims Administrator in effectuating the Settlement.

5. "Claim Form" means the document attached hereto as **Exhibit 2**.

6.  "Claims Period" means a period of **forty-five (45) calendar days** from the date the Claims Administrator mails the Settlement Documents to Class Members.   If the 45th day falls on a Sunday or holiday, the Claims Period shall end on the next business day that is not a Sunday or holiday.

7.  "Class" and "Settlement Class" includes Named Plaintiffs and all putative class members covered by the Complaint, which shall be defined as follows:  All persons who are and/or were employed by JPMorgan Chase Bank, N.A. in the position of LM Underwriter Jr. at a California location from **December 11, 2008** through the Date of Preliminary Approval.

A.  "Release Holder Subclass" means any member of the Settlement Class who, according to Defendant's records, signed a release of his or her individual claims against Defendant for the period covering his or her employment as an LM Underwriter Jr. in California (through a Release Agreement, severance agreement, or otherwise), but is not subject to an agreement to arbitrate with Defendant.

B.  "Arbitration Subclass" means any member of the Settlement Class who, according to Defendant's records, is subject to an agreement to arbitrate with Defendant, but did not sign a release of claims against Defendant (through a Release Agreement, severance agreement, or otherwise).

C.  "Arbitration and Release Subclass" means any member of the Settlement Class who, according to Defendant's records, signed a release of claims against Defendant and is subject to an agreement to arbitrate claims with Defendant.

D.  "No Arbitration/No Release Subclass" means any member of the Settlement Class who, according to Defendant's records, is not a member of the Release Holder Subclass, Arbitration Subclass, or Arbitration and Release Subclass.

8.	"Class Counsel" means David R. Markham and Peggy J. Reali of The Markham Law Firm, and Richard E. Quintilone II of Quintilone & Associates.

9.	"Class Member" means each person eligible to participate in this Settlement who is a member of the Settlement Class defined above.

10.	"Class Member Released Claims" shall have the meaning as set forth in Paragraph 65 of this Agreement.

11.	"Class Period" shall mean the time period from December 11, 2008 through the Date of Preliminary Approval.

12.	"Class Representative Released Claims" shall have the meaning as set forth in Paragraph 64 of this Agreement.

13.	"Class Representative(s)," "Named Plaintiff(s)," and "Plaintiff(s)" shall mean Plaintiffs Mary Loeza and Angie Reveles.

14.	"Complaint" shall mean the operative Complaint filed in this Action originally filed with the Superior Court of the State of California, in and for the County of San Diego, Case No. 37-2012-00087455, and then removed to the United States District Court for the Southern District of California on January 14, 2013, Case No. 13-cv-95-L (BGS).

15.	"Court" shall mean the United States District Court for the Southern District of California.

16.	"Covered Position" means the position of LM Underwriter Jr.

17.	"Date of Preliminary Approval" means the date the Court approves this Stipulation of Settlement, and the exhibits thereto, and enters an Order providing for notice to the Class, an opportunity to opt-out of the Class, an opportunity to submit timely objections to the settlement, a procedure for submitting claims, and setting a hearing for Final Approval of the Settlement, including approval of attorneys' fees and costs.

18.     "Deficient Claim Form" means a Claim Form that is not signed by the Class Member submitting the Claim Form or cannot be verified by the Claims Administrator as being an authentic submission by the Class Member.

19.     "Deficient Claimant" means a Class Member who has submitted a Deficient Claim Form and has failed to cure its deficiencies within the time required by this agreement.

20.     "Deficient Opt-Out Form" means a Request for Exclusion that is not signed by the Class Member submitting the Request for Exclusion or cannot be verified by the Claims Administrator as being an authentic submission by the Class Member.

21.     "Deficient Opt-Out" means a Class Member who has submitted a Deficient Opt-Out Form and has failed to cure its deficiencies within the time required by this agreement.

22.     "Defendant's Counsel" means Morgan, Lewis & Bockius LLP.

23.     "Effective Date" means the later of: (a) the date of Final Approval if no objections are filed, or if any objections which were filed are withdrawn before the Final Approval date; (b) if one or more objections are filed and not subsequently withdrawn, the Effective Date is the date five calendar days after the deadline to file an appeal, unless an appeal is filed, in which case the Effective Date is the date five calendar days after an appeal is dismissed or the Final Approval order is affirmed on appeal.

24.     "Fairness Hearing" means the hearing on the Motion for Judgment and Final Approval.

25.     "Final Individual Settlement Amount" means the final gross amount sent to any Qualified Claimant under this Agreement.

26.     "Final Order and Judgment" means the final Order entered by the Court after the Fairness Hearing approving the settlement and entering judgment pursuant to this Settlement Agreement and in accordance with Fed. R. Civ. P. 58.

27.     "Individual Settlement Amount" means the amount allocated to each Class Member pursuant to this Agreement.

28.     "Late Claim Form" means a Claim Form that is submitted to the Claims Administrator after the end of the Claims Period.

29.     "Late Claimant" means a Class Member who has submitted a Late Claim Form.

30.     "Late Opt-Out Form" means a Request for Exclusion that is submitted to the Claims Administrator after the end of the Claims Period.

31.     "Late Opt-Out" means a Class Member who has submitted a Late Opt-Out Form.

32.     "LWDA" means the California Labor & Workforce Development Agency.

33.     "Maximum Settlement Amount" is the sum of Nine Hundred Fifty Thousand U.S. Dollars ($950,000), which represents the maximum amount payable in this Settlement by Defendant, and which includes, but is not limited to, all settlement payments to Qualified Claimants, all attorneys' fees, all litigation costs, all Claims Administration Expenses, all applicable taxes (but not Defendant's share of said taxes), all payments to the LWDA, interest, the Reserve Fund, and the Service Enhancements to the Class Representatives.

34.     "Minimum Qualified Claimant Settlement Amount" shall be an amount equal to 55% of the Net Settlement Amount, which will be distributed to Qualified Claimants subject to the provisions in Paragraph 62 herein.  Excluded from the Minimum Qualified Claimant Settlement Amount shall be the value of an Individual Settlement Amount attributable to any Class Member who submits a

timely and valid Request for Exclusion from the Settlement, which amounts shall not be paid by Defendant.

35.     "Net Settlement Amount" is the portion of the Maximum Settlement Amount eligible for distribution to Qualified Claimants.  It equals the Maximum Settlement Amount less Class Counsel's Court-approved attorneys' fees and litigation costs, Claims Administration Expenses, payment to the LWDA for the settlement of PAGA penalties, the Court-approved Service Enhancements to the Class Representatives, and the Reserve Fund.

36.     "Notice of Class Action Settlement" shall mean the document attached hereto as **Exhibit 1**.

37.     "Order Granting Preliminary Approval" means the Order entered by the Court preliminary approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class Members, and the time period for opt-outs and objections.

38.     "PAGA" shall mean the California Labor Code Private Attorneys General Act, California Labor Code §§ 2698 *et seq.*

39.     "Parties" means collectively Defendant and Plaintiffs, as defined herein.

40.     "Qualified Claimant" means a Class Member who has timely submitted a correctly completed and valid Claim Form to the Claims Administrator, signed under penalty of perjury.

41.     "Request for Exclusion" and "Opt-Out Form" means a written request from a Class Member to be excluded from this Settlement, pursuant to Paragraph 78.

42.     "Reserve Fund" means the amount of $10,000 to be reserved from the Net Settlement Amount from which Defendant may elect to make payments for

late claims, disputed settlement allocations, inadvertent errors or exclusions, and/or to resolve other disputes, as determined by Defendant, pursuant to Paragraph 79.

43.     "Service Enhancement" means the incentive payment to the Class Representatives in an amount not to exceed $5,000 for Plaintiff Reveles and $15,000 for Plaintiff Loeza as further defined in Paragraph 62.

44.     "Settling Class Members" shall mean all Class Members who do not submit a timely and valid Request for Exclusion from the Settlement to the Claims Administrator, consistent with the claim process as described herein, and, thus, means all of the Class Members who will become bound by the terms of the release in this Agreement.

45.     "Releasees" shall mean Defendant JPMorgan Chase Bank, N.A., its affiliates, divisions, subsidiaries, parents (including, without limitation, JPMorgan Chase & Co.), predecessors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, shareholders and/or successors, assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof.

46.     "Settling Parties" shall mean the Settling Defendants and Settling Plaintiffs.

47.     "Settlement Documents" shall mean the Notice of Class Action Settlement (Exhibit 1) and the Claim Form (Exhibit 2) attached hereto.

48.     "Stipulation of Settlement" and "Settlement Agreement" shall mean this Joint Stipulation of Settlement and Release.

## II.     DESCRIPTION OF THE LITIGATION AND POSITION OF THE PARTIES

49.     On December 11, 2012, Plaintiffs Mary Loeza and Angie Reveles, two former Loss Mitigation Junior Underwriters ("LM Underwriter Jr.") in Defendant's Rancho Bernardo, California, office, filed a putative class and

collective action complaint alleging claims under the Fair Labor Standards Act
("FLSA") and California law for alleged unpaid overtime based on off-the-clock
work, meal/rest period violations, inaccurate wage statements, failure to pay wages
twice monthly, unreimbursed business expenses, waiting time penalties, and unfair
competition, on behalf of a putative class of LM Underwriter Jrs. in California.
Plaintiffs seek damages, restitution, statutory penalties, civil penalties under the
California Labor Code Private Attorneys General Act ("PAGA"), and other relief.
Defendant answered the Complaint on January 11, 2013 and removed the Action to
federal court on January 14, 2013, based on federal question and jurisdiction under
the Class Action Fairness Act of 2005 ("CAFA").

