UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY LOEZA and ANGIE REVELES, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>JP MORGAN CHASE BANK, NA,<br><br>    Defendant. | Case No. 13-cv-0095-L (BGS)<br><br>**ORDER GRANTING UNOPPOSED MOTION TO CONDITIONALLY CERTIFY CLASS AND PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT [ECF NO. 67]** |

Pending before the Court is Plaintiffs' unopposed motion for conditional certification and preliminary approval of the Settlement Agreement. (Mot. Prelim. Approval, ECF No. 67.) The Court finds this motion suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d.1). For the following reasons, the Court **GRANTS** the motion, conditionally certifies the class, and preliminarily approves the Settlement as detailed below.

//

//

//

– 1 – 13cv95

## I. BACKGROUND

Plaintiffs Loeza and Reveles worked as Loss Mitigation Junior Underwriters at Defendant Chase's Rancho Bernardo, California office during the Class Period. (Markham Decl. ¶ 4, ECF No. 67-2.) Plaintiffs' duties included analyzing documents provided by customers who were no longer able to make their mortgage payments, to determine if they were eligible for a loan modification. (*Id.* ¶ 3.) Each month, Plaintiffs had to make a certain number of decisions on assigned modification requests. (*Id.* ¶ 4.) Plaintiffs had to adhere to Chase's policies regarding the quality and quantity of the loans, and were given monthly scores based on the number of errors in their processed files. (*Id.*)

Plaintiffs allege that in order to meet the quotas regarding quality and quantity of processed loans, and to avoid reduction in pay or termination because of errors, they had to significantly increase the number of files processed each month, above Chase's regular monthly quotas. (Markham Decl. ¶ 6.) While the base quota was expected to be achievable in a 40-hour week, an increased workload was not. (*Id.*) Chase's overtime policy required preapproval. (*Id.* ¶ 5.) Working unauthorized overtime was grounds for discipline, including termination. (*Id.*) Plaintiffs allege that they could not request overtime to complete the workload that needed to be completed—according to Chase—in a 40-hour week. (*Id.* ¶ 6.) Therefore, Plaintiffs allege that in order to meet their quotas and avoid forfeiture of salary or termination, they had to work off the clock, work unreported overtime, and forego meal and rest breaks. (*Id.*)

Chase denies Plaintiffs' claims, and asserts that it has had, during all relevant times, a policy strictly prohibiting off-the-clock work, and that Plaintiffs and Class Members have been paid for all time worked. (Settlement Agreement ¶ 50, ECF No. 69.) Chase asserts that it has had, during all relevant times, policies providing meal and rest breaks to Plaintiffs and Class Members in accordance with California law.

(*Id.*) Chase asserts that its itemized wage statements accurately contain all required information. (*Id.*) Chase also asserts that employees were properly and timely compensated for all wages due. (*Id.*) Consequently, Chase disputes liability to Plaintiffs and Class Members.

On September 30, 2014, this Court granted in part and denied in part Chase's motion for summary judgment. (MSJ Order, ECF No. 59.) On October 27, 2014 the Court granted the parties joint motion to stay the case pending mediation. (Order Staying Case, ECF No. 61.) On March 30, 2015, the Court granted the parties joint motion to extend Plaintiffs' deadline to file its motion for preliminary approval of the class action settlement. (Order re: Prelim. Approval Deadline, ECF No. 66.) On April 1, 2015, Plaintiffs timely filed their motion for conditional certification and approval of the settlement agreement. The motion is unopposed.

## II.   LEGAL STANDARD

A class action may not be settled without court approval. FED. R. CIV. P. 23(e). When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). At the preliminary stage, the Court must first assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the court must determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This includes an examination and balancing of multiple factors, including but not limited to:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the

presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.*

If the court preliminarily certifies the class and finds the proposed settlement fair to its members, it then appoints a class representative and class counsel. Rule 23(e)(1) requires the court to take certain steps to ensure proper administration of the settlement, including "direct[ing] notice in a reasonable manner to all class members who would be bound by the proposal."

