Richard E. Quintilone II (SBN 200995)
req@quintlaw.com
Alvin B. Lindsay (SBN 220236)
abl@quintlaw.com
**QUINTILONE & ASSOCIATES**
22974 El Toro Road, Suite 100
Lake Forest, California 92630-4961
Tel.: (949) 458-9675
Fax: (949) 458-9679

David R. Markham (SBN 071814)
dmarkham@markham-law.com
Peggy J. Reali (SBN 153102)
preali@markham-law.com
Janine R. Menhennet (SBN 163501)
jmenhennet@markham-law.com
Maggie Realin (SBN 263639)
mrealin@markham-law.com
**THE MARKHAM LAW FIRM**
750 B Street, Suite 1950
San Diego, California 92101
Tel.: (619) 399-3995
Fax: (619) 615-2067

Attorneys for Plaintiffs and Class

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY LOEZA and ANGIE REVELES, individuals, on behalf of themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JP MORGAN CHASE BANK NA, an unknown business entity, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 13-cv-00095-L-BGS<br><br><u>CLASS ACTION</u><br><br>Hon. James M. Lorenz<br><br>Action Filed: December 11, 2012<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:       February 1, 2016<br>Courtroom    5B<br><br>Trial Date: None Set |

**TABLE OF CONTENTS**

I. INTRODUCTION................................................................................1

II. FACTS.............................................................................................2

III. PROCEDURAL BACKGROUND.......................................................3

IV. SETTLEMENT TERMS.....................................................................4

   A. Settlement Relief Provided to the Class .......................................4

     1. *Net Settlement Amount* .............................................................5

     2. *Payment Distribution Among Class Members* ...........................5

     3. *Settlement Amount Calculations*..............................................8

     4. *Attorneys' Fees and Costs* ......................................................10

     5. *PAGA Payment to Labor Workforce Development Agency* ..........10

     6. *Claims Administration Costs* ..................................................11

     7. *Reserve Fund* ........................................................................11

     8. *Service Enhancements* ...........................................................11

   B. Settlement Administration ...........................................................12

V. CLASS NOTICE AND CLASS MEMBERS' PARTICIPATION ...........12

VI. FINAL APPROVAL IS WARRANTED IN THIS CASE .......................13

   A. The Settlement was Reached through Arm's-Length Negotiations by Experienced Counsel, after Adequate Investigation, Discovery .........14

   B. The Strength of Plaintiffs' Case Favors Final Approval .....................16

   C. Expense, Complexity, and Duration of Litigation Favor Approval.....17

   D. Risk of Maintaining Class Action Status to Trial Favors Approval....19

   E. The Amount Offered in Settlement Favors Final Approval.................20

   F. The Stage of Pleadings and Extent of Discovery Favors Approval .....21

   G. The View of Experienced Counsel Favors Final Approval.................22

   H. The Class' Reaction to the Settlement Favors Final Approval ...........23

   I. The Balanced Factors Weigh in Favor of Final Approval...................24

i

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

**VII. NOTICE TO THE CLAS SATISFIES DUE PROCESS ...........................24**

**VIII.    CONCLUSION...........................................................................................25**

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Inter-Con Sec. Sys., Inc.*, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ....... 18

*Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964 (E.D. Cal. 2012) ...................... 20

*Alonzo v. Maximus, Inc.*, 275 F.R.D. 513  (C.D. Cal. 2011)........................... 16, 18, 19

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)............................................... 13

*AT&T Mobility v. Concepcion*, 131 S.Ct. 1740 (2011) ................................................. 6

*Brinker Rest. Corp. v. Super. Ct.,* 53 Cal.4th 1004 (2012) ............................. 14, 19, 20

*Burkhart-Dea v. CitiFinancial,* 2010 WL 457122 (W.D. Pa. Feb. 4, 2010)  .............. 19

*Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380 (2010) ............................. 21

*Church v. Consol. Freightways, Inc.,* 1991 WL 284083 (N.D. Cal. June 14, 1981)..... 15

*Clark v. Am. Residential Servs.*, 175 Cal.App.4th 785 (2009)..................................... 21

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............................... 17

*Collins v. ITT Educational Servs.* 2013 WL 6925827 (S.D. Cal. July 30, 2013).... 16, 20

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ....................................................... 19

*Custom LED, LLC v. eBay, Inc.*, 2014 WL 2916871 (N.D. Cal. June 24, 2014)............ 19

*Durham v. Cont'l Cent. Credit, Inc.*, 2011 WL 90253 (S.D. Cal. Jan. 10, 2011) ......... 22

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). .................................................. 23

*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ....................................... 15

*Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007). ......... 19, 21

*Gonzalez v. Officemax,* 2012 WL 5473764 (C.D. Cal. Nov. 5, 2012*)*  ....................... 19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).................................... 12, 13

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988)............................ 13

*In re Cendant Corp. Litig.*, 264 F.3d 201 (9th Cir. 2001) ............................................ 19

*In re Netflix Privacy Litig.*, 2012 WL 2598819 (N.D. Cal. July 5, 2012).................... 18

*In re Nvidia Corp. Deriv. Litig.*, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) .... 20, 21

*In re Omnivision Techs., Inc.,* 559 F.Supp.2d 1036 (N.D. Cal. 2008) .................... 19, 23

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008)........................................... 12

*In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078 (N.D. Cal. 2007) ......................18

*In re Wash. Public Power Supply Sys. Sec. Lit*, 720 F.Supp. 1379 (D. Ariz. 1989)......19

*Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.4th 348 (2014)............................20

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009).............13

*La Sala v. American Sav. & Loan Assn.,* 5 Cal.3d 864 (1971) ...................................16

*Morey v. Louis Vuitton North America*, 2014 WL 109194 (S.D. Cal. Jan. 9, 2014).....21

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,

      688 F.2d 615 (9th Cir. 1982) ........................................................13, 20, 21, 24

*Ordonez v. Radio Shack, Inc.*, 2013 WL 210223 (C.D. Cal. Jan. 17, 2013)............16-19

*Rodriguez v. West Publ'g*, 563 F.3d 948 (9th Cir. 2009)...............................................21

*Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 (E.D. Cal. 2007)............10

*Singer v. Becton, Dickinson & Co.*, 2010 WL 2196104 (S.D. Cal. 2010).............10, 22

*Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013)........22

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........................................13, 15, 16

*True v. American Honda Motor Co.*, 749 F.Supp.2d 1052 (C.D. Cal. 2010) .........13, 17

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)................................17

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) .......................................14, 16

*Young v. Polo Retail, LLC,* 2007 WL 951821 (N.D. Cal. Mar. 28, 2007)...................22

**Statutes**

Cal. Labor Code § 206.5........................................................................................7

**Rules**

Fed. R. Civ. Proc. 23(a)(2)........................................................................................14

Fed. R. Civ. Proc. 23(a)(4)........................................................................................15

Fed. R. Civ. Proc. 23(b)(3)........................................................................................16

Fed. R. Civ. Proc. 23(e) .................................................................................1, 12, 17

Fed. R. Civ. Proc. 34 .....................................................................................3, 14, 21

**Other Authorities**

Moore's Federal Practice, 23.165[3] (3d ed. 2005) .................................................14

Newberg on Class Actions (4th ed. 2002) .......................................................10, 18

# I.    **INTRODUCTION**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs MARY LOEZA and ANGIE REVELES ("Plaintiffs"), through their counsel of record, submit this Memorandum in support of their Unopposed Motion for Final Approval of Class Action Settlement,[1] which was preliminarily approved by this Court on **August 18, 2015** (Dkt. #70). The Notice plan, approved by the Court as part of the preliminary approval order, has been fully implemented.