       50.      Defendant denies Plaintiffs' claims, and asserts that, for any purpose
other than settlement, the Action is not appropriate for class or collective action
treatment pursuant to Rule 23 of the Federal Rules of Civil Procedure or 29 U.S.C.
§ 216(b), respectively.  Defendant further contends that it has complied with all
state wage and hour laws and with the FLSA.  Specifically, Defendant asserts that
it has had, during all relevant times, a policy strictly prohibiting off-the-clock
work, and that Plaintiffs and Class Members have been paid for all time worked.
Defendant also asserts that it has had, during all relevant times, policies providing
meal and rest breaks to Plaintiffs and Class Members in accordance with California
law.  Defendant also asserts that its itemized wage statements accurately contain all
required information under the law, and that Class Members were reimbursed for
reasonable and necessary business expenses as required by California law.
Defendant also asserts that employees were properly and timely compensated for
all wages due as required by California law.  Consequently, Defendant does not
believe that any liability to Plaintiffs or Class Members exists, or that Plaintiffs or
Class Members are entitled to any recovery.  Defendant also contends that a
significant number of Class Members agreed to individually arbitrate any and all

claims against Defendant, and that a significant number of Class Members agreed to release any claims against Defendant, including the claims at issue in this Action, in exchange for valid consideration.

51.     The Parties exchanged extensive data, information, and documents concerning Plaintiffs' allegations, both informally and through formal discovery, including seven depositions, production of over 1,200 pages of paper documents, production of voluminous electronically stored information ("ESI") (including emails, badge swipe records, and computer access records), contact information for a sample of putative class members, ESI for a portion of that sample, and expert discovery. The Parties also engaged in extensive meet and confer discussions concerning the scope of discovery, the retention and production of ESI, and engaged in discovery motions concerning their disputes.

52.     Defendant moved for summary judgment against the two individual Plaintiffs on November 22, 2013. On September 30, 2014, the court granted in part, and denied in part, the summary judgment motion.

53.     On December 9, 2014, the Parties participated in a mediation with Michael Dickstein. In settlement negotiations following the mediation, the Parties agreed to a mediator's proposal settling all claims alleged by the Plaintiffs on behalf of themselves and Class Members. At all times, the Parties' settlement negotiations have been non-collusive, adversarial, and at arm's length.

54.     Discussions between counsel for the Parties, discovery, as well as the investigation and evaluation of the claims of Plaintiffs by the Parties, have permitted each side to assess the relative merits of the claims and the defenses to those claims. The Parties agree that the above-described investigation and evaluation, as well as the information exchanged during litigation and settlement negotiations and mediation, are more than sufficient to assess the merits of the respective Parties' positions and to compromise the issues on a fair and equitable

basis. Based on their own independent investigations and evaluations, Class Counsel is of the opinion that the Settlement with Defendant for the consideration and terms set forth below, considering the class claims, and the risk of loss, is fair, reasonable, and adequate in light of all known facts and circumstances, and is in the best interests of the Class. Class Counsel is also of the opinion that the total consideration and payment set forth in this Stipulation of Settlement is adequate in light of the uncertainties surrounding the risk of further litigation, and the possible defenses that Defendant has asserted and could assert.

55. Reserved.

## III. BENEFITS OF THE SETTLEMENT TO THE PROPOSED CLASS AND DEFENDANTS

56. Class Counsel recognizes the substantial monetary benefit to the Class and the expenses and length of continued proceedings necessary to prosecute the Action against Defendant through class certification, trial and possible appeals. Class Counsel has also taken into account the uncertain outcome and risk of any litigation, especially in complex actions such as class actions, as well as the difficulties and delay inherent in such litigation. Class Counsel is cognizant that some recent court decisions involving claims for off-the-clock work and meal and rest period premium pay have denied class certification of those claims. Class Counsel is also cognizant that some Class Members are subject to arbitration agreements containing class and representative action waivers. Class Counsel is also cognizant that some Class Members signed individual releases of claims against Defendant. In light of these risks, Class Counsel has determined that the settlement set forth in this Stipulation of Settlement is in the best interest of the Class.

57. Defendant and its counsel have similarly concluded that it is desirable that the Action be settled in a manner and upon such terms and

conditions set forth herein in order to avoid further expense, inconvenience and distraction of further legal proceedings, and the risk of the outcome of the Action. Therefore, Defendant has determined that it is desirable and beneficial to put to rest the claims in the Action.

## IV.   **JURISDICTION AND VENUE**

58.     This Court has jurisdiction over the Parties and the subject matter of this Action. This Court will have continuing jurisdiction over the terms and conditions of this Settlement Agreement, until all payments and obligations provided for herein have been fully executed.

## V.   **OPERATIVE TERMS OF SETTLEMENT**

The Parties to this Action agree as follows:

59.     <u>Non-Admission</u>. Nothing in this Settlement Agreement, or any communications, papers, or orders related to this Settlement Agreement, shall be construed to be or deemed an admission by Defendant of any liability, culpability, negligence, or wrongdoing toward the Class Representatives, the Class Members, or any other person, and Defendant specifically disclaims any liability, culpability, negligence, or wrongdoing toward the Class Representatives, the Class Members, or any other person, or that class or collective action certification is appropriate in this or any other matter. Each of the Parties has entered into this Settlement Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies. This Settlement Agreement and any communications, papers, or orders related to the Settlement Agreement may not be cited or otherwise admitted as evidence of liability or that class or collective action certification is appropriate. There has been no final determination by any Court as to the merits of the claims asserted by Plaintiffs against Defendant or as to whether a class or collective action should be certified, other than for settlement purposes only. Furthermore, nothing in this Settlement Agreement shall

be considered any type of waiver of any of Defendant's alternative dispute resolution provisions or any other alternative dispute resolution policy applicable to some Class Members; nor shall this Settlement be considered any type of waiver of any release agreement executed by some Class Members. It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims against the Settling Defendants arising from or related to the Action. It is the intention of the Parties that this Settlement Agreement shall constitute a full and complete settlement and release of the claims averred in the Action.

60.     <u>Conditional Certification of the Settlement Class</u>. The Parties stipulate to the conditional certification of the Settlement Class as defined herein for settlement purposes only. As set forth in Paragraphs 61, 70 and 71, this provision is void and all terms of this Settlement are void if this Settlement is not approved by the Court. The Parties further stipulate, for settlement purposes only, that Class Counsel may be appointed and approved as Class Counsel for the Settlement Class, and that Plaintiffs Mary Loeza and Angie Reveles may be appointed Class Representatives for the Settlement Class. Defendant's stipulation to this Settlement Class shall in no way be considered any type of waiver of any alternative dispute resolution provisions or any other alternative dispute resolution policy applicable to some Class Members, nor any type of waiver of any release agreement executed by some Class Members. Defendant's stipulation to this Settlement Class shall not be construed as an admission or acknowledgement of wrongdoing of any kind or that any class should be certified or given collective action treatment. The Settlement Class may be provisionally certified as a class action pursuant to Fed. R. Civ. P. 23 for the purposes of the monetary relief provided in this Settlement Agreement**.**

61.    <u>Non-Approval by the Court</u>.  In the event that this Settlement Agreement is not approved by the Court, fails to become effective, or is reversed, withdrawn or modified by the Court:

A.    The Settlement Agreement shall have no force or effect, other than the confidentiality and non-disclosure provisions in Paragraphs 86 and 87, and the non-admission provisions in Paragraph 59;

B.    The Settlement Agreement shall not be admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural, except to enforce the terms of this Paragraph 61;

C.    The preliminary and conditional certification of the class shall become null and void, and the fact of certification shall not be admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; and

D.    None of the Parties to this Settlement Agreement will be deemed to have waived any claims, objections, defenses or arguments with respect to the issue of class or collective certification or the merits of Plaintiffs' claims.

62.    <u>Allocations to be Paid from the Maximum Settlement Amount</u>. Defendant shall pay an amount not to exceed Nine Hundred Fifty Thousand U.S. Dollars ($950,000.00), as the Maximum Settlement Amount to resolve the Action on a class-wide basis, inclusive of all settlement payments to Qualified Claimants, settlement payments from the Reserve Fund, Class Counsel's Court-approved attorneys' fees and out-of-pocket litigation expenses, Court-approved Service Enhancements to the Class Representatives, Claims Administration Expenses, and the LWDA's share of PAGA penalties.  Under no circumstances will Defendant be obligated to pay any more than the Maximum Settlement Amount of $950,000.00, exclusive of employer-paid taxes Defendant shall pay as specified in Paragraph 33

above.  The unclaimed settlement share of the Class Members who do not become Qualified Claimants shall remain the property of Defendant, except as provided below.  The Parties agree to the following allocations to be paid from the Maximum Settlement Amount, subject to Court approval:

      A.     From the Maximum Settlement Amount, Class Counsel may seek approval from the Court of a maximum of $285,000.00 in attorneys' fees (30% of the Maximum Settlement Amount), and a maximum of $35,000.00 in actual litigation costs, for serving as Class Counsel, both of which Defendant will not oppose.