If all these aspects are determined to be reasonable, the court schedules a fairness hearing where it will make a final determination of the class settlement. *Okudan v. Volkswagen Credit, Inc.*, No. 09–CV–2293–H (JMA), 2011 U.S. Dist. LEXIS 84567, at *6 (S.D. Cal. Aug. 1, 2011).

## III. DISCUSSION

### A. Conditional Class Certification

Before granting preliminary approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *Amchem*, 521 U.S. at 620 (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees).

Plaintiffs seek provisional certification of their class under Federal Rule of Civil Procedure 23(b)(3). The proposed settlement class is defined as:

> **All persons who are and/or were employed by JPMorgan Chase Bank, N.A. in the position of LM Underwriter Jr. at a California location from December 11, 2008 through the Date of Preliminary Approval.**

(Settlement Agreement ¶ 7.)

In order to obtain certification of a class action, plaintiff must provide facts in support of the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Dunleavy v. Nadler* (*In re Mego Fin.*

*Corp. Sec. Litig.*), 213 F.3d 454, 462 (9th Cir. 2000) (internal quotations omitted). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)). In addition to the Rule 23(a) requirements, the party seeking certification bears the burden of meeting at least one requirement of Rule 23(b). *Id.* at 580.

Here, plaintiff seeks certification under Rule 23(b)(3) which provides that a class may be certified, if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting FED. R. CIV. P. 23(b)(3)).

In analyzing whether a plaintiff has met her burden to show that the above requirements are satisfied, a court is to "analyze[ ] the allegations of the complaint and the other material before [the court]," *i.e.,* "material sufficient to form reasonable judgment on each [Rule 23] requirement." *Blackie v. Barrack*, 524 F.2d 891, 900-01 (9th Cir. 1975) (noting further that a court is to take the substantive allegations in the complaint as true). "As the party seeking class certification, [plaintiff] bears the burden of demonstrating that she has met *each* of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *See Zinser v. Accufix Research Inst.*, 253 F.2d 1180, 1186 (9th Cir. 2001).

    **1.**    **Rule 23(a) Factors**

        **a)**    **Numerosity**

There are several factors a court may consider in determining whether a plaintiff has satisfied the numerosity requirement. First, a court may consider whether the size of the class warrants certification. *Gen. Tel. Co. of the Northwest, Inc. v. E.E.O.C.*, 446 U.S. 318, 330, 100 S. Ct. 1698 (1980). "Although the absolute

number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." *Jordan v. Los Angeles County,* 669 F.2d 1311, 1319 (9th Cir.1982) *vacated on other grounds* 459 U.S. 810 (1982). Here, the class includes an estimated 838 members, a significant number that would make joinder impracticable. (Markham Decl. ¶ 3.) The numerosity prong has been met.

### b) Commonality

Rule 23(a)(2) requires that questions of law or fact be common to the class. "A class has sufficient commonality 'if there are questions of fact and law which are common to the class.'" FED. R. CIV. P. 23(a)(2). The commonality preconditions of Rule 23(a)(2) "are less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1019.

In this action, all of the claims asserts arise from common facts. Plaintiffs and class members were allegedly subject to the uniform meal period and rest break policies that are the subject of this litigation. "Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1033 (2012) (collecting cases). In addition, the claims of all class members are based upon the same California employment laws. Therefore, the Court finds the commonality prong has been satisfied.

### c) Typicality

In order for a class representative to satisfy the typicality requirement of Rule 23(a), she must show that his claims do "not differ significantly from the claims or defenses of the class as whole." *In re Computer Memories*, 111 F.R.D. 675, 680 (N.D. Cal. 1986). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The class representative's claims and the claims of the class must arise from the same events or course of

conduct and must be based on the same legal theory. *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988). The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (citation omitted).