Final approval is warranted here because the Settlement Agreement is fair, reasonable, and adequate.  The parties reached the Settlement through arm's length negotiations after three years of litigation, which included substantial discovery and highly-disputed motions in connection with discovery and Defendant's Motion for Summary Judgment.

The Settlement Agreement is for a Maximum Settlement Amount of **$950,000** ("the Settlement Fund") on behalf of 827 current and former employees of defendant JP Morgan Chase Bank ("Chase") who, between **December 11, 2008** and the date of preliminary approval of the Settlement (**August 18, 2015**) (the "Class Period"), were employed as LM Underwriter Jrs. ("Class Members"), in California.

This Settlement represents **71% of the maximum potential damages liability** for those class members who have not previously signed arbitration agreements or general releases. (See Markham Declaration in support of Motion for Preliminary Approval, Dkt. #67-2, ¶¶ 11-15).  The highest Settlement Award is **$5,217.78**, and the average is **$772.94**.  (See concurrently filed Supplemental Declaration of Michael Bui of Simpluris, Inc. ("**Bui Supp. Decl.**"), ¶8).  **Not a single** Class Member objected to the Settlement, and **no Class Member opted out**, which further confirms the fairness and reasonableness of this Settlement.  This is an excellent result obtained

---

[1] All references to the "Settlement Agreement" and capitalized words shall refer to the terms and definitions within the Settlement Agreement, which has been provided for the Court at **Exhibit A** to the Declaration of David R. Markham in support of the Motion for Preliminary Approval ("**Markham MPA Decl.**") (Dkt. #67-2).

1

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

1 without the risks, expense, and delay of further litigation.  For these reasons, and as

2 set forth more fully herein (and in the accompanying papers), Plaintiffs respectfully

3 request this Court enter the proposed Order Granting Final Approval submitted

4 herewith.

5 **II.**    **FACTS**

6          Plaintiffs Loeza and Reveles worked as LM Underwriter Jrs. at Chase's Rancho

7 Bernardo, California office during the Class Period.  (See **Markham MPA Decl.**, Dkt.

8 #67-2, **at ¶4**).  Plaintiffs' duties included analyzing documents provided by customers

9 who were no longer able to make their mortgage payments, to determine if they were

10 eligible for a loan modification.  *Id*., ¶3.  Each month, Plaintiffs had to make a certain

11 number of decisions on assigned modification requests.  *Id*., ¶4.  Plaintiffs had to adhere

12 to Chase's policies regarding the quality and quantity of the loans, and were given monthly

13 scores based on the number of errors in their processed files.  (*Id.*; see also Declaration of

14 Mary Loeza in support of Motion for Fees and Costs and Plaintiffs' Service

15 Enhancements, Dkt. # 71-10 ("**Loeza Decl.**"), **¶¶ 3-6**; Declaration of Angie Reveles in

16 support of Motion for Fees and Costs and Plaintiffs' Service Enhancements, Dkt. #79

17 ("**Reveles Decl.**"), **¶¶ 2-5**).

18          Plaintiffs alleged that in order to meet the quotas regarding quality and quantity of

19 processed loans, and to avoid reduction in pay or termination because of errors, they had

20 to significantly increase the number of files processed each month, above Chase's regular

21 monthly quotas.  (**Markham MPA Decl.**, Dkt. #67-2, **¶¶ 5-6**; *see also* **Loeza Decl.**, **¶¶**

22 **3-6**; **Reveles Decl.**, **¶¶ 2-5**).  While the base quota was expected to be achievable in a 40-

23 hour week, an increased quota was not.  Chase's overtime policy required preapproval.

24 *Id.* Working unauthorized overtime was grounds for discipline, including termination.  *Id.*

25 Plaintiffs alleged that they could not request overtime to complete the workload that

26 needed to be completed, according to Chase, in a 40-hour week.  *Id.* Therefore, Plaintiffs

27 alleged that in order to meet their quotas and avoid forfeiture of salary or termination, they

28 had to work off the clock, work unreported overtime, and forego meal and rest breaks.  *Id.*

2

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

Chase denies Plaintiffs' claims, and asserts that it has had, during all relevant times, a policy strictly prohibiting off-the-clock work, and that Plaintiffs and Class Members have been paid for all time worked.  See **Markham MPA Decl., Exhibit A**, Settlement Agreement, ¶ 50.  Chase asserts that it has had, during all relevant times, policies providing meal and rest breaks to Plaintiffs and Class Members in accordance with California law. *Id.*  Chase also asserts that its itemized wage statements accurately contain all required information.  Chase also asserts that employees were properly and timely compensated for all wages due. *Id.*  Consequently, Chase disputes liability to Plaintiffs and Class Members. *Id.*

## III.   PROCEDURAL BACKGROUND

Plaintiffs filed a class action complaint against Chase on **December 12, 2012** in San Diego Superior Court alleging causes of action for (i) unpaid overtime under both California Labor Code and Fair Labor Standards Act ("FLSA"), (ii) failure to provide meal and rest periods, (iii) failure to provide timely wages, (iv) wage statement defects, (v) failure to reimburse business expenses, (vi) violation of California's Unfair Competition Law, and (vii) private attorney general action penalties ("PAGA").  On **January 14, 2013**, the action was removed to this Court based on federal question and jurisdiction under the Class Action Fairness Act of 2005 ("CAFA").  (*See* Dkt. # 1).

Class Counsel has vigorously advanced Plaintiffs' position, and thoroughly investigated Class Members' claims.  (**Markham MPA Decl.**, Dkt. # 67-2, at **¶7**).  The Parties engaged in substantial discovery.  Plaintiffs propounded two sets of document requests, and one set of interrogatories, and also took five depositions of Chase's FRCP 30(b)(6) witnesses and other employees.  *Id.*  To oppose Chase's motion for summary judgment, Plaintiffs conducted an inspection of Chase's premises under Rule 34(a)(2). *Id.*  Chase propounded written discovery, including document requests and interrogatories, and deposed both Plaintiffs.  Chase produced over 1,200 pages of paper documents, and voluminous electronically stored information ("ESI"), which included emails, badge

3

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

1  swipe records, and computer access records, contact information for a sample of putative

2  class members, and Plaintiffs also engaged in expert discovery.  *Id.*

3       The Parties engaged in substantial motion practice. (**Markham MPA Decl.**, Dkt.

4  # 67-2, at **¶ 8**).   While Plaintiffs were finalizing their Motion for Class Certification, the

5  Parties agreed to allow Chase to file its motion for summary judgment first, which was

6  filed on **November 22, 2013**.  *Id.* Plaintiffs opposed Chase's motion for summary

7  judgment on **January 13, 2014**.  Dkt. # 34, 45.  Plaintiffs also filed a Joint Motion for

8  Determination of Discovery Dispute.  Dkt. # 23.

9       The Parties then participated in an all-day mediation session on **December 9, 2014**

10  before Michael Dickstein, Esq., a well-regarded mediator with experience mediating large

11  wage and hour class actions.  **Markham MPA Decl.,** **¶9**.  Although this session did not

12  result in a settlement, the Parties continued the settlement dialogue.  *Id.*   After several

13  weeks of arms' length, in depth negotiations, with the assistance of Mr. Dickstein, the

14  Parties settled this case.  *Id.*  **On March 31, 2015**, the Parties executed the Settlement

15  Agreement.  (**Markham MPA Decl.**, **Exhibit A**).

16  **IV.  SETTLEMENT TERMS**

17       The Settlement contains the following terms:

18      **A.   Settlement Relief Provided to the Class**

19      Monetary relief will be provided to Settlement Class Members who are:

20       All persons who are and/or were employed by JPMorgan Chase Bank, N.A.

21       in the position of LM Underwriter Jr. at a California location from **December**

22       **11, 2008** through the Date of Preliminary Approval (**August 18, 2015**).