      B.     From the Maximum Settlement Amount, the Class Representatives may seek approval from the Court of a Service Enhancement payment not to exceed $5,000 for Reveles and $15,000 for Loeza, for a general release of their respective claims and for serving as a Class Representative, which Defendant will not oppose.

      C.     From the Maximum Settlement Amount, Claims Administration Expenses in a reasonable amount, which are estimated to be approximately $12,000.

      D.     From the Maximum Settlement Amount, $2,500 shall be allocated to PAGA penalties, from which $1,875 (75%) shall be payable to the LWDA, representing the LWDA's share of PAGA penalties.

      E.     The portion of the Maximum Settlement Amount remaining after subtracting the Claims Administration Expenses, Court-approved attorneys' fees and litigation costs, Court-approved Service Enhancements, the Reserve Fund, and the portion of PAGA penalties payable to the LWDA, shall be designated the Net Settlement Amount eligible for distribution to Qualified Claimants on a pro rata basis consistent with the allocation formulas set forth in Paragraph 66 and its subparts.  $10,000 shall be set

aside as a "Reserve Fund" to be paid in accordance with the terms of Paragraphs 42 and 79. In the event that Qualified Claimants do not claim a minimum of 55% of the Net Settlement Amount, the difference between the claimed amount and 55% of the Net Settlement Amount shall be distributed pro rata to increase the Individual Settlement Payments of the Qualified Claimants, in accordance with the allocation formula set forth herein.

F.      If the Court approves a lesser amount of attorneys' fees, litigation costs, or Service Enhancements than those sought by the Class Representatives and Class Counsel, any amount disallowed by the Court shall be included in the Net Settlement Amount and the Parties agree that the settlement shall remain binding with such modification(s) and its terms will be otherwise unchanged.

63.      Tax Treatment. Except for the Service Enhancements described above to be paid to the Class Representatives, all settlement payments to Qualified Claimants shall be allocated as follows: unpaid wages (50% of each Individual Settlement Amount) and non-wages (50% of each Individual Settlement Amount). The Class Representatives and Qualified Claimants must pay their own portion of payroll and income taxes on the 50% of each settlement payment that is unpaid wages, and such amounts will be withheld from settlement payments. Defendant's share of applicable payroll taxes and related withholdings shall not be paid from the Net Settlement Amount or Maximum Settlement Amount. The 50% of each Individual Settlement Amount and the Service Enhancements to the Class Representatives shall be treated as non-wage compensation, and shall be reported on an IRS 1099 without withholdings. The Class Representatives and Qualified Claimants shall be exclusively liable for any and all taxes due on such amounts. All Parties represent that they have not received, and shall not rely on, advice or

representations from other Parties or their agents or attorneys regarding the tax treatment of payments under federal, state, or local law.

64.     <u>General Release by Class Representatives (Class Representative Released Claims)</u>.  The releases agreed upon and made part of the settlement by the Class Representatives (the "General Release") shall include a general release of Defendant, its affiliates, divisions, subsidiaries, parents (including, without limitation, JPMorgan Chase & Co.), predecessors, any merged entity or merged entities, and/or its or their present and former officers, partners, directors, employees, agents, shareholders and/or successors, assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof (hereinafter referred to as "Releasees"), from all claims, actions, causes of action, lawsuits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, charges, complaints and demands whatsoever, whether in law or equity, known or unknown, which against the Releasees, the Class Representatives and the Class Representatives' heirs, executors, administrators, successors, and assigns, may now have or hereafter later determine that she has or had upon, or by reason of, any cause or thing whatsoever relating to her employment or termination of employment, including, but not limited to, claims arising under the Americans With Disabilities Act, the National Labor Relations Act, the Fair Labor Standards Act, the Equal Pay Act, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, as amended, but not limited to, breach of fiduciary duty and equitable claims to be brought under §1132(a)(3) ("ERISA"), the Worker Adjustment and Retraining Notification Act, as amended, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Civil Rights Acts of 1866, 1871 and 1991, including Section 1981 of the Civil Rights Act, the Family and Medical Leave Act (to the extent permitted by law), the California Family Rights Act ("CFRA"), Cal. Bus. and Prof. Code § 17200 *et seq.*

("UCL"), and/or any other federal, state or local human rights, civil rights, wage-hour, pension or labor law, rule, statute, regulation, constitution or ordinance and/or public policy, contract or tort law, or any claim of retaliation under such laws, or any claim of breach of any contract (whether express, oral, written or implied from any source), or any claim of intentional or negligent infliction of emotional distress, tortious interference with contractual relations, wrongful or abusive or constructive discharge, defamation, prima facie tort, fraud, negligence, loss of consortium, malpractice, breach of duty of care, breach of fiduciary duty or any action similar thereto against Releasees, including any claim for attorneys' fees, expenses or costs based upon any conduct from the beginning of the world up to and including the date of this General Release; provided, however, that Class Representatives do not waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), subject to the confidentiality provisions of the Settlement Agreement, and subject to the condition that the Class Representatives agree not to seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom and agrees that she understands that such limitation does not in any way restrict her ability to file and pursue such charge consistent with the confidentiality obligations set forth in Paragraph 4 of the Settlement Agreement); and further provided, however, that Class Representatives do not waive any rights with respect to, or release Releasees from any claims for California Workers' Compensation benefits (except that Class Representatives hereby release and waive any claims that, as a result of their termination, they are entitled to additional benefits or payments); and further provided, however, that Class Representatives do not release any claim for unemployment compensation benefits; and further provided, however, that Loeza does not release in this Action any claims brought in the related action *Mary Loeza v. JPMorgan Chase Bank, N.A.*, U.S. District Court, Southern District of California, Case No. 14-CV-2494-MMA-WVG, as well as any claims asserted in

the Fourth Amended Class Action Complaint in the purported class action entitled *In re JPMorgan Chase & Co. ERISA Litigation*, pending before the United States District Court, Southern District of New York, Case No. 1:12-cv-04027-GBD, alleging violations of the Employee Retirement Income Security Act ("ERISA") on behalf of a putative class of other similarly situated employees and former employees who were participants in and beneficiaries of the JPMorgan Chase 401(k) Savings Plan (hereafter "*ERISA Litigation*"); and further provided, however, that Class Representatives do not release any claim that cannot be released by private contract or for breach of the terms of the Settlement Agreement between Class Representatives and Releasees.

A.      Thus, for the purpose of implementing a full and complete release and discharge of the Releasees, Class Representatives expressly acknowledge that this General Release is intended to include in its effect, without limitation, all claims which Class Representatives do not know or suspect to exist in Class Representatives' favor at the time of execution hereof, and that this General Release contemplates the extinguishment of any such claim or claims.

B.      In connection with such waiver and relinquishment, Class Representatives hereby acknowledge that they or their attorneys may hereafter discover claims or facts in addition to, or different from, those which they now know or believe to exist, but that Class Representatives expressly agree to fully, finally and forever settle and release any and all claims, known or unknown, suspected or unsuspected, which exist or may exist on their behalf against Releasees at the time of execution of the Settlement Agreement, including, but not limited to, any and all claims relating to or arising from Class Representatives' employment with Releasees or the cessation of that employment.  Class Representatives and Releasees further acknowledge, understand and agree that this representation and commitment is essential to each Party and that this Settlement

Agreement would not have been entered into were it not for this representation and commitment.

C.     It is further understood and agreed that as a condition of this General Release, Class Representatives expressly waive and relinquish any and all claims, rights or benefits that they may have under California Civil Code Section 1542, which provides as follows:.

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.

65.     Release by Settlement Class Members (Class Member Released Claims).  Upon Final Approval, the Settling Class Members shall be deemed to have fully, finally, and forever released Releasees from all any and all claims that accrued or accrue between December 11, 2008 and the Date of Preliminary Approval based on their employment in California as an LM Underwriter Jr. for any alleged failure to pay all wages due (including overtime), failure to pay for all hours worked (including off-the-clock work), failure to provide meal and rest periods, failure to timely pay wages and final wages, failure to reimburse business expenses, and/or failure to furnish accurate wage statements, including but not limited to claims for recovery of overtime pay, minimum wage, premium pay, and penalties under any legal theory, including claims derivative and/or related to these claims, including under California Labor Code §§ 201, 202, 203, 204, 210, 221, 222, 222.5, 223, 224, 225.5, 226, 226.3, 226.7, 227, 227.3, 510, 512, 558, 1194, 1194.2, 1197, 1197.1, 1198, 2698 *et seq.*, and 2802, California's Wage Orders, and the California Business & Professions Code.  Class Members shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the Class

Member Released Claims pursuant to Section 1542 of the California Civil Code, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor

All Settling Class Members shall be bound by this Release whether or not they return the Claim Form necessary to receive payment of their allocated settlement amount. All Settling Class Members who submit a valid Claim Form shall also release any and all claims under the Fair Labor Standards Act ("FLSA"), including but not limited to claims under 29 U.S.C. § 206, 211(c) and 215(a), including liquidated damages, whether known or unknown, based on their employment in California as an LM Underwriter Jr., that accrued or accrue prior to the date the Settling Class Member signed the Claim Form. Provided, however, that only those Settling Class Members who sign Claim Forms which have the FLSA release language set forth therein shall release claims under FLSA.