Here, Plaintiffs' claims are typical of the claims of the absent Class Members because they arose from the same alleged conduct of Defendant, including failure to compensate for overtime, off-the-clock work, and missed breaks as well as promulgating policies that caused Class Members to work off-the-clock and miss breaks. The Class Representatives and the other Class Members suffered the same type of injury as a result of this alleged conduct, and the Class Representative's claims are reasonably co-extensive with those of absent Class Members. Plaintiffs have therefore satisfied the typicality prong.

### d) Adequate Representation

Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

Plaintiffs assert they are able to fairly and adequately protect the interests of the members of the class because they have "the same interests as the rest of the Class, because Plaintiffs and Class Members have allegedly been injured in

substantially the same manner." (Mot. Prelim. Approval 16.) Also, Plaintiffs retained Class Counsel with extensive experience in the prosecution of wage and hour class actions and who have been appointed previously as adequate class counsel. (Markham Decl. ¶ 22; Quintilone Decl. ¶ 5, ECF No. 67-3.) Finally, Class Counsel has no conflicts of interest with the class. (Markham Decl. ¶ 23; Quintilone Decl. ¶ 6.) Therefore, Plaintiffs have satisfied the adequate representation prong.

Based on the foregoing, the Court finds Plaintiffs have met their burden of demonstrating each of the four Rule 23(a) requirements.

### 2.     Rule 23(b) Factors

Rule 23(b)(3) requires that questions of law or fact common to the members of the class "predominate" over questions affecting only individual members, and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

The predominance standard of Rule 23(b)(3) requires a stronger showing by plaintiffs than Rule 23(a)'s commonality standard. "The Rule 23(b)(3) predominance inquiry tests whether [the] proposed class [is] sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022.

Here, the legal and factual issues are common to all members of the proposed Class. As noted by plaintiff, the issues are common to all class members, as they allegedly were subjected to a company policy in a way that gives rise to consistent liability, or lack thereof.

Rule 23(b)(3) requires "that a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). Courts consider four non-exclusive factors in determining whether the class action is a superior device. These factors include: (1) the interest of class

members individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation of the claims in this particular forum; and (4) the manageability of the action as a class. FED. R. CIV. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16.

Certification of the core issues in this case is a superior method of adjudicating the controversy involving potentially 838 individual lawsuits for damages where it appears most individual claims would not be economically feasible for most of the individuals. Further, Plaintiffs are not aware of any other similar pending actions, the claims arise from employment in California, and Chase does substantial business in, and resides in San Diego County.

Because the plaintiff has successfully demonstrated he has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b), the Court will provisionally certify the class.

### B.  Preliminary Settlement Approval

#### 1.  The Proposed Settlement

The Parties have agreed to a class wide "Maximum Settlement Amount" ("MSA") capped at $950,000, which includes "all settlement payments to Qualified Claimants, settlement payments from the Reserve Fund, Class Counsel's Court-approved attorneys' fees and out-of-pocket litigation expenses, Court-approved Service Enhancements to the Class Representatives, Claims Administration Expenses, and the [California Labor & Workforce Development Agency] ("LDWA")'s share of PAGA penalties." (Settlement Agreement, ¶ 62.) The parties agree that Class Counsel may seek approval from the Court of a maximum of $285,000 in attorneys' fees (30% of the [MSA]), and a maximum of $35,000 in costs, to be deducted from the MSA. (*Id.*) In addition, the parties agree to the following allocations to be paid from the MSA: (1) $12,000 for claims administration expenses;

(2) Service Enhancements up to $5,000 for Plaintiff Reveles and up to $15,000 for Plaintiff Loeza; (3) $2,500 in PAGA penalties ($1,875 of which is payable to the LDWA); and (4) $10,000 for the Reserve Fund. (*Id.*) After these allocations are made from the MSA, the remaining amount will be "designated the Net Settlement Amount ["NSA"] eligible for distribution to Qualified Claimants on a pro rata basis." (*Id.*)

Class Members who submit valid and timely claims will be Qualified Claimants and receive a portion of the NSA. (Settlement Agreement ¶ 62.) Each claimant's settlement amount, or Individual Settlement Amount ("ISA") will be calculated by the Claims Administrator as follows:

1. Each Class Member's Applicable Workweeks will be calculated, which are defined as "any weeks worked for Defendant by a Class Member in the position of LM Underwriter Jr. at a California location from December 11, 2008 through the Date of Preliminary Approval, as reflected on Defendant's internal records . . . [and] shall not include any entire Workweeks when a Class Member was on a paid or unpaid leave of absence or other absence from work, as ascertainable from Defendant's internal records."