23  (**Markham MPA Decl., Exhibit A**, Settlement Agreement, ¶7.  The Settlement Class

24  does not include any person who submits a timely and valid opt-out request. *Id.*, ¶78.  The

25  Gross Settlement Fund is $950,000.  *Id.*, ¶62.  This includes payments to Class Members,

26  attorneys' fees and costs, enhancement awards to Class Representatives, costs of claims

27  administration, and the LWDA's share of PAGA penalties.  *Id.*; see also **Bui Suppl. Decl.,**

28  **Exhibit A**, Notice Packet.  Chase will pay employer tax contributions and liabilities in

4

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

addition to the Gross Settlement Fund. *Id.*, ¶63. A minimum of 55% of the Net Settlement Amount will be distributed to Qualified Claimants (the Minimum Qualified Claimant Settlement Award) as provided in the Settlement. *Id.*, ¶34. As the claims submitted by Qualified Claimants exceeded this minimum and totaled 59.74% of the Net Settlement Amount (see **Bui Suppl. Decl., ¶8**), this minimum provision is inapplicable.

### 1.   *Net Settlement Amount*

From the Maximum Settlement Amount of $950,000, the following will be deducted, to result in a Net Settlement Amount:  attorneys' fees ($285,000) and costs ($35,000), PAGA penalties to the state ($1,875), administration costs ($12,000), taxes (excluding Defendant's share), Reserve Fund ($10,000), and Service Enhancements ($20,000) to the Class Representatives.  (*See* **Markham MPA Decl., Exhibit A**, Settlement Agreement, ¶33; *see also* **Bui Suppl. Decl., ¶8**).  The Net Settlement Fund will then be distributed as follows:

### 2.   *Payment Distribution Among Class Members*

Class Members who submit valid and timely Claim Forms are Qualified Claimants and will receive an Individual Settlement Amount from the Net Settlement Amount. **Markham MPA Decl., Exhibit A**, Settlement Agreement, ¶62E.  The Claims Administrator will calculate each Class Member's Individual Settlement Amount by calculating the Applicable Workweeks worked by the Class Member during the Class Period. *Id.*, ¶66(A).  The Individual Settlement Allocation will be determined based on the number of Weighted Applicable Workweeks for each Class Member.  The Weighted Applicable Workweeks will be calculated based on a Class Member's membership in one of four subclasses: (**1**) No Arbitration/No Release Subclass – includes any member of the Settlement Class who is not a member of the Release signer Subclass, Arbitration Subclass, or Arbitration and Release Subclass.  Settlement Agreement, ¶7(D); (**2**) Arbitration Subclass – includes any member of the Settlement Class who is subject to an agreement to arbitrate with Chase, but did not sign a release of claims against Chase (through a severance agreement, or otherwise). *Id.*, ¶7(B); (**3**) Release signer Subclass –

5

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

1  includes any member of the Settlement Class who signed a release of his or her individual
2  claims against Chase (through a Release Agreement, severance agreement, or otherwise),
3  but is not subject to an agreement to arbitrate with Chase. *Id.*, ¶7(A); (**4**) Arbitration and
4  Release Subclass - any member of the Settlement Class who signed a release of claims
5  against Chase and is also subject to an agreement to arbitrate claims with Chase. *Id.*,
6  ¶7(C); *see also* Class Notice at **Bui Suppl. Decl., Exhibit A**.

7      There are four Subclasses because many Class Members were subject to arbitration
8  agreements, a release of claims, or both. Some Class Members are subject to arbitration
9  agreements that Chase contends waived the employee's right to be part of a class,
10  collective, or representative action (relying on *AT&T Mobility LLC v. Concepcion*, 131
11  S.Ct. 1740 (2011)) (Arbitration Subclass). (**Markham MPA Decl., Dkt. 67-2, ¶¶ 16-21**).
12  Further, Chase no longer employs LM Underwriter Jrs. in California, and laid off many
13  Class Members, who signed releases in exchange for severance pay (Release signer
14  Subclass). The fourth Subclass consists of LM Underwriter Jrs. in California who are
15  subject to both an arbitration agreement and release. *Id.*

16      In order to account for the differences in potential defenses to recovery for the four
17  Subclasses, and differing amounts of damage calculations, an individual Class Member's
18  Applicable Workweeks will be discounted in order to provide the highest recovery to
19  those who did not sign arbitration or release agreements, and progressively smaller
20  recoveries to Class Member who are subject to one or the other, or both. (**Markham**
21  **MPA Decl., Dkt. 67-2, ¶¶ 16-19**). The Applicable Workweeks will be multiplied as
22  follows to achieve the Weighted Applicable Workweeks:

23  •   No Arbitration/No Release Subclass: These Subclass members will receive a full
24      share, or 100% of the Class Member's Applicable Workweeks;

25  •   Arbitration subclass: 30% of the Class Member's Applicable Workweeks

26  •   Release signer Subclass: 20% of the Class Member's Applicable Workweeks

27  •   Arbitration and Release Subclass: 15% of the Class Member's Applicable
28  Workweeks. **Markham MPA Decl., ¶¶ 17, 19**; **Exhibit A**, Settlement Agreement, ¶66.

6

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

1    The Arbitration and Release Subclasses have their credited workweeks reduced,

2    because these groups have a substantial headwind with respect to pursuing their claims.

3    Although Plaintiffs would argue that the arbitration clauses are procedurally

4    unconscionable, and releases are not valid under Labor Code § 206.5, or FLSA, suffice it

5    to say, there would be significant defenses to the claims of these Class Members.

6    (**Markham MPA Decl., ¶ 18**).  Based on the number of workweeks worked in each

7    Subclass, and assuming a 100% claim rate, the Settlement payment to each group is

8    approximately as follows (*id.* at **¶ 18**):

| Subclass Name/No. of Class Members | Approx. # of Workweeks in Each Subclass | % of the Class Member's Workweeks Allocated | # of Workweeks Credited to each Subclass | Approx. Gross Settlement Amount per Subclass |
|---|---|---|---|---|
| No Arbitration/No Release/157 | 11,687.14 | 100% | 11,687.14 | $448,591.76 |
| Arbitration Subclass/333 | 21,367.43 | 30% | 6,410.23 | $246,046.16 |
| Release signer Subclass/132 | 17,377.86 | 20% | 3,475.57 | $133,404.15 |
| Arbitration and Release Subclass/216 | 21,182.43 | 15% | 3,177.36 | $121,957.94 |
| Total: 838 | 71,614.86 | 100% | 24,750.31 | $950,000.00 |

19   Class Members who did not submit a claim or request for exclusion within 28 days

20   after Notice packets were mailed, were sent a reminder postcard.  (**Markham MPA Decl.,**

21   **Exhibit A,** Settlement Agreement, ¶73; *see also* **Bui Decl., Exhibit B**).  Further, Class

22   Members were given an option to cure a Claim Form that lacked a signature, or appears

23   otherwise defective. *Id.*, ¶78. There was only one dispute.  (**Bui Suppl. Decl., ¶ 7**). Any

24   Settlement Payment check that is uncashed after 180 days from the date of issuance will

25   escheat to the State of California to be held for the Class Member. (**Markham MPA**

26   **Decl., Exhibit A,** Settlement Agreement, ¶88).