66.    <u>Calculation of Settlement Amounts</u>. The Claims Administrator will calculate Individual Settlement Amounts for Class Members based on each Class Member's Applicable Workweeks as reflected on Defendant's internal records.

A.    The Claims Administrator shall calculate each Class Member's potential share of the Net Settlement Amount (i.e., the Class Member's Individual Settlement Amount) by calculating the Applicable Workweeks worked by the Class Member during the Class Period. The Individual Settlement Amount allocation for each Class Member shall then be determined based on the number of Weighted Applicable Workweeks for each Class Member.

B.     A Class Member's Weighted Applicable Workweeks shall be calculated based on whether the Class Member is a member of the No Arbitration/No Release Subclass, Arbitration Subclass, Release Holder Subclass, or Arbitration and Release Subclass.  The Applicable Workweeks shall be multiplied by a number to achieve the Weighted Applicable Workweeks, as follows:

- No Arbitration/No Release Subclass: 100% of the Class Member's Applicable Workweeks
- Arbitration Subclass: 30% of the Class Member's Applicable Workweeks
- Release Holder Subclass: 20% of the Class Member's Applicable Workweeks
- Arbitration and Release Subclass: 15% of the Class Member's Applicable Workweeks

C.     The total of the Weighted Applicable Workweeks shall be divided into the Net Settlement Amount to achieve a Weekly Settlement Amount.  Each Individual Settlement Amount shall be calculated by multiplying a Class Member's Weighted Applicable Workweeks times the Weekly Settlement Amount.

D.     Payments to Qualified Claimants shall be subject to the Minimum Qualified Claimant Settlement Amount, representing 55% of the Net Settlement Amount.  Defendant will not be required to pay any unclaimed amounts above the Minimum Qualified Claimant Settlement Amount.

E.     If the payments to Qualified Claimants aggregate to an amount that is less than the Minimum Settlement Amount, the difference between the total aggregate Individual Settlement Amounts payments to Qualified

Claimants and the Minimum Settlement Amount will be re-allocated to Qualified Claimants on a pro rata basis utilizing the same allocation formula set forth in this Paragraph and its sub-paragraphs resulting in a Final Individual Settlement Amount.

F.   The value of an Individual Settlement Amount attributable to any Class Member who opts out shall be excluded from the Net Settlement Amount, and that value shall remain with Defendant.

67.   <u>Eligibility for Settlement Payments</u>.  Class Members who have timely submitted valid Claim Forms will be considered "Qualified Claimants" eligible to receive an Individual Settlement Amount.  Only Qualified Claimants will be eligible to receive an Individual Settlement Amount.  Settling Class Members who have not submitted timely and valid Claim Forms will still be bound by the Settlement and its releases, but will not be entitled to receive payment of their share of the settlement.  Class Members who have submitted Claim Forms will also release claims under the FLSA as provided in Paragraph 65.

68.   <u>Distribution of Settlement Payments</u>.  When and if the Court grants Final Approval of the Settlement, and the Effective Date as defined herein has passed, the Claims Administrator shall then prepare a final list of all Qualified Claimants who timely submitted a valid Claim Form, along with a final breakdown of all disbursements under this Settlement that are required to be funded by Defendant, including Defendant's share of applicable payroll taxes.  Defendant shall then provide the total amount required to be funded by Defendant to the Claims Administrator within fifteen (15) business days of the Effective Date.  The Claims Administrator shall then pay the Qualified Claimants, the Class Representative Service Enhancements, Class Counsel's attorney fees and litigation costs, and its own Claims Administration Expenses, in the amounts awarded by the Court, within ten (10) calendar days thereafter.

69.     Court Approval of the Settlement.  Subject to Defendant's review and approval, Class Counsel shall be responsible for preparing and filing, in coordination with Defendants' Counsel, the Motion for Preliminary Approval of the Settlement and the Motion for Final Approval of the Settlement.  Prior to the Final Approval hearing by the Court, the Parties will mutually prepare and submit a proposed Final Order(s):  (i) certifying the Class for settlement purposes only; (ii) finding the settlement fair, reasonable, and in the best interests of the Class Members; (iii) approving Class Counsel's application for an award of attorneys' fees and litigation costs; (iv) approving the Class Representative's application for a Service Enhancement; and (v) approving payment of Claims Administration Expenses.  The Order for Final Approval of Settlement shall include the names of all Class Members who submitted timely and valid opt-out requests.

70.     Right to Revoke and Reservation of Rights.  Defendant has the right to withdraw from the Settlement at any time prior to final approval if: (a) 5% or more of all Class Members opt out of the Settlement; (b) the Settlement is construed in such a fashion that Defendant is required to pay more than the Maximum Settlement Amount; (c) the Court does not certify the Settlement Class as defined in Paragraph 7, or does not certify a class releasing the claims set forth in Paragraph 65 (and their subparagraphs) or otherwise makes an order inconsistent with any of the terms of this Settlement Agreement; or (d) Plaintiffs or their counsel materially breaches the Settlement Agreement.   If for any reason the Settlement is not approved by the Court, or if Defendant withdraws from the Settlement pursuant to this paragraph, this Settlement Agreement and any related settlement documents, including any Memorandum of Understanding between the Parties, shall be null and void, except for the provisions concerning Confidentiality and No Admission of Liability, and any class certified for settlement purposes will be vacated.  In such an event, neither the Settlement Agreement, nor the settlement

documents, nor the negotiations leading to the Settlement may be used as evidence for any purpose, and Defendant shall retain the right to challenge all claims and allegations in the action, to assert all applicable defenses, and to dispute the propriety of class certification on all applicable grounds.

71. <u>Termination of Settlement Agreement</u>. If the conditions of the Settlement set forth in this Stipulation of Settlement are not satisfied, or if Settling Defendants void the Settlement under Paragraph 70 above, or if the Court does not dismiss the Action with prejudice against Settling Defendants as provided for in this Stipulation, or if appellate review is sought and on such review the Court's decision is materially modified or reversed, or, if one or more of the terms of the Stipulation of Settlement is not approved or the Stipulation with respect to one or more such terms is materially modified or reversed, then this Stipulation shall be canceled, terminated, and shall have no force or effect. If Final Approval does not occur, or if this Stipulation of Settlement is terminated, revoked, or canceled pursuant to its terms, the Parties to this Stipulation of Settlement shall be deemed to have reverted to their respective status as of the date and time immediately prior to the execution of this Stipulation of Settlement.

## VI. <u>CLAIMS ADMINISTRATION</u>

72. <u>Selection and Compensation of Claims Administrator</u>. The Parties have selected Simpluris as the third-party Claims Administrator to give notice of and communicate with Class Members regarding the settlement. The Claims Administrator shall calculate and provide its Claims Administration Expenses and costs to the Parties and the Court prior to the Final Approval hearing, and the proposed Final Approval Order shall request approval of the Claims Administration Expenses to be paid out of the Maximum Settlement Amount. If the Settlement is not given final approval by the Court, the Parties shall bear

Claims Administration Expenses equally.  All costs associated with claims administration shall come out of the Maximum Settlement Amount.

73.     Responsibilities of Claims Administrator.  The Claims Administrator shall be responsible for, and the Claims Administration Expenses shall cover:  (a) calculating each Class Member's potential Individual Settlement Amount from the Net Settlement Amount; (b) preparing and mailing Settlement Documents; (c) taking appropriate steps to trace, update and locate any individual Class Member whose address or contact information as provided to the Claims Administrator is inaccurate or outdated; (d) receiving and reviewing all Claim Forms to ensure completeness and timeliness; (e) receiving and providing to Class Counsel and Defendant's Counsel, and the Court, Requests for Exclusion and copies of written objections; (f) providing to Class Counsel and Defendant's Counsel a weekly report of activity; (g) mailing a reminder postcard to Class Members who have not returned a Claim Form or Request for Exclusion within the first 28 days of the Claims Period; (h) maintaining prior to disbursement all settlement funds in an interest-bearing account at a federally insured banking institution; (i) calculating and paying the Individual Settlement Amounts or, if applicable, Final Individual Settlement Amounts, due to be paid to Qualified Claimants after calculation of the Net Settlement Amount for Class Members who opt out of the settlement; (j) reporting to Class Counsel, Defendant's Counsel, and the Court regarding the completion of the tasks identified in this paragraph; and (k) calculating Defendant's share of payroll taxes, including, FICA and FUTA, on the portion of each Individual Settlement Amount allocated to unpaid wages.