2. The ISA will then be calculated by finding the "Weighted Applicable Workweeks" for each Class Member, which depend on which subclass the Class Member belongs to. The Class Member's Applicable Workweeks will be multiplied by a percentage that reflects a discount rate designed to represent the chance of recovery the parties agree should be assigned to each subclass[1].

---

[1] The four subclasses are the (1) No Arbitration/No Release Subclass, which includes any member of the Settlement Class who is not a member of the Release Signer Subclass, Arbitration Subclass, or Arbitration and Release Subclass (Settlement Agreement, ¶ 7); (2) Arbitration Subclass, which includes any member of the Settlement Class who is subject to an agreement to arbitrate with Chase with a class action waiver, but did not sign a release of claims against Chase (through a severance agreement, or otherwise) (*Id.* ¶ 7); (3) Release Signer Subclass, which includes any member of the Settlement Class who signed a release of his or her individual claims against Chase (through a Release Agreement, severance agreement, or otherwise), but is not subject to an agreement to arbitrate with Chase (*Id.* ¶ 7); and the (4) Arbitration and Release Subclass, which includes any member of the Settlement Class who signed both a release of claims against Chase and also an agreement to arbitrate claims with Chase with a class action waiver. (*Id.* ¶ 7.)

The multiplier will be assigned as follows:

   a. No Arbitration/No Release Subclass: 100% of the Class Member's Applicable Workweeks

   b. Arbitration Subclass: 30% of the Class Member's Applicable Workweeks

   c. Release Signer Subclass: 20% of the Class Member's Applicable Workweeks

   d. Arbitration and Release Subclass: 15% of the Class Member's Applicable Workweeks.

3. The total number of Weighted Applicable Workweeks will be divided into the Net Settlement Amount to yield a "Weekly Settlement Amount."

4. The ISA will be calculated by multiplying a Class Member's Weighted Applicable Workweeks by the Weekly Settlement Amount.

5. Defendant is not required to pay any unclaimed amounts above the Minimum Qualified Claimant Settlement Amount, defined as 55% of the Net Settlement Amount.

6. If payments to Qualified Claimants aggregate to less than the Minimum Qualified Claimant Settlement Amount, the difference will be allocated to Qualified Claimants on a pro rata basis utilizing the same allocation formula noted above.

(Settlement Agreement ¶ 66.) Based on the estimated number of workweeks for each subclass, and assuming a 100% claim rate, the Plaintiffs estimate payment to each group as follows:

//
//
//
//

| Subclass Name/Est. No. of Class Members | Approx. # of Workweeks in Each Subclass | % of the Class Member's Workweeks Allocated | # of Workweeks Credited to each Subclass | Approx. Gross Settlement Amount per Subclass |
|---|---|---|---|---|
| No Arbitration/No Release/157 | 11,687.14 | 100% | 11,687.14 | $448,591.76 |
| Arbitration Subclass/333 | 21,367.43 | 30% | 6,410.23 | $246,046.16 |
| Release signer Subclass/132 | 17,377.86 | 20% | 3,475.57 | $133,404.15 |
| Arbitration and Release Subclass/216 | 21,182.43 | 15% | 3,177.36 | $121,957.94 |
| Total: 838 | 71,614.86 | 100% | 24,750.31 | $950,000.00 |

Each member of the class who does not opt out, upon entry of the final approval order, will be deemed to have released Defendant and its affiliated entities and individuals from:

> all any and all claims that accrued or accrue between December 11, 2008 and the Date of Preliminary Approval based on their employment in California as an LM Underwriter Jr. for any alleged failure to pay all wages due (including overtime), failure to pay for all hours worked (including off-the-clock work), failure to provide meal and rest periods, failure to timely pay wages and final wages, failure to reimburse business expenses, and/or failure to furnish accurate wage statements, including but not limited to claims for recovery of overtime pay, minimum wage, premium pay, and penalties under any legal theory, including claims derivative and/or related to these claims, including under California Labor Code §§ 201, 202, 203, 204, 210, 221, 222, 222.5, 223, 224, 225.5, 226, 226.3, 226.7, 227, 227.3, 510, 512, 558, 1194, 1194.2, 1197, 1197.1, 1198, 2698 *et seq.*, and 2802, California's Wage Orders, and the California Business & Professions Code. Class Members shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the Class Member Released Claims pursuant to Section 1542 of the California Civil Code, which provides as follows:
>
>> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her

>
> settlement with the debtor
>
> All Settling Class Members shall be bound by this Release whether or not they return the Claim Form necessary to receive payment of their allocated settlement amount. All Settling Class Members who submit a valid Claim Form shall also release any and all claims under the Fair Labor Standards Act ("FLSA"), including but not limited to claims under 29 U.S.C. § 206, 211(c) and 215(a), including liquidated damages, whether known or unknown, based on their employment in California as an LM Underwriter Jr., that accrued or accrue prior to the date the Settling Class Member signed the Claim Form. Provided, however, that only those Settling Class Members who sign Claim Forms which have the FLSA release language set forth therein shall release claims under FLSA.

(Settlement Agreement ¶ 65.)

## 2. The Proposed Settlement Warrants Preliminary Approval

Having certified the settlement class, the Court must next make a preliminary determination of whether the settlement is "fundamentally fair, adequate, and reasonable" pursuant to Rule 23(e). *Hanlon*, 150 F.3d at 1026. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.* A court may not "delete, modify or substitute certain provisions" of the settlement; rather, "[t]he settlement must stand or fall in its entirety." *Id.* (citation omitted).

Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citations omitted).

Here, the parties' Proposed Settlement complies with all of these requirements. The Court will address the relevant factors in further detail below.

– 13 –

### a) The Settlement is the Product of Serious, Informed, and Non-Collusive Negotiations

While this issue was certified for class treatment, at this stage of the proceedings it is impossible to say that Plaintiffs will successfully recover anything after trial, so settlement assures that all class members are eligible to receive financial compensation. Moreover, considerable expense and time is saved by avoiding further motion practice and trial in this matter.

The parties have already engaged in significant investigation and discovery. (Markham Decl. ¶¶ 9, 20.) Class Counsel has conducted interviews with Plaintiffs and Class Members, reviewed and analyzed voluminous discovery, and participated in at least seven depositions. (*Id.* ¶¶ 7.) After two years of litigation, the parties reached settlement in this action only with the assistance of an experienced private mediator, Michael Dickstein. (*Id.* ¶ 9.) As detailed below, the Settlement Terms themselves evidence a compromise between the parties, as Plaintiffs do not receive the maximum damages they would seek at trial and Chase is not exposed to that maximum potential liability. In light of the foregoing, the Court is satisfied that the Proposed Settlement is the result of serious, informed, and non-collusive negotiations.

### b) The Settlement Has No Obvious Deficiencies and Does Not Grant Improper Preferential Treatment

The proposed settlement has no obvious deficiencies and does not improperly grant preferential treatment to class representatives or segments of the class. Although each subclass is treated differently, the parties have reached this conclusion by weighing the chances of potential recover for each of those subclasses. This type of preferential treatment is proper in this case, as the different segments of the class have quantifiably distinct chances of success. Apart from that, the funds will be

distributed on a weighted pro rata basis, which guarantees equal treatment of class members. Further, the service fees to be awarded to the named plaintiffs do not appear facially unreasonable.