27   All Settlement payments are subject to taxation, and will be reported to the IRS and

28   state tax authorities.  Notably, Chase's share of applicable payroll taxes and related

7

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

withholdings on the amount attributable to wages will be paid separate and apart from the Maximum Settlement Amount. (**Markham MPA Decl., Exhibit A,** Settlement Agreement, ¶63). Fifty percent (50%) of each Class Member's Individual Settlement Amount will be considered unpaid wages, and fifty percent (50%) non-wages. *Id.*, ¶38(a). Class Members and Class Representatives are responsible for the payment of any taxes on the portion that is unpaid wages. *Id.* The Settlement Class Members shall seek their own tax advice in connection with this Agreement. *See Id.*

### 3. *Settlement Amount Calculations*

The Settlement fund of $950,000 is a result of compromise between the Parties for Plaintiffs' overtime, meal and rest break, and derivative claims. Plaintiffs previously conceded that they had no claim for unreimbursed expenses, as Plaintiffs' reasonable out of pocket business expenses were paid by Chase. Dkt. # 59 at 8. In preparation for Plaintiffs' Motion for Class Certification, Plaintiffs' expert, Dr. Fountain, analyzed a sample of electronic data from Chase's computer systems, which were used by Class Members to process loans. (**Markham MPA Decl., ¶12**). Dr. Fountain opined that, on average, the sampled Class Members worked one hour of unpaid overtime a week. *Id.* With respect to meal and rest breaks, Dr. Fountain found that, on average, Class Members missed one meal break per week. There are no electronic records indicating untimely rest breaks, because rest breaks, unlike meal breaks, do not have to be recorded. *Id.* Class Counsel's interviews with Class Members revealed that the amount of missed rest breaks was nominal. *Id.* Chase has disputed Dr. Fountain's findings.

Both formal discovery and pre-mediation exchange of documents revealed that there were approximately 11,687.14 workweeks for Class Members who did not sign an arbitration agreement or release, during the Class Period. (**Markham MPA Decl., Dkt. # 67-2, ¶13**). By multiplying the number of workweeks by the Class Members' overtime rate, of $32.35 (150% of the average hourly rate of $21.50), Plaintiffs estimated that the maximum potential liability of Chase for failure to pay overtime to Class Members who did not sign an arbitration agreement or release is approximately $378,078.97. *Id.*

8

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

With respect to meal breaks, assuming one meal break violation per week, by multiplying the number of workweeks (11,687.14) by the Class Members' average hourly rate of $21.50, Plaintiffs estimated that the maximum potential liability of Chase for failure to provide meal breaks is approximately $251,273.51 for this group. *Id.*, ¶14.

By combining the potential liability for Plaintiffs' overtime claims ($378,078.97) and meal and rest break claims ($251,273.51), the total damages Plaintiffs would seek at trial on behalf of Class Members who did not sign an arbitration agreement or release are approximately $629,352.48, excluding penalties, fees, and costs.  (**Markham MPA Decl., Dkt. # 67-2, ¶15**). The portion of the Maximum Settlement Amount allocated to those Class Members ($448,591.76) represents **71%** of Chase's estimated maximum potential liability for overtime and meal and rest break claims of Class Members who did not sign arbitration agreements or releases.  *Id.*  This is an excellent result, well in range of settlements commonly approved by California district and state courts.  The cents on a dollar distribution of the Settlement Amount among the four subclasses is as follows:

| Subclass /# of Class Members in each Subclass | Approx. # of Workweeks in Each Subclass | Max. Damages for Overtime Claim | Max. Damages for Meal and Rest Break Claim | Approx. Settlement Amount Subclass will receive | % of the Max. Damages for Overtime, Meal and Rest Break Claim |
|---|---|---|---|---|---|
| No Arbitration/No Release/157 | 11,687.14 | $378,078.97 | $251,273.51 | $448,591.76 | 71.41% |
| Arbitration Subclass/333 | 21,367.43 | $691,236.36 | $459,399.74 | $246,046.16 | 21.38% |
| Release Holder Subclass/132 | 17,377.86 | $562,173.77 | $373,623.99 | $133,404.15 | 14.25% |
| Arbitration and Release Subclass/216 | 21,182.43 | $685,251.61 | $455,422.25 | $121,957.94 | 10.69% |

1   The smaller percentages for Subclasses are reasonable because there was a
2   significant risk that those individuals would be excluded from the Class based on Chase's
3   defenses, and/or that their claims would be barred.

### 4.   *Attorneys' Fees and Costs*

5   The Parties agreed that $285,000, or 30% of the Maximum Settlement Amount, may
6   be allocated to pay attorneys' fees, and up to $35,000 may be allocated to reimburse Class
7   Counsel for out-of-pocket litigation expenses.  (**Markham MPA Decl., Dkt. # 67-2,**
8   **Exhibit A,** Settlement Agreement, ¶62(A)).  Class Counsel and Plaintiffs have submitted
9   their Motion for Attorneys' Fees and Costs and Plaintiffs' Service Enhancements (*see*
10  Dkt. # 71), along with supporting Declarations from Class Counsel and Plaintiffs.  (*See*
11  Markham Decl., Dkt. # 71-2; Quintilone Decl., Dkt. # 71-6; *see also* Loeza Decl., Dkt.
12  # 71-10; Reveles Decl., Dkt. # 79, which provide justification for the requested fees and
13  costs and service enhancement awards).

14  The 30% of the fund in attorneys' fees requested is higher than the Ninth Circuit
15  benchmark of 25%, but in this case Class Counsel's lodestar is substantially in excess of
16  25%.  In this situation where the common fund is one million dollars or less, many
17  California authorities have authorized fees in excess of 25%.  Rubenstein, Conte and
18  Newberg, *Newberg on Class Actions*, §14:6 (4th ed. 2002); *Singer v. Becton, Dickinson
19  & Co*., 2010 WL 2196104, at *8 (S.D. Cal. 2010); *Collins v. ITT Educational Servs., Inc*.,
20  Case No. 12-cv-1395-DMS-BGS, Dkt. No. 93. (S.D. Cal, Jan. 15, 2015).  Class Counsel
21  has provided support for the fees and costs awards using both methodologies, lodestar and
22  percentage-of-the-fund, as cross checks. (*See* Dkt. # 71-1, pages 4-17). Chase did not
23  oppose the application for attorneys' fees and costs. (**Markham MPA Decl., Exhibit A,**
24  Settlement Agreement, ¶62(A)).  Any potential reduction by the Court of the requested
25  Class Counsel Award does not change the remaining terms of the Settlement.  *Id*. ¶62(F).

### 5.   *PAGA Payment to Labor Workforce Development Agency*

27  The Parties agreed that $2,500 of the Maximum Settlement Amount will be
28  allocated for alleged violations of PAGA. Seventy-five percent (75%) ($1,875) of this

10

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

amount will be paid to the California Labor & Workforce Development Agency ("LWDA"), and 25% to the Class.  (**Markham MPA Decl., Exhibit A,** Settlement Agreement, ¶62(D)).  This amount is reasonable because Chase vigorously contested the viability of the PAGA claims, both on the merits and on procedural grounds.