74.     Class Data.  Defendant will provide the name, last known address, social security number, Subclass membership, and Applicable Workweeks for each member of the Settlement Class ("Class Data") to the Claims Administrator only. Data shall be provided in a format to be determined by the Claims Administrator

and Defendant.  Defendant will provide the Class Data to the Claims Administrator no later than fourteen (14) calendar days after the Court grants Preliminary Approval of the Settlement.  Class Data shall only be used by the Claims Administrator for the purpose of calculating Individual Settlement Amounts, and preparing and mailing Settlement Documents, and locating Class Members whose Settlement Documents are returned as undeliverable.  Class Data for the Settlement Class shall not be disclosed to Class Counsel, the Class Representatives, or any other Class Members without the written consent of Defendant.  The Claims Administrator shall run the Class Data through the National Change of Address database, and will use the most recent address for each Class Member – either from Defendant's records or the National Change of Address database – when mailing the Class Notice.  The Claims Administrator shall mail the Settlement Documents to Class Members by First Class Mail.  It will be conclusively presumed that if an envelope so mailed has not been returned within thirty (30) days of the mailing that the Class Member received the Settlement Documents.  With respect to any returned envelopes, the Claims Administrator shall take all reasonable steps to locate any Class Member whose Class Notice is returned as undeliverable, such as a skip trace procedure or other independent research, to obtain a current address and, if an updated address is located, then re-mail the envelope to such address within five (5) business days of obtaining an updated address.

75.    <u>Class Notice</u>.  Within twenty-one (21) calendar days from the date the Claims Administrator receives the Class Data, and after obtaining the Parties' approval of the formatted Settlement Documents and estimated settlement amounts, or as soon as practically and economically feasible as determined by the Claims Administrator, the Claims Administrator shall mail Settlement Documents, consisting of the Court-approved Notice of the Class Action Settlement, in form substantially similar to that attached hereto as Exhibit 1, and a court-approved

Claim Form, in form substantially similar to that attached hereto as Exhibit 2, to the Class Members described herein. All costs associated with notice shall be paid from the Maximum Settlement Amount.

76. <u>Claims Period</u>. Class Members shall have forty-five (45) days from the date of mailing of the Settlement Documents to return valid Claim Forms (the "Claims Period") to the Claims Administrator. If the 45th day falls on a Sunday or holiday, the deadline to return Claims Forms will be the next business day that is not a Sunday or holiday. Class Members who return valid, signed Claim Forms bearing a postmark or other proof of transmission within the Claims Period shall be deemed "Qualified Claimants" under the settlement. Qualified Claimants will receive their Individual Settlement Amount or if applicable, Final Individual Settlement Amount, from the Net Settlement Amount pursuant to this Agreement as calculated by the Claims Administrator, and will consent to waive claims under the FLSA.

77. <u>Challenges to Class Member's Employment Data</u>. In calculating each Class Member's Individual Settlement Amount, Defendant's records regarding Subclass membership and Applicable Workweeks of Class Members shall be presumed to be correct. Class Members who challenge Defendant's records must submit a challenge in writing to the Claims Administrator and will bear the burden of proof, i.e., a Class Member who fails to provide written proof establishing the correctness of his or her challenge will have his or her challenge denied. All such challenges must be sent within the 45-day Claims Period in which Class Members must submit Claim Forms. The Claims Administrator will inform Plaintiffs' Counsel and Defendant's Counsel in writing of any timely filed challenges. The Claims Administrator will investigate the challenge, including by consulting with Defendant and Defendant's Counsel, and shall make the final decision whether any additional amount is owed to the Class Member making the

challenge. In no case will a challenge result in a payment by Defendant in excess of the Maximum Settlement Amount. Any challenges that result in additional Individual Settlement Amounts to a Qualified Claimant shall be paid from the Reserve Fund, calculated after Class Member Individual Settlement Amounts have already been finally calculated as set forth herein.

78. <u>Opt-Outs/Requests for Exclusion from the Settlement</u>. Class Members who wish to "opt-out" of and be excluded from the Settlement Class must submit a written Request for Exclusion from the Settlement bearing a post-mark with a date within the Claims Period. If a Class Member submits a deficient opt-out, the Claims Administrator shall notify the Class Member of the deficiency within five (5) business days of receipt. The Class Member shall have until the end of the Claims Period, or an additional ten (10) days if notice of the deficiency is provided not more than five (5) days before the end of the Claim Period, to cure said deficiencies, at which point his or her Request for Exclusion will be rejected if not received. Class Members submitting Late Opt-Out Forms or Deficient Opt-Out Forms shall be bound by the Settlement and its releases but will not be considered Qualified Claimants unless they have timely submitted a Claim Form. If a Class Member submits both a Claim Form and an Opt Out Form bearing a post-mark from a date within the Claims Period, the Claim Form will be deemed valid and the Opt Out Form will be deemed to be invalid and the Class Member will be considered a Qualified Claimant, regardless of the date on either document or the date the documents are postmarked.

79. <u>Reserve Fund</u>. A Reserve Fund in the amount of $10,000 shall be deducted from the Net Settlement Amount in order to: (a) fund Claim Forms accepted as valid that were not accepted until after Individual Settlement Amounts were calculated; (b) supplement a recalculated Individual Settlement Amount after a Class Member successfully challenges the original settlement allocation and the

challenged claim is resolved; and/or (c) for non-Class Members who have a good-faith claim to be considered a Class Member, as verified by Defendant. If the payments from the Reserve Fund exceed $10,000, the $10,000 will be allocated to all those filing acceptable claims from the Reserve Fund on a pro rata basis. Defendant will not be required to pay and will retain, any unclaimed amounts from the Reserve Fund that remain ninety (90) days after the Effective Date.

80.     <u>Claim Form for the Class Representatives</u>. The Class Representatives must submit Claim Forms in order to be eligible to receive their Individual Settlement Amounts. Class Counsel shall ensure that the Class Representatives timely submit their Claim Forms. The Class Representatives agree that they cannot opt-out of the settlement or object to the settlement.

81.     <u>Deficient Claims</u>. The Claims Administrator shall notify Class Members who submit Deficient Claim Forms of the deficiency within five (5) business days of receipt. Deficient Claimants will have until the end of the Claims Period to cure said deficiencies, or an additional ten (10) days if notice of the deficiency is provided not more than five (5) days before the end of the Claims Period, at which point his or her Claim Form will be rejected if not received. Deficiencies that are not cured shall render the Deficient Claimant's claim for his or her Individual Settlement Amount waived, but the Deficient Claimant will still be bound by the releases in this Settlement.

82.     <u>Releases</u>. Class Members who do not return a valid Claim Form within the Claims Period will not receive an Individual Settlement Amount but shall remain subject to the Class Member Released Claims as defined in Paragraph 65.

83.     <u>Objections and Final Approval of Settlement</u>. Only Class Members who do not opt-out of the Settlement may object to the Settlement. All objections must be filed with the Court and personally served upon all counsel of record by no

later than forty-five (45) days after the mailing of the Class Notice, and this deadline applies notwithstanding any argument regarding non-receipt or delayed receipt of the Settlement Documents.  Any Class Member or purported Class Member who fails to file and serve timely written objections in this manner shall be deemed to have waived any objections and shall be foreclosed from making any objection to the Settlement and from filing any appeal from any Final Approval order issued by the Court.  The Parties may file responses to any objections submitted by objecting Class Members at or prior to the hearing for Final Approval of the Settlement.  Class Counsel shall file and serve their motion for approval of attorneys' fees, litigation costs, and Service Enhancement, along with all supporting evidence, no later than thirty (30) days from the date of mailing of the Settlement Documents, in order to allow Class Members a reasonable opportunity to object to said motions within the deadline for filing objections.

## VII.  MISCELLANEOUS PROVISIONS

84.     <u>Covenants and Representations by the Class Representative</u>.  The Class Representatives covenant and represent as follows:

A.     Upon Final Judgment and Final Approval of the Settlement, Class Representatives covenant that they will not participate in any other pending or future legal actions against Defendant, bringing claims covered by the Class Representative Released Claims, and will opt-out of those actions.

B.     Class Representatives agree that they will not seek re-employment with Defendant or the Releasees.

C.     As set forth in Paragraph 87, Class Representatives and Class Counsel agree not to disclose the terms of this Settlement except to the extent necessary as provided in Paragraph 87.

D.      Class Representatives certify that they have returned all of Defendant's property in their possession or control, including without limitation, equipment, telephones, credit cards, keys, pagers, tangible proprietary information, documents, computers and computer discs, personal data assistants, files and data, which they prepared or obtained during the course of their employment.

85.     Drafting.  The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive, arm's-length negotiations between the Parties and that neither Party shall be considered the "drafter" of this Settlement Agreement for purposes of having terms construed against that Party.  Paragraph titles are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any of its provisions.

86.     Class Data Confidential.  Class Data shall be kept strictly confidential by the Claims Administrator, who will not release such information to Class Counsel except as provided in Paragraph 74 and if any Class Data needs to be filed to effectuate the settlement, it will be filed under seal.  Class Counsel agrees that any information they receive or have received in connection with this Settlement may be used for this Action only, and may not be used for any purpose or in any other action or proceeding.

87.     Non-Disclosure.  Named Plaintiffs and Class Counsel agree not to disclose the terms of this settlement except in court papers or if required by legal process.  Named Plaintiffs and Class Counsel shall not issue a press release, hold a press conference, publish information about the settlement on any website, or otherwise publicize the settlement.  Named Plaintiffs and Class Counsel agree not to respond to any press inquiries except to refer reporters to the papers filed with the Court.

88.     Uncashed Settlement Checks.  Settlement checks sent to Qualified Claimants shall include a "Stale Date" that is at least 180 days after the date the checks are issued.  Settlement checks sent to Qualified Claimants that remain uncashed after the Stale Date may be canceled.  Those Qualified Claimants who fail to cash their settlement checks will be deemed to have waived irrevocably any right in or claim to an Individual Settlement Amount but the Settlement Agreement and the Class Member Released Claims shall remain binding upon them.  Any amounts from settlement checks that remain uncashed and otherwise unclaimed after the 180 day period shall escheat to the State of California.