### c) The Settlement Falls Within the Range of Possible Approval

In determining whether a settlement agreement is substantively fair to the class, a court must balance the value of plaintiffs' expected recovery against the value of the settlement offer. *Tableware*, 484 F. Supp. 2d at 1080. The settlement provides for an average recovery of approximately $672 after costs and fees, a reasonable amount in a case of this nature. *See, e.g.*, *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (approving wage-and-hour settlement providing for an average recovery of $1,000); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 440 (E.D. Cal. 2013) (approving wage-and-hour settlement providing for an average recovery of $601.91). The value of the recovery is especially significant in light of the significant amount of uncertainty Class Members would face if the case were litigated to trial. Further, as detailed in the chart below, the Plaintiffs are recovering a large portion of their maximum damages claims:

| Number of Members in Each Subclass | Approx. # of Workweeks in Each Subclass | Max. Damages for Overtime Claim | Max Damages for Meal and Rest Break Claim | Approx. Settlement Amount per Subclass | Percentage of Max Damages for all Claims |
|---|---|---|---|---|---|
| No Arbitration/No Release/157 | 11,687.14 | $378,078.97 | $251,273.51 | $448,591.76 | 71.41% |
| Arbitration Subclass/333 | 21,367.43 | $691,236.36 | $459,399.74 | $246,046.16 | 21.38% |
| Release signer Subclass/132 | 17,377.86 | $562,173.77 | $373,623.99 | $133,404.15 | 14.25% |
| Arbitration and Release Subclass/216 | 21,182.43 | $685,251.61 | $455,422.25 | $121,957.94 | 10.69% |

The court therefore concludes that the substance of the settlement is fair to class members and thereby "falls within the range of possible approval." *Tableware*, 484 F. Supp. 2d at 1079.

### 3. The Proposed Notice Form and Method is Sufficient

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED.R.CIV.P. 23(c)(2)(B).

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

The proposed notice, attached as Exhibit B to the Proposed Settlement ("Notice") complies with most Rule 23(c)(2)(B) requirements and provides information on the nature of the action, the class definition, the class claims, the terms and provisions of the Proposed Settlement, the benefits the Proposed Settlement provides to Class Members, the scope of the release, the date, time and place of the final settlement approval hearing, and the procedure and deadlines for opting out and objecting. (Notice ¶¶ 1-8.) However, the Notice does not detail the Class Member's right enter an appearance through an attorney if the member so desires. The Court conditionally accepts the proposed notice, contingent on the addition of an explanation that a class member may enter an appearance through an attorney.

## IV. CONCLUSION

In light of the foregoing, the Court **GRANTS** the motion and certifies the Settlement Class, preliminarily approves the Settlement, conditionally approves the notice, and **ORDERS** as follows:

1. The Court hereby preliminarily finds that the Proposed Settlement was the product of serious, informed, non-collusive negotiations conducted at arms' length by the parties. In making this preliminary finding, the Court considered the Settlement Value, Class Counsel's assessment of potential class claims, the monetary benefit available to the Settlement Class members, the allocation of Net Settlement Value to the Settlement Class members, Defendant's potential liability, and the fact that a settlement represents a compromise of the parties' respective positions rather than the result of a finding of liability at trial. The Court further preliminarily finds that the terms of the Proposed Settlement have no obvious deficiencies and do not improperly grant preferential treatment to the named Plaintiffs, or any member of the Settlement Class.

2. The Court hereby approves the Notice of Class Action Settlement attached to the Proposed Settlement as Exhibit 1, contingent upon the parties adding an explanation of the Class Member's right to enter an appearance through an attorney.