### 6.    *Claims Administration Costs*

The parties selected Simpluris as the Claims Administrator in this action. (**Markham MPA Decl., Exhibit A,** Settlement Agreement, ¶3; see also Bui Declaration Regarding Notice and Settlement Administration, Dkt. #71-11 ("**Bui Notice Decl.**"), ¶¶ 3-4).  The costs of administration, estimated to be $12,000, has been preliminarily approved and will be paid from the Maximum Settlement Amount.  (**Markham MPA Decl., Exhibit A,** Settlement Agreement ¶62(C); **Bui Suppl. Decl., ¶ 11**).

### 7.    *Reserve Fund*

The Parties allocated $10,000 from the Net Settlement Amount to be set aside for late claims, disputed settlement allocations, inadvertent errors on exclusions, and/or to resolve other disputes.  (**Markham MPA Decl., Exhibit A,** Settlement, ¶¶ 42, 79).

### 8.    *Service Enhancements*

Chase agreed to pay $15,000 to Plaintiff Loeza, and $5,000 to Plaintiff Reveles, for their services as Class Representatives, and the Court preliminarily approved these amounts.  (**Markham MPA Decl., Exhibit A,** Settlement, ¶43).  Class Counsel and the Class Representatives have provided support for the requested Service Enhancement awards to the Class Representatives.  (*See* Quintilone Decl., Dkt. # 71-6, ¶¶ 25-26; *see also generally* Loeza Decl., Dkt. # 71-10; Reveles Decl., Dkt. # 79).  Service Awards will be paid from the Maximum Settlement Amount.  Any portion of the requested Service Enhancement that is not awarded shall be part of the Net Settlement Amount and will be distributed to Class Members as provided in this Agreement.  (**Markham MPA Decl., Exhibit A,** Settlement, ¶62(F)). Any potential reduction or increase by the Court of the requested Service Enhancement does not change the other terms of this Settlement.  *Id*.

11

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

Service Enhancements to the Class Representatives shall be treated as non-wage compensation, and shall be reported on an IRS 1099. *Id.*, ¶63.

### B.   Settlement Administration

After preliminary approval, the parties engaged the Settlement Administrator Simpluris, Inc. to administer the Class Action Settlement.  (*See* Bui Notice Decl., Dkt. #71-11, ¶¶ 2-3).  Simpluris set up a toll-free phone number for Class Members to call and, after obtaining the Class list and data from Defendant's counsel, began processing addresses and formatting the Notice Packet documents for mailing. *Id.* at ¶¶ 3-7.

## V.   CLASS NOTICE AND CLASS MEMBERS' PARTICIPATION

On **September 22, 2015,** pursuant to this Court's Preliminary Approval Order, the Notice Packets, including a Notice of Settlement of Class Action Lawsuit ("Notice") and Settlement Claim and Consent to Joint Form ("Claim Form"), were mailed to 827 class members by the Settlement Administrator, Simpluris, Inc.. (**Bui Supp. Decl., ¶4, Exhibit A** for representative Notice Packet). The deadline to postmark disputes as to the number of workweeks worked, requests for exclusions, and objections to the Settlement was **November 16, 2015**. *Id.* at ¶5.  Those Class Members who did not respond to the Settlement Notice within thirty days received reminder postcards.  (See **Bui Supp. Decl., ¶5, Exhibit B,** Final Administration Report).  After Simpluris conducted searches on returns and completed re-mailings, 15 Notice Packets remain undeliverable.  **Bui Suppl. Decl., ¶ 6**.  The Administrator received **453** Claim Forms from Class Members.   *Id.* at ¶ 7.  There were **no objections**, and **no Class Member opted out** of the Settlement. *Id.* at ¶¶ 9-10.

After deducting from the $950,000 Maximum Settlement Amount the preliminarily approved attorneys' fees in the amount of $285,000.00 and costs in the amount of $35,000.00 to Class Counsel, Enhancement Payments in the amount of $20,000.00 to the Class Representatives, LWDA Payment of $1,875.00, setting aside $10,000.00 for the Reserve Fund, and Settlement Administration costs of $12,000.00, the Net Settlement Amount available to Class Members who submitted claims was

12

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

1  **$586,125.00**. (**Bui Suppl. Decl., ¶ 8**).   The total amount of the claims received by

2  the 453 Class Members who submitted Claim Forms (not including deductions for

3  any taxes) is **$350,143.79** (which is 59.74% of the Net Settlement Amount).  *Id.*  The

4  average estimated class member award is **$772.944,** and the highest is **$5,217.78**.  *Id.*

5  **VI.   FINAL SETTLEMENT APPROVAL IS WARRANTED IN THIS CASE**

6      Settlement of a class action requires approval of the court.  Fed. R. Civ. P. 23(e).

7  To warrant final approval, a class settlement must be fair, adequate, and reasonable.

8  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) citing *Hanlon v. Chrysler*

9  *Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *In re Pacific Enters. Sec. Litig.,* 47 F.3d

10  373, 377 (9th Cir. 1995).   The purpose of this requirement is to "prevent fraud,

11  collusion or unfairness to the class." *Dunk v. Ford Motor Co.,* 48 Cal.App.4th 1794,

12  1800 (1996).  The court has broad discretion in determining whether to approve or

13  reject a proposed settlement, but generally, there is a strong judicial preference for

14  pre-trial settlement of complex class actions.  *Officers for Justice v. Civil Serv.*

15  *Comm'n of S.F.,* 688 F.2d 615, 625 (9th Cir. 1982).

16      In evaluating the settlement, the court need not address whether the settlement

17  is ideal or the best outcome, but only determines whether the settlement is fair, free

18  of collusion and consistent with the plaintiff's fiduciary obligations to the class.  *See*

19  *Hanlon, supra,* 150 F.3d at1027 (9th Cir. 1998).  The following are the factors the

20  court may consider in order to approve the settlement:

21
22          (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and
          likely duration of further litigation; (3) the risk of maintaining class
23          action status throughout the trial; (4) the amount offered in settlement;
          (5) the extent of discovery completed and the stage of the proceedings;
24          (6) the experience and views of counsel; (7) the presence of
          governmental participants; and (8) the reaction of the class members to
25          the proposed settlement.

26  *Officers for Justice, supra*, 688 F.2d at 625; *Churchill Vill., LLC v. Gen. Elec.*, 361

27  F.3d 566, 575 (9th Cir. 2004) citing *Hanlon, supra*, 150 F.3d at 1026.   This

28  Settlement satisfies the above requirements:

13

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

### A. The Settlement was Reached through Arm's-Length Negotiations by Experienced Counsel, after Adequate Investigation, Discovery

"A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005). Here, Class Counsel has vigorously advanced Plaintiffs' position, and thoroughly investigated Class Members' claims. The Parties engaged in substantial discovery. Plaintiffs propounded two sets of document requests, and one set of interrogatories, and also took five depositions of Chase's FRCP 30(b)(6) witnesses and other employees. (*See* Markham MPA Decl., Dkt. #67-2, ¶ 7). To oppose Chase's motion for summary judgment, Plaintiffs conducted an inspection of Chase's premises under Rule 34(a)(2). *Id.* Chase propounded written discovery, including document requests and interrogatories, and deposed both Plaintiffs. Chase produced over 1,200 pages of paper documents, and voluminous electronically stored information ("ESI"), which included emails, badge swipe records, and computer access records, contact information for a sample of putative class members, and Plaintiffs also engaged in expert discovery. *Id.*

The Parties engaged in substantial motion practice. (Markham MPA Decl. (Dkt. #67-2), ¶8). While Plaintiffs were finalizing their Motion for Class Certification, the Parties agreed to allow Chase to file its motion for summary judgment first, which was filed on **November 22, 2013**. *Id.* Plaintiffs opposed Chase's motion for summary judgment on **January 13, 2014**. Dkt. # 34, 45. Plaintiffs also filed a Joint Motion for Determination of Discovery Dispute. Dkt. # 23.