89.     Reserved.

90.     Returns and/or Destruction of Confidential Settlement Materials. Class Representatives and Class Counsel agree to return and/or destroy all documents produced to them for settlement purposes in this Action.  If the Class Representatives and Class Counsel elect to destroy said documents, they shall timely provide an affidavit of destruction to Defendants' Counsel.

91.     Cooperation.  The Parties agree to cooperate fully with one another to accomplish and implement the terms of this Settlement.  Such cooperation shall include, but not be limited to, execution of such other documents and the taking of such other action as may reasonably be necessary to fulfill the terms of this Stipulation of Settlement.  The Parties to this Settlement Agreement shall use their best efforts, including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary by Court order, or otherwise, to effectuate this Settlement Agreement and the terms set forth herein.

92.     Extensions of Time.  If a party cannot reasonably comply with an obligation under this Settlement Agreement by the deadline set forth herein applicable to that obligation, that party may apply to the Court for a reasonable

extension of time to fulfill that obligation.  Consent to such a request for an extension will not be unreasonably withheld by the other party.

93.    <u>No Impact on Benefit Plans.</u>  Neither the Settlement nor any amounts paid under the Settlement will modify any previously credited hours or service under any employee benefit plan, policy, or bonus program sponsored by Defendant.  Such amounts will not form the basis for additional contributions to, benefits under, or any other monetary entitlement under Defendant's sponsored benefit plans, policies, or bonus programs.  The payments made under the terms of this Stipulation shall not be applied retroactively, currently, or on a going forward basis, as salary, earnings, wages, or any other form of compensation for the purposes of any Defendant's benefit plan, policy, or bonus program.  Defendant retains the right to modify the language of its benefit plans, policies and bonus programs to effect this intent, and to make clear that any amounts paid pursuant to this Settlement are not for "hours worked," "hours paid," "hours of service," or any similar measuring term as defined by applicable plans, policies and bonus programs for purposes of eligibility, vesting, benefit accrual, or any other purpose, and that additional contributions or benefits are not required by this Stipulation of Settlement.

94.    <u>Class Action Fairness Act</u>.  Defendant shall serve upon the appropriate government officials and state official of each state in which, according to its records, a Class Member resides and the appropriate federal official a notice of the proposed settlement consisting of the documents and information required by 28 U.S.C. § 1715(b).  If any state or federal officials and/or agencies make any objection to the Settlement, no payments of any kind shall be made under this Settlement until such objections have been resolved and the time to appeal any resolution has expired.

95. <u>Notices</u>. Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States certified mail, return receipt requested, addressed as follows:

To the Plaintiff Class:

David R.Markham
Peggy J. Reali
THE MARKHAM LAW FIRM
750 B Street, Suite 1920
San Diego, CA 92101

Richard E. Quintilone II
QUINTILONE & ASSOCIATES
22974 El Toro Road, Suite 100
Lake Forest, CA 92630-4961

To the Defendants:

John S. Battenfeld
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132

John D. Hayashi
MORGAN, LEWIS& BOCKIUS LLP
5 Park Plaza, Suite 1750
Irvine, CA 92614

96. <u>Integration and Modification</u>. This Stipulation contains the entire agreement between the Parties relating to any and all matters addressed in the Settlement Agreement, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, with respect to such matters are extinguished. This Stipulation may not be changed, altered, or modified, except in writing signed by counsel for the Parties hereto and approved by the Court. This Stipulation shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors, and assigns.

However, this Stipulation shall not supersede any prior arbitration agreements and/or release agreements concerning a Class Member. The releases contained within this Settlement shall be in addition to and cumulative with any other release by an individual Class Member.

97.　　Governing Law. The rights and obligations of the Parties hereunder shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of California, and of the United States, without regard to principles of conflict of laws.

98.　　Reserved.

99.　　Counterparts. Because the proposed Class has not yet been certified, and the members of the proposed Class are so numerous, the Parties agree that it is impossible or impractical to have each Class Member sign this Stipulation. It is agreed that, for purposes of seeking Court approval of the Settlement, this Stipulation of Settlement may be executed on behalf of the proposed Class by Class Counsel. This Settlement Agreement shall become effective upon its execution by all of the undersigned. The Settling Parties may execute this Settlement Agreement in any number of counterparts, and a facsimile signature shall have the same force and effect as an original.

///

///

///

///

///

///

///

///

///

100.     Parties' Authority.  The signatories to this Stipulation represent that they are fully authorized to enter into this Stipulation and bind the Parties to its terms and conditions.

IN WITNESS WHEREOF, this Stipulation of Settlement is executed by the Parties and their duly authorized attorneys, as of the day and year herein set forth.

Dated:

By_____
MARY LOEZA
Plaintiff

Dated:

By_____
ANGIE REVELES
Plaintiff

THE MARKHAM LAW FIRM

Dated:

By_____
David R. Markham
Attorneys for Plaintiffs and the
Proposed Class

QUINTILONE & ASSOCIATES

Dated:

By_____
Richard E. Quintilone II
Attorneys for Plaintiffs and the
Proposed Class

100. <u>Parties' Authority</u>. The signatories to this Stipulation represent that they are fully authorized to enter into this Stipulation and bind the Parties to its terms and conditions.

IN WITNESS WHEREOF, this Stipulation of Settlement is executed by the Parties and their duly authorized attorneys, as of the day and year herein set forth.

Dated: 3/27/2015

By _MARY LOEZA_
MARY LOEZA
Plaintiff

Dated:

By_____
ANGIE REVELES
Plaintiff

THE MARKHAM LAW FIRM

Dated:

By_____
David R. Markham
Attorneys for Plaintiffs and the
Proposed Class

QUINTILONE & ASSOCIATES

Dated:

By_____
Richard E. Quintilone II
Attorneys for Plaintiffs and the
Proposed Class

100.    Parties' Authority. The signatories to this Stipulation represent that they are fully authorized to enter into this Stipulation and bind the Parties to its terms and conditions.

IN WITNESS WHEREOF, this Stipulation of Settlement is executed by the Parties and their duly authorized attorneys, as of the day and year herein set forth.

Dated:

By_____
    MARY LOEZA
    Plaintiff

Dated: 3/27/15

By _Angie Reveles_____
    ANGIE REVELES
    Plaintiff

THE MARKHAM LAW FIRM

Dated:

By_____
    David R. Markham
    Attorneys for Plaintiffs and the
    Proposed Class

QUINTILONE & ASSOCIATES

Dated:

By_____
    Richard E. Quintilone II
    Attorneys for Plaintiffs and the
    Proposed Class

100.    _Parties' Authority_.  The signatories to this Stipulation represent that they are fully authorized to enter into this Stipulation and bind the Parties to its terms and conditions.

IN WITNESS WHEREOF, this Stipulation of Settlement is executed by the Parties and their duly authorized attorneys, as of the day and year herein set forth.

Dated:

By_____
MARY LOEZA
Plaintiff

Dated:

By_____
ANGIE REVELES
Plaintiff

Dated: 3/31/2015

THE MARKHAM LAW FIRM

By_____
David R. Markham
Attorneys for Plaintiffs and the
Proposed Class

Dated: 3/31/15

QUINTILONE & ASSOCIATES

By_____
Richard E. Quintilone II
Attorneys for Plaintiffs and the
Proposed Class

Dated: 4/6/2015          JPMORGAN CHASE BANK, N.A.

By _Maribeth Robinson_

Its _Head of Mortgage Human Resources_

Dated:                   MORGAN, LEWIS & BOCKIUS LLP

By_____
   John S. Battenfeld
   Attorneys for Defendant
   JPMORGAN CHASE BANK, N.A.

Dated:                      JPMORGAN CHASE BANK, N.A.

By _____

Its _____

Dated: 4-1-15          MORGAN, LEWIS & BOCKIUS LLP

By _____
John S. Battenfeld
Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY LOEZA and ANGIE REVELES, an individual, on behalf of themselves, and behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE BANK NA, an unknown business entity, and DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No. 13-cv-95-L (BGS)<br><br>**NOTICE OF SETTLEMENT OF CLASS ACTION LAWSUIT** |

**To:    All persons who are and/or were employed by JPMorgan Chase Bank, N.A. in the position of LM Underwriter Jr. at a California location between December 11, 2008 through [PRELIMINARY APPROVAL DATE]:**

**PLEASE READ THIS NOTICE CAREFULLY**
**IT MAY AFFECT YOUR LEGAL RIGHTS**
**YOU MAY BE ENTITLED TO MONEY FROM THIS SETTLEMENT**

## I.  INTRODUCTION

A proposed class action settlement (the "Settlement") of the above-captioned action (the "Action") filed in the United States District Court for the Southern District of California (the "Court"), has been reached by the parties and has been granted preliminary approval by the Court supervising the Action.