3. The Court hereby approves the Claim Form attached to the Proposed Settlement as Exhibit 2.

4. The Court finds that the Notice, with the modification noted above, constitutes the best notice practicable under the circumstances and is in full compliance with federal and California law and, to the extent applicable, the United States Constitution and the requirements of due process. The Court further finds that the Notice fully and accurately informs Settlement Class members of all material elements of the Proposed Settlement, including each

Class member's right and opportunity to object to the Proposed Settlement. The Court further finds that the Notice fully and accurately informs Settlement Class Members of each Class member's right to be excluded from the Settlement Class.

5. The Court hereby orders that the Parties effectuate the terms of the Proposed Settlement, including dissemination of the Notice and Claim Form to the Settlement Class members in the manner provided in the Proposed Settlement.

6. Any Settlement Class member who wishes to object to the Proposed Settlement shall submit the objection in writing and file it with the Court with a copy mailed to the Claims Administrator no later than forty-five (45) calendar days after the date of the initial mailing of the Notice.

7. Any member of the Settlement Class who wishes to opt out of the Settlement Class must mail the Claims Administrator, at the address set forth in the Notice, a signed request for exclusion from the Class, postmarked no later than forty-five (45) calendar days after the date of the initial mailing of the Notice.

8. Members of the Settlement Class must mail a signed Claim Form no later than forty-five (45) calendar days after the date of the initial mailing of the Notice. Any Settlement Class member who does not timely opt out or submit a Claim Form will not receive payment under the Settlement, but will nonetheless be subject to the release set forth in the Settlement.

9. Within fourteen (14) calendar days of the Court's order granting preliminary approval, Defendant shall provide to the Claims Administrator all Class Data, as detailed in Paragraph 74 of the Settlement (Defendant and Claims Administrator will consult prior to the production date to ensure the format of the Class Data is acceptable to the Claims Administrator), of all Potential Class Members sufficient to permit the Claims Administrator to make any

calculations and to issue Notice as specified in this order and the Proposed Settlement. Defendant will provide other information regarding class members that the Claims Administrator reasonably needs to administer the settlement.

10. The Claims Administrator shall then administer the Proposed Settlement consistent with the Proposed Settlement and this Order.

11. The Court hereby schedules a Final Approval Hearing to consider whether to grant final approval of the proposed class action settlement, the requests for Enhancement Payments, and the requests for attorneys' fees and reimbursement of costs and expenses, for **February 1, 2016 at 11:00 a.m. in Courtroom 5B.**

12. Named Plaintiffs' motion for final approval and supporting documents shall be filed pursuant to the Federal Rules of Civil Procedure and Local Rules.

13. The following chart summarizes the upcoming deadlines in this matter:

| EVENT | TIMING |
|---|---|
| Defendant provides Claims Administrator with Class Data | 14 calendar days after preliminary approval **September 1, 2015** |
| Deadline for Claims Administrator to mail Settlement Documents to all potential class members | 21 calendar days after Claims Administrator receives the Class Data **September 22, 2015** |
| Deadline for Class Counsel to file and serve their motion for approval of attorneys' fees, costs, and Service Enhancements along with all supporting evidence | 30 calendar days after Claims Administrator mails Settlement Documents **October 22, 2015** |

| Deadline for Class Members to submit claim forms, requests for exclusion, objections to the Proposed Settlement and/or Plaintiffs' motion for attorneys' fees and costs, and challenges to Class Data | 45 calendar days from date of mailing Settlement Documents<br><br>**November 6, 2015** |
|---|---|
| Settlement Administrator notifies the parties of all class members who requested exclusion or object to the Proposed Settlement | 15 calendar days after the deadline for requests for exclusion or objections<br>**November 21, 2015** |
| Plaintiff to file supplemental briefs in support of final approval of settlement and motion for attorneys' fees and costs as well as responses to any objections submitted by objecting Class Members | 24 calendar days after the deadline for requests for exclusion or objections<br><br>**November 30, 2015** |
| **FINAL APPROVAL HEARING** | **February 1, 2016 at 11:00 a.m.**<br>**Schwartz Courthouse, Courtroom 5B** |

**IT IS SO ORDERED.**

DATED:  August 18, 2015

M. James Lorenz
United States District Judge