The Parties participated in an all-day mediation session on **December 9, 2014**, before Michael Dickstein, Esq., a well-regarded mediator with experience mediating large wage and hour class actions. (**Markham MPA Decl.,** Dkt. #67-2, ¶ **9**). Although this session did not result in a settlement, the Parties continued the settlement dialogue. *Id.* After several weeks of arms' length, in depth negotiations, with the assistance of Mr.

---

14

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

1    Dickstein, the Parties settled this case.  *Id*.  On **March 31, 2015**, the Parties executed the

2    Settlement Agreement.  (See **Markham MPA Decl., Exhibit A**).

3         Plaintiffs have two law firms representing their interests and the interests of the

4    Class, Quintilone & Associates and the Markham Law Firm, and Defendant is

5    represented by Morgan, Lewis & Bockius LLP.  As the Settlement was reached

6    between experienced counsel with the assistance of a private mediator, it supports the

7    finding that the Settlement was free of collusion.  "The assistance of an experienced

8    mediator in the settlement process confirms that the settlement is non-collusive."

9    *Satchell v. Fed. Express Corp*., 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

10        Class Counsel has decades of experience in prosecuting complex class actions,

11   in particular class actions for violations of state and federal wage and hour laws, and

12   has achieved settlements amounting to millions of dollars on behalf of class members.

13   (See **Markham MPA Decl.**, Dkt. #67-2; **Quintilone MPA Decl.**, Dkt. # 67-3; *see*

14   *also* **Quintilone Declaration** (at Dkt. #71-6) in support of Motion for Approval of

15   Attorneys' Fees and Costs and Plaintiffs' Service Enhancement; **Markham Decl.**, at

16   Dkt. #71-2).  Class Counsel's qualifications and experience are further addressed in

17   their concurrently filed Declarations in support of this Motion for Final Approval.

18   (**Quintilone Decl., ¶¶ 6-11; Markham Decl., ¶ 5, Exhibit A**).  Class Counsel has

19   focused its practice on wage and hour class actions, has collectively been lead or co-

20   lead counsel in hundreds of class action cases in California and throughout the United

21   States, have been counsel of record on reported appellate cases and on published

22   opinions, and have jury trial experience.  *Id*.  Defendant's counsel is equally well-

23   respected and accomplished in wage and hour class action litigation.  Class Counsel

24   and counsel for Defendant are in agreement that the Settlement represents a fair and

25   reasonable result for the Class Members and represents an adequate resolution of

26   their class claims against Defendant. (**Quintilone Decl., ¶ 11; Markham Decl., ¶ 7**).

27   Thus, these factors favor final approval.

28

---

15

1

**B.    The Strength of Plaintiffs' Case Favors Final Approval**

2      To determine the fairness of the proposed Settlement, the strength of the

3   plaintiff's case on the merits is balanced against the settlement offer.  *Nat'l Rural*

4   *Telecomm. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  Even where

5   plaintiff's case might be strong, litigation poses risks, especially where the defendant

6   denies liability.  *See Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385, at *5 (N.D. Cal.

7   Apr. 21, 2011).

8      Here, the settlement terms compare favorably with the uncertainties associated

9   with continued litigation of Plaintiffs' claims.  The Settlement represents 71% of the

10  maximum potential liability of Defendant for the Plaintiffs' class-wide overtime,

11  meal and rest break, and derivative claims. (See **Markham MPA Declaration**, Dkt.

12  #67-2, ¶¶ 11-15).

13     Although Plaintiffs believe that their case is meritorious, they acknowledge that

14  numerous obstacles exist that could prevent certification of class claims, and proving

15  Chase's liability at trial.  First, it would be difficult to certify overtime/off the clock claims,

16  where Chase's uniform policies prohibit unreported work.  *Brinker, supra*, 53 Cal.4th at

17  1051-52; *Collins, supra*, 2013 WL 6925827, at *6.  Second, some courts have concluded

18  that performance expectations and overtime limitations alone do not constitute illegal

19  policies requiring off the clock work.  *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 522-23

20  (C.D. Cal. 2011), *Collins, supra*, at *6 n.7.  Third, with respect to Plaintiffs' meal and rest

21  break claims, authority exists, albeit not unanimous, that states that individualized

22  inquiries are necessary to determine why a break was short, late, or missed, defeating

23  predominance. *Ordonez v. Radio Shack, Inc.*, 2013 WL 210223, at *12 (C.D. Cal. Jan.

24  17, 2013).  This Settlement provides payments to Class Members without any further

25  risks. *Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 976 (E.D. Cal. 2012); *see also*

26  *In re Nvidia Corp. Deriv. Litig.*, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) ("The

27  Settlement eliminates…risks of continued litigation, including the very real risk of no

28  recovery after several years of litigation.").

16

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

1   Should this action continue to be litigated, class certification will be hotly
2   contested followed by an appeal to the Ninth Circuit regardless of who prevails.  This
3   factor also weighs in favor of settlement approval.  *Adoma v. Univ. of Phoenix, Inc.*,
4   913 F.Supp.2d at 976; *In re Nvidia Corp. Deriv. Litig.*, 2008 WL 5382544, at *3.

5   Thus, Plaintiffs' ability to prove liability at trial favors final approval of the
6   Settlement.

7   **C.   Expense, Complexity, and Duration of Litigation Favor Approval**

8   "In most situations, unless the settlement is clearly inadequate, its acceptance
9   and approval are preferable to lengthy and expensive litigation with uncertain
10   results." *Nat'l Rural Telecomm.*, 221 F.R.D. at 526, citing 4A Conte & H. Newberg,
11   Newberg on Class Actions, §11:50 at 155 (4th ed. 2002).  In analyzing this factor,
12   the Court should compare the uncertainties of prolonged litigation with the immediate
13   benefits that the Settlement provides to the Class members.  *Nat'l Rural Telecomm.*,
14   221 F.R.D. at 526, citing *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597,
15   624 (D. Colo. 1974).

16   Plaintiffs' claims involved several complex issues in the contested area of
17   certification of off the clock work, overtime, and meal and rest break claims.
18   Plaintiffs would move to certify the overtime/off the clock claims on the basis that
19   Chase's *de facto* policies and practices caused Class Members to work off the clock,
20   unreported overtime and through their meal and rest breaks. It is a complex issue in
21   light of the line of cases that hold that if an employer's official policy prohibits
22   unreported work, certification is not appropriate.  *Brinker, supra*, 53 Cal.4th at 1051-
23   52; *Collins*, *supra*, 2013 WL 6925827, at *6; *Ordonez, supra*, 2013 WL 210223, at *8-
24   9. This is to be contrasted with cases that hold that an off the clock class can be certified
25   when an employer has a *de facto* practice of not paying employees for all hours
26   worked, even if the employer's official written policy forbids off the clock work.
27   *Williams v. Super. Ct.*, 221 Cal.App.4th 1353, 1365, 1369 (2013). Another contested
28   and complex isssue regarding certifiying an off the clock class is whether or not the

17

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

employer's performance quotas, coupled with discouraging overtime, can on their own form illegal policies requiring off the clock work. *See Alonzo v. Maximus, Inc*., *supra*, 275 F.R.D. at 522-23; *Collins, supra*, at *6 n.7. Another complex issue is whether or not an employee's reaction to an employer's work pressures constitutes an individualized issue, defeating commonality and predominance. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).