A final settlement hearing will be held on _____, 2015 at _____ **p.m.** to determine whether the Settlement should be granted final approval. Records of JPMorgan Chase Bank, N.A. ("Chase") show that you were employed as an LM Underwriter Jr. at a California location at some time during the period between January 11, 2008 through [PRELIMINARY APPROVAL DATE], and therefore are a Settlement Class Member in this Action ("Class Member").  As a Class Member, you may be entitled to money under the Settlement and the Settlement affects your legal rights, unless you "opt out" of the Settlement. The purpose of this Notice is to:  (1) describe the Action, (2) inform you of the terms of the Settlement, and (3) inform you of your rights and options in connection with the Settlement.

## II.  SUMMARY OF THE ACTION

Plaintiffs Mary Loeza and Angie Reveles ("Plaintiffs") filed a complaint against Chase alleging claims under California law and the Fair Labor Standards Act ("FLSA") for alleged unpaid overtime based on off-the-clock work, meal/rest period violations, inaccurate wage statements, failure to pay wages twice monthly, unreimbursed business expenses, waiting time penalties, and unfair competition, on behalf of a putative class of LM Underwriter Jrs. in California.  Plaintiffs seek damages, restitution, statutory penalties, civil penalties under the California Labor Code Private Attorneys General Act ("PAGA"), and other relief.

Chase denies any liability or wrongdoing of any kind in connection with Plaintiffs' claims, and asserts that it has had, during all relevant times, a policy strictly prohibiting off-the-clock work, and that Class

1

Members have been paid for all time worked and all wages due. Defendant also asserts that it has had, during all relevant times, policies providing meal and rest breaks to Plaintiffs and Class Members in accordance with California law. Chase also asserts that its itemized wage statements accurately contain all required information under the law, and that Class Members were reimbursed for reasonable and necessary business expenses as required by California law. Chase also asserts that a significant number of Class Members agreed to individually arbitrate any and all claims, and that a significant number of Class Members agreed to release the claims at issue in this Action in exchange for valuable consideration.

The Court granted preliminary approval of the Settlement on [*date of preliminary approval*] on behalf of a settlement class defined as:

> All persons who are and/or were employed by Chase in the position of LM Underwriter Jr. at a California location between December 11, 2008 and the [Date of Preliminary Approval of this Settlement].

At that time, the Court also preliminarily approved Plaintiffs Mary Loeza and Angie Reveles to serve as Class Representatives, and The Markham Law Firm and Quintilone & Associates to serve as the lawyers for the Class Members ("Class Counsel").

The Court also scheduled a Final Approval Hearing on the Settlement at _____ p.m. on _____ _____, 2015, in Courtroom __, U.S. District Court, Southern District of California, located at _____ , _____ , at which time the Court will decide whether to grant final approval of the Settlement.

### III.   SUMMARY OF SETTLEMENT TERMS

<u>Settlement Amount</u>.  Chase has agreed to pay an amount not to exceed $950,000 (the "Maximum Settlement Amount") to settle the claims in the Action.  This Maximum Settlement Amount includes, but is not limited to, all settlement payments to Class Members who make claims, Class Counsel's attorneys' fees and litigation costs, all Claims Administration Expenses, all applicable taxes (but not including Chase's share of said taxes), payment to the California Labor and Workforce Development Agency ("LWDA"), and Service Enhancements to the Class Representatives, as outlined below.  The amount remaining after subtracting attorneys' fees and costs, Claim Administration Expenses, payment to the LWDA and Service Enhancements is the Net Settlement Amount available for distribution to Class Members.

<u>Claims Administration and Other Payments.</u>  The Court has tentatively approved certain payments to be made from the Maximum Settlement Amount as follows, which will be subject to final Court approval:

- <u>Claims Administration.</u> Payment to the Claims Administrator, estimated to be approximately $12,000, for the expense of notifying the Class Members of the Settlement, processing claims and opt-outs submitted by Class Members, and distributing settlement payments.

- <u>Attorneys' Fees and Litigation Costs.</u>  Payment to Court-approved Class Counsel of reasonable attorney fees not to exceed $285,000 as reasonable compensation for the work Class Counsel performed in this Action, and will continue to perform through settlement finalization, together with reimbursement for litigation expenses actually incurred in

connection with the Action, not to exceed $35,000. Class Counsel has been prosecuting the Action on behalf of Plaintiffs and the Class on a contingency fee basis (that is, without being paid any money to date) and has been paying all litigation costs and expenses.

- <u>Service Enhancements to Plaintiffs Reveles and Loeza.</u>  A Service Enhancement not to exceed $5,000 to Plaintiff Reveles and $15,000 to Plaintiff Loeza to compensate them for services on behalf of the Class in initiating and prosecuting the action.  This payment is in addition to the Class Member Awards Plaintiffs are eligible to receive as Class Members.

- <u>Payment to LWDA.</u>  A payment of $1,875 will be made to the LWDA for LWDA's portion of the Settlement allocated to civil penalties under the Labor Code Private Attorneys General Act, Lab. Code §§ 2698 *et seq*.

- <u>Reserve Fund.</u>  A Reserve Fund in the amount of $10,000 will be set aside  in order to make payments for late claims, disputed settlement allocations, inadvertent errors or exclusions, and/or to resolve other disputes. Chase will not be required to pay any unclaimed amounts of the Reserve Fund that remain ninety (90) days after the Effective Date of the Settlement.

<u>Calculation of Individual Settlement Amounts.</u> Class Members will be divided into Subclasses depending on whether he or she is subject to (1) an arbitration agreement; (2) a release of claims; (3) both an arbitration agreement and a release of claims; or (4) neither an arbitration agreement nor release of claims.  The Claims Administrator will calculate each Class Member's potential share of the Net Settlement Amount (i.e., the Class Member's Individual Settlement Amount) by calculating the Applicable Workweeks worked by the Class Member during the Class Period.  The Individual Settlement Amount allocation for each Class Member shall then be determined based on the number of Weighted Applicable Workweeks for each Class Member.  A Class Member's Weighted Applicable Workweeks shall be calculated based on whether the Class Member is a member of the No Arbitration/No Release Subclass, Arbitration Subclass, Release Holder Subclass, or Arbitration and Release Subclass.  The Applicable Workweeks shall be multiplied by a number to achieve the Weighted Applicable Workweeks, as follows:  No Arbitration/No Release Subclass: 100% of the Class Member's Applicable Workweeks; Arbitration Subclass: 30% of the Class Member's Applicable Workweeks; Release Holder Subclass: 20% of the Class Member's Applicable Workweeks; and Arbitration and Release Subclass: 15% of the Class Member's Applicable Workweeks. The total of the Weighted Applicable Workweeks shall be divided into the Net Settlement Amount to achieve a weekly Settlement Amount.  Each Individual Settlement Amount shall be calculated by multiplying a Class Member's Weighted Applicable Workweeks times the weekly Settlement Amount.  Only Class Members who have properly filed a completed Claim Form by the deadline ("Qualified Claimants"), will be entitled to receive a payment pursuant to the Settlement.  Payments to Qualified Claimants shall be subject to the Minimum Qualified Claimant Settlement Amount of 55% of the Net Settlement Amount.  If the payments to Qualified Claimants aggregate to an amount that is less than the Minimum Settlement Amount, the difference between the total aggregate Individual Settlement Amounts payments to Qualified Claimants and the Minimum Settlement Amount will be re-allocated to Qualified Claimants on a pro rata basis.  Defendant will not be required to pay any unclaimed amounts above the Minimum Qualified Claimant Settlement Amount.  If the conditions of the Settlement (as described in this Notice) are met, and if the Court grants final approval of the Settlement, then settlement checks will be mailed to Qualified Claimants.

<u>Tax Matters.</u>  Settlement payments to Qualified Claimants shall be allocated as follows:  unpaid wages (50% of each settlement payment) and non-wages (50% of each settlement payment).  Qualified

3

Claimants must pay their own portion of payroll and income taxes on the 50% of each settlement payment that is unpaid wages, and such amounts will be withheld from settlement payments. Qualified Claimants must also pay income taxes on the 50% of each settlement payment that is non-wages, and shall be exclusively liable for any and all such tax liability, if any. Qualified Claimants should consult with their tax advisors concerning the tax consequences of the payments they receive under the Settlement.

Releases.  Upon Final Approval of the Settlement, each Class Member who has not opted out of the Settlement ("Settling Class Member") shall be deemed to have fully, finally, and forever released the Releasees (as defined in the Settlement Agreement) from any and all claims that accrued or accrue between December 11, 2008 and [*Date of Preliminary Approval*] based on his or her employment in California as an LM Underwriter Jr. for any alleged failure to pay all wages due (including overtime), failure to pay for all hours worked (including off-the-clock work), failure to provide meal and rest periods, failure to timely pay wages and final wages, failure to reimburse business expenses, and/or failure to furnish accurate wage statements, including but not limited to claims for recovery of overtime pay, minimum wage, premium pay, and penalties under any legal theory, including claims derivative and/or related to these claims, including under California Labor Code §§ 201, 202, 203, 204, 210, 221, 222, 222.5, 223, 224, 225.5, 226, 226.3, 226.7, 227, 227.3, 510, 512, 558, 1194, 1194.2, 1197, 1197.1, 1198, 2698 *et seq.*, and 2802, California's Wage Orders, and the California Business & Professions Code ("Class Member Released Claims").  Settling Class Members shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the Class Member Released Claims pursuant to Section 1542 of the California Civil Code, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.