Further, Plaintiffs' meal and rest break claims also represent complex issues where conflicting authority exists as to whom has the burden to record whether a break was short, missed, or late – an employer or an employee - and whether or not individualized inquiries are necessary to make this determination, defeating predominance. *See Ordonez, supra*, 2013 WL 210223, at *12; *Gonzalez v. Officemax, supra*, 2012 WL 5473764, at *5; *Cf. Safeway v. Super. Ct.*, 238 Cal.App.4th 1138, 148 (2015). Lastly, this case's complexity would be evident at the trial stage, due to issues with proving and calculating damages for missed rest breaks, where no record exists of those rest breaks being taken or missed.

Considering that the average civil appeal in the Ninth Circuit can take up to several years, there is a high risk that absent settlement, this litigation would continue for years before Class Members would see any recovery, if there would be any recovery at all. *Frame v. Hillman*, 2002 WL 34520817, at *6 (S.D. Cal. July 31, 2002 (stating that the risks and expenses of prolonged litigation tip the scale in favor of the settlement approval). Conversely, Settlement disposes of all litigation risks and uncertainties. Any Class Member who submits a valid Claim Form will receive monetary relief. (**Markham MPA Decl., Exhibit A**, Settlement Agreement, ¶37(b); **Bui Suppl. Decl., ¶¶ 7-10**). Courts have acknowledged that settlements of class actions are favored when they provide immediate benefits to the class without the risk and expense involved in continued litigation. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig*., 396 F.3d 922, 933 (8th Cir. 2005). As this is the case here, this factor also favors granting final approval.

18

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

**D.** **Risk of Maintaining Class Action Status to Trial Favors Approval**

The risk that further litigation might result in no recovery for Plaintiffs, particularly in a case involving complicated legal issues, is an important factor to consider in granting final approval. *See In re Nvidia Corp. Deriv. Litig*., 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008).  Here, Plaintiffs alleged that Chase's unrealistic expectations forced them to work unreported overtime, off the clock, and through their meal and rest breaks. However, authority exists that is contrary to Plaintiffs' position. First, it would be difficult to certify overtime/off the clock claims, where Chase's uniform policies prohibit unreported work. *Brinker, supra*, 53 Cal.4th at 1051-52; *Collins v. ITT Educ. Servs.,* 2013 WL 6925827 at *6 (S.D. Cal. July 30, 2013); *Soto v. Castlerock Farming & Transp., Inc.,* 2013 WL 6844377, at *15 (E.D. Cal. Dec. 23, 2013).   Second, some courts have concluded that performance expectations and overtime limitations alone do not constitute illegal policies requiring off the clock work. *Alonzo v. Maximus, Inc.,* 275 F.R.D. 513, 522-23 (C.D. Cal. 2011); *Burkhart-Dea v. CitiFinancial, Inc.,* 2010 WL 457122, at *4-5 (W.D. Pa. Feb. 4, 2010) ("[c]onflict between sales quotas and a policy of discouraging overtime…does not raise a predominant issue appropriate for class treatment."). Third, with respect to Plaintiffs' meal and rest break claims, some authority states that why "any particular employee missed any particular break requires, ineluctably, individualized fact finding." *Gonzalez v. Officemax North America*, 2012 WL 5473764, at *5 (C.D. Cal. Nov. 5, 2012); see also *Ordonez v. Radio Shack, Inc*., 2013 WL 210223, at *12 (C.D. Cal. Jan. 17, 2013).

Based on the following, Plaintiffs faced a significant risk that their claims would not be certified, should this litigation continue. The district court retains jurisdiction until final judgment to modify an order that either granted or denied class certification. *Gen. Tel. Co. of Sw. v. Falcon*, 102 S. Ct. 2364, 2372 (1982); Fed. R. Civ. Proc. 23(c)(1)(C).  Thus, should this Settlement fail, class certification will be hotly contested followed by a time consuming appeal to the Ninth Circuit.  In

contrast, by settling this action, "there is much less risk of anyone who may have actually been injured going away empty-handed." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041-42 (N.D. Cal. 2007). Accordingly, this factor weighs in favor of final approval.

### E.   The Amount Offered in Settlement Favors Final Approval

As the Ninth Circuit observed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Thus, when evaluating the amount offered in settlement, the Court should consider "the complete package taken as a whole," and the amount should "not be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id*. at 625-28.

Here, Class members will receive cash payments from the $950,000 Settlement fund and the Net Settlement Fund. The total claims submitted by the Class Members are $350,143.79 (which is 59.74% of the Net Settlement Amount). (**Bui Suppl. Decl., ¶ 8**). The highest Settlement Award is **$5,217.78**, and the average is **$772.94**. *Id*. The Parties, with the aid of the mediator, determined that $950,000 in total settlement value was fair and reasonable amount, and the results of the administration support this conclusion, as **no** Class Member has objected to the Settlement or opted-out of the Settlement.   *Id*. at ¶¶ 9-10.

When considering the probability of lengthy litigation in the absence of a settlement, the risk that Plaintiffs and the Class Members would not have been able to succeed at trial, and the risk that a jury could award damages less than $950,000.00, the settlement amount is reasonable. *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *7 (C.D. Cal. June 15, 2010). After all, in this Circuit, the focus in assessing whether the settlement amount is adequate is on the "arm's-length, non-collusive, negotiated resolution" [and] not on any "particular formula by which the

20

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

1  outcome must be tested." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th

2  Cir. 2009) (citing *Hanlon,* 150 F.3d at 1027; *Officers for Justice,* 688 F.2d at 625).

### F.    The Stage of Pleadings and Extent of Discovery Favors Approval

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 527 (quoting 5 W. Moore, Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed.)). However, the Settlement can be approved even in the absence of any discovery, if other factors are satisfied. *In re TD Ameritrade Account Holder Litig.,* 2011 WL 4079226, at *6 (N.D. Cal. Sept. 13, 2011). The bottom line is that "the parties have sufficient information to make an informed decision about settlement." *Durham v. Cont'l Cent. Credit, Inc.,* 2011 WL 90253, at *3 (S.D. Cal. Jan. 10, 2011), citing *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1239 (9th Cir. 1998).

The Parties engaged in substantial discovery. Plaintiffs propounded two sets of document requests, and one set of interrogatories, and also took five depositions of Chase's FRCP 30(b)(6) witnesses and other employees. (See **Markham MPA Decl.,** Dkt. #67-2, ¶ 7). To oppose Chase's motion for summary judgment, Plaintiffs conducted an inspection of Chase's premises under Rule 34(a)(2). *Id.* Chase propounded written discovery, including document requests and interrogatories, and deposed both Plaintiffs. Chase produced over 1,200 pages of paper documents, and voluminous electronically stored information ("ESI"), which included emails, badge swipe records, and computer access records, contact information for a sample of putative class members, and Plaintiffs also engaged in expert discovery. *Id.*

The Parties also engaged in substantial motion practice. (**Markham MPA Decl.** (Dkt. #67-2), **¶8**). While Plaintiffs were finalizing their Motion for Class Certification, the Parties agreed to allow Chase to file its motion for summary judgment first, which Chase did on **November 22, 2013**. *Id.* Plaintiffs opposed Chase's motion for summary

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

judgment on **January 13, 2014**.  Dkt. # 34, 45.  Plaintiffs also filed a Joint Motion for Determination of Discovery Dispute.  Dkt. # 23.