All Settling Class Members shall be bound by this Release whether or not they return the Claim Form necessary to receive payment of their allocated settlement amount.  All Settling Class Members who submit a valid Claim Form shall also release any and all claims under the Fair Labor Standards Act ("FLSA"), including but not limited to claims under 29 U.S.C. § 206, 211(c) and 215(a), including liquidated damages, whether known or unknown, based on their employment in California as an LM Underwriter Jr., that accrued or accrue prior to the date the Settling Class Member signed the Claim Form.  Provided, however, that only those Settling Class Members who sign Claim Forms which have the FLSA release language set forth therein shall release claims under FLSA.

Conditions of Settlement.  This Settlement is conditioned upon the Court entering an order at or following the Settlement Hearing finally approving the Settlement.

## IV.  RIGHT TO CLAIM MONEY FROM THE SETTLEMENT

Class Members who want to receive money under the Settlement must completely fill out, sign and date the enclosed Claim Form and mail the completed form **postmarked by no later than _____ _____** to the Claims Administrator at the following address:

*Loeza v. JPMorgan Chase Bank* Claims Administration Center
Claims Administrator Name
Address

4

**If you do not return the enclosed Claim Form post-marked by the deadline, you will not be eligible to receive any portion of the settlement funds**. You may send the Claim Form to the Claims Administrator via United States mail. If you choose to do so, you may also elect to send the Claim Form to the Claims Administrator via certified mail, and take care to retain the receipt for proof of mailing.

The Claim Form lists the Subclass you are a member of, the estimated number of weeks you worked in the LM Underwriter Jr. during the Class Period, and the Weighted Applicable Workweeks used to calculate your estimated share of the Settlement based on your Subclass. If you believe the information listed on the Claim Form is incorrect, you may submit a challenge in writing to the Claims Administrator indicating your belief as to the correct information. You must also send the Claims Administrator any documents or other information that supports your challenge to the information on the Claim Form. The Claims Administrator will use records of Chase and any information you provide to resolve any dispute about your employment data. All such challenges must be postmarked by _____, 2015 or they will not be considered.

Class Members who do not submit a Claim Form, or who do not file a Claim Form by the deadline, **will not receive any money** from the Settlement. **Class Members who do not submit a Claim Form by the deadline will still be bound by the Releases in the manner described above, unless they opt out in accordance with the procedure described below.**

## V.   RIGHT TO OPT OUT

If you do not wish to participate in the Settlement of your claims, you may exclude yourself from the Settlement or "opt out." **If you opt out, you will receive no money from the Settlement, and you will not be bound by its terms or release any of your claims**. To opt out, you must submit a signed, written statement to the Claims Administrator stating that you want to be excluded from the Settlement ("Exclusion") post marked no later than _____, 2015. Exclusions that are post-marked after the Claims Period, or are unsigned by the Class Member, will be rejected, and Class Members submitting late Exclusions shall be bound by the Settlement and its applicable releases but will not be considered Qualified Claimants and will not receive settlement payments. If you submit both a Claim Form and an Exclusion within the deadline, the Claim Form will control, the Exclusion will be invalid, and you will be considered a Qualified Claimant, regardless of the date on either document or the date the documents are postmarked.

## VI.   RIGHT TO OBJECT

If you are a Class Member who has not opted out and believe that the Settlement should not be finally approved by the Court for any reason, you may object to the proposed Settlement. Objections must be in writing, state the basis for any objection, and must be filed with the Court on or before _____, 2015. At the same time, copies of objections must also be personally served to Class Counsel and counsel for Chase at the following addresses:

| Class Counsel: | Counsel for Chase: |
|---|---|
| David R.Markham, Esq. | John S. Battenfeld, Esq. |
| Peggy J. Reali, Esq. | Morgan, Lewis & Bockius LLP |
| THE MARKHAM LAW FIRM | 300 South Grand Avenue |
| 750 B Street, Suite 1920 | Twenty-Second Floor |
| San Diego, CA 92101 | Los Angeles, CA  90071-3132 |
| | |
| | John D. Hayashi |

| Richard E. Quintilone II | MORGAN, LEWI S& BOCKIUS LLP |
|---|---|
| QUINTILONE & ASSOCIATES | 5 Park Plaza, Suite 1750 |
| 22974 El Toro Road, Suite 100 | Irvine, CA 92614 |
| Lake Forest, CA 92630-4961 | |

All objections or other correspondence must state the name and number of the case, which is *Loeza v. JPMorgan Chase Bank*, S.D. Cal. Case No. 13-CV-95-L-BGS. If you object to the Settlement, you will remain a member of the Class, and if the Court approves the Settlement, you will be bound by the terms of the Settlement. If you have filed a timely objection, you may also appear at the Final Approval Hearing scheduled for _____, 2015 at _____.m., in Courtroom __, U.S. District Court, Southern District of California, located at _____, _____. Any attorney who intends to represent an individual objecting to the Settlement must file a notice of appearance with the Court and serve counsel for all parties, above, on or before _____, 2015. Any Class Member or purported Class Member who fails to file and serve timely written objections in this manner shall be deemed to have waived any objections and shall be foreclosed from making any objection to the Settlement and from filing any appeal from any Final Approval order issued by the Court.

## VII. HEARING ON THE SETTLEMENT

The Final Approval Hearing on the adequacy, reasonableness and fairness of the Settlement will be held at _____ _.m. on _____, 2015 in Courtroom __, .S. District Court, Southern District of California, located at _____, _____. The Hearing may be continued without further notice. **You are not required to attend the Final Approval Hearing, although any Class Member has the right to attend the hearing.**

## VIII. ADDITIONAL INFORMATION

This Notice is only a summary of the Action and the Settlement. Class Members should contact the Claims Administrator or Class Counsel with any concerns or questions regarding the Settlement. You may also see the pleadings, the Stipulation of Settlement, and other papers filed in the Action by visiting the office of the Office of the Clerk for the U.S. District Court, Southern District of California, or by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.casd.uscourts.gov.

**PLEASE DO <u>NOT</u> CONTACT THE CLERK OF THE COURT OR THE JUDGE WITH QUESTIONS.**

# Exhibit 2

*Loeza, et al. v. JPMorgan Chase Bank, N.A.*
U.S. District Court, Southern District of California, Case No. 13-CV-95-L-BGS

## SETTLEMENT CLAIM AND CONSENT TO JOIN FORM

| | |
|---|---|
| Claim #:<br>Name<br>c/o<br>Address<br>City, State, Zip<br>(          ) | Name/Address Changes, if any |
| Area Code    Home Telephone Number | |

*In order to receive your Individual Settlement Amount if the Settlement is finally approved by the Court, you must complete all requested information, sign, date and return this form, postmarked no later than _____ _____, 2015, using the included return envelope or addressed to:*

*Loeza v. JPMorgan Chase Bank* Claims Administration Center
<<Claims Administrator>>
<<Address>>
<<Phone>>

**IF YOU DO NOT RETURN THIS FORM POSTMARKED BY _____, 2015, YOU WILL NOT BE ELIGIBLE TO RECEIVE ANY SHARE OF THE SETTLEMENT FUNDS.**

Chase's records show that you are a member of the _____ Subclass, and that you were employed by Chase in California in the position of LM Underwriter Jr. during the Class Period for _____ workweeks, which is equivalent to _____ weighted workweeks.  It is estimated that each weighted workweek will be worth $_____ in calculating your Individual Settlement Amount.

If you believe the data listed above is incorrect, you may submit a challenge in writing to the Claims Administrator, at the address listed above.  You must also send the Claims Administrator any documents or other information that supports your challenge.  The Claims Administrator will use records of Chase and any information you provide to resolve any dispute about your Subclass membership or covered workweeks.  All such challenges must be postmarked no later than _____, 2015.

It is your responsibility to keep a current address on file with the Claims Administrator.  Please make sure to notify the Claims Administrator of any change of address.

### CERTIFICATION OF ELIGIBILITY AND CONSENT TO JOIN

I submit this Settlement Claim and Consent to Join Form in accordance with the terms of the Joint Stipulation of Settlement and Release ("Settlement Agreement"), described in the Notice of Settlement of Class Action Lawsuit ("Notice"), and submit to the jurisdiction of the U.S. District Court for the Southern District of California with respect to my claim in this action and for purposes of enforcing the Class Member Released Claims as set forth in the Settlement Agreement and Notice. I acknowledge that by submitting this Settlement Claim and Consent to Join Form, I will be eligible for a settlement payment and will be bound by and subject to the terms of any judgment that may be entered in this class action.

My signature below certifies that I have read the Notice in this lawsuit, and understand that I hereby and forever release and discharge the "Releasees" from the "Class Member Released Claims" as specified in the Settlement Agreement.  I understand that I am providing the Releasees with a full and complete release of any and all claims described in the Notice and Settlement Agreement, known or unknown, which I may have against the Releasees, including claims under the Fair Labor Standards Act ("FLSA").  I hereby consent in writing to become a party plaintiff for settlement purposes only in the above action pursuant to Section 16(b) of the FLSA, and authorize Class Counsel (as defined in the Settlement and Notice) to act on my behalf in all matters relating to this action, including the settlement of my claims.

**I declare under penalty of perjury under the laws of the State of California and the United States of America that the information I have provided in this Settlement Claim and Consent to Join Form is true**

**and correct.**

Dated: _____, 2015          _____
                                         Signature