The Parties also participated in an all-day mediation session on **December 9, 2014**, before Michael Dickstein, Esq.  (**Markham MPA Decl.,** Dkt. #67-2, ¶ **9**).  Only then after several weeks of arms' length, in depth negotiations, with the assistance of Mr. Dickstein, did the Parties settle this case.  *Id.*  With the help of the mediator, the Parties' respective positions and strengths and weaknesses of their claims and defenses were assessed. "As a result, the true value of the class' claims was well-known."  *Young v. Polo Retail, LLC,* 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007).  Thus, the Parties had sufficient information to make an informed decision about the terms of the Settlement Agreement, and this factor weighs in favor of final approval.

## G.    The View of Experienced Counsel Favors Final Approval

In contemplating the approval of a proposed settlement, "[t]he recommendations of plaintiff's counsel should be given a presumption of reasonableness."  *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009), citing *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979).  In fact, "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West,* 563 F.3d at 967 (citing *In re Pac. Enters. Sec. Litig., supra,* 47 F.3d at 378; *see also In re Netflix Privacy Litig.*, 2013 WL 1120801, at *8 (N.D. Cal. Mar. 18, 2013).  Thus, "the Court should not without good cause substitute its judgment for [counsel's]."  *Boyd*, 485 F.Supp. at 622.

Class Counsel has decades of experience in prosecuting complex class actions, in particular class actions for violations of state and federal wage and hour laws, and has achieved settlements amounting to millions of dollars on behalf of class members. (*See* **Markham MPA Decl.**, Dkt. #67-2; **Quintilone MPA Decl.**, Dkt. # 67-3; *see also* **Quintilone Decl.** (at Dkt. #71-6) and **Markham Decl.** (at  Dkt. #71-2)). Class Counsel's qualifications and experience are further addressed in their concurrently

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

filed Declarations in support of this Motion for Final Approval.  (**Quintilone Decl., ¶¶ 6-11; Markham Decl., ¶ 5, Exhibit A**).  Further, Plaintiffs Counsel's views on this Settlement are aligned with the views of the independent mediator, as Settlement was reached with the mediator's assistance.  The fact that experienced counsel is in agreement that the Settlement is fair, adequate and reasonable further supports granting final approval of the Settlement.

### H.   The Class' Reaction to the Settlement Favors Final Approval

The class reaction to the proposed Settlement has been favorable.  The Notice was issued timely, in accordance with the Settlement Agreement and the Preliminary Approval Order, and mailed to all Class Members on **September 22, 2015**.  (**Bui Suppl. Decl., ¶ 4**).  Not a single Class Member objected to the Settlement, and no Class Member opted out of it.  *Id.*, ¶¶ 9-10.  The absence of any objections to the proposed Settlement or exclusions from it raises a strong presumption that the terms of the Settlement are favorable to the Class.  *See, e.g., Martin v. AmeriPride Servs.*, 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011); *see also In re Omnivision Techs., supra*, 559 F.Supp. at 1043 ("By any standard, the lack of objection of the Class Members favors approval of the Settlement.").

Further, the participation rate in the Settlement is relatively high and exceeded the minimum payment guarantee threshold, as 437 of the 827 Class Members submitted Claim Forms totaling almost 60% of the total Net Settlement Amount.  (**Bui Suppl. Decl., ¶ 8**).  This also suggests that the Settlement is fair and reasonable.  *See Rodriguez*, 563 F.3d at 967 (class reaction deemed favorable where 13.8% of class members submitted a claim form, and only 0.014% objected); *Four in One Co., Inc. v. S.K. Foods, L.P.*, 2014 WL 4078232, at *11 (E.D. Cal. Aug 14, 2014) (27.5% response rate held favorable).

Thus, this lack of objections and opt-outs, along with the relatively high percentage of submitted Claim Forms, establishes Settlement approval by the Class Members, and create a strong presumption that the Settlement is fair and adequate.

## I.      The Balanced Factors Weigh in Favor of Final Approval

"Ultimately, the district court's determination [regarding the fairness and adequacy of a proposed settlement] is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (citation omitted).  "[I]t must be not overlooked that voluntary conciliation and settlement are preferred means of dispute resolution.  This is especially true in complex class action litigation." *Id*.  Here, all relevant factors, individually, and taken as a whole, weigh in favor of final approval of the Settlement.

## VII.   NOTICE TO THE CLAS SATISFIES DUE PROCESS

A notice of settlement must be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   Fed. R. Civ. P. 23(c)(2)(B).   "The hallmark of an adequate notice is reasonableness." *Cohorst v. BRE Properties, Inc*., 2012 WL 153754, at *2 (S.D. Cal. Jan. 18, 2012), citing *Eisen* v. *Carlisle & Jacqueli*n, 417 U.S. 156, 165 (1974).  The manner of giving notice and the content of the notice should "present information about a proposed settlement neutrally, simply, and understandably." *Rodriguez,* 563 F.3d at 962.

Here, Plaintiffs complied with the Court-approved Notice plan.  The Notice Packets were mailed to 827 class members on **September 22, 2015**.  (**Bui Suppl. Decl., ¶ 4**).  Appropriate searches were performed to ensure that addresses of Class Members were accurate and updated. *Id*., ¶ 6; *see also* Bui Notice Decl., Dkt. # 71-11, ¶ 6. Only 15 Notices remain "undelivered." (**Bui Suppl. Decl., ¶ 6**). A reminder postcard was mailed those Class Members who had not submitted a Claim Form. *Id*., at **Exhibit B**, Final Weekly Report.  Further, late claims were allowed by the parties and have been included in the final settlement numbers.  *Id., see also* ¶ 7.

The Notice package was highly informative, as it advised Class Members, in simple terms, of (1) the factual and procedural background of this action, (2) the terms of the Settlement, (3) the method of allocation of Settlement awards among Class

---

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

Members, (4) Class Members' estimated Settlement payment, (5) Class Members' rights to exclude themselves from, or object to this Settlement, or to dispute the number of workweeks, and (6) Class Members' right to attend the final approval hearing.  (See **Bui Suppl. Decl., Exhibit A** for Notice).  The Notice also informed Class Members of the amounts that were being requested in attorneys' fees, costs, and Class Representatives' service enhancement awards. *Id*.  The Claims Administrator further established and maintained a toll-free telephone line, through which Class Members could contact case representatives with any case related questions.  (Bui Notice Decl., Dkt. # 71-11, ¶ 6).

In sum, the Notice plan was carefully tailored to apprise Class Members of the Settlement and this approval process.  Class Counsel and Plaintiffs respectfully submit the Notice process undertaken in this action has been reasonable and satisfies due process and the requirements of California law.

## VIII.  CONCLUSION

In the judgment of Plaintiffs and Class Counsel, the proposed Settlement is fair, reasonable and adequate, and provides substantial benefits to Class Members. Plaintiffs respectfully request that the Court grant final approval of this Settlement.

Dated:  January 4, 2016            **QUINTILONE & ASSOCIATES**


                                   By:  s/ Richard E. Quintilone, II
                                        Attorneys for Plaintiffs
                                        E-mail:  req@quintlaw.com

*Loeza et al. v. JP Morgan Chase Bank,* Case No. 13-cv-95-L-BGS
